DONALD L. SPAFFORD, JR.    6188
Pauahi Tower, Suite 2640
1003 Bishop Street
Honolulu, HI 96813
Phone: (808) 532-6300
Fax: (808) 532-6309
e-mail: donaldspaffordattorney@gmail.com

Attorney for Debtor

UNITED STATES BANKRUPTCY COURT FOR THE

DISTRICT OF HAWAII

| | | |
|---|---|---|
| In re | ) | Case No. 23-00149 |
| | ) | (Chapter 13) |
| PETER CHEN HSIEH, | ) | |
| | ) | DECLARATION OF DEBTOR PETER |
| Debtor. | ) | CHEN HSIEH; EXHIBITS "1"-"8" |
| | ) | |
| | ) | Hearing: July 18, 2023 |
| | ) | Time: 9:30 a.m. |
| | ) | Judge: Hon. Robert J. Faris |

## DECLARATION OF DEBTOR PETER CHEN HSIEH

I, PETER CHEN HSIEH, hereby declare as follows:

1. I am the debtor in this proceeding.

2. I make this declaration on personal knowledge unless otherwise stated.

3. I am a civil litigation attorney and have other time commitments. Because of my other commitments, I was not available on the dates for a Rule 2004 examination requested by counsel for Ronda Beselt ("Beselt"). I was available on June 22 or 23, 2023, for a Rule 2004 examination.

4. I and my co-counsel, Michael Jay Green ("Green") (collectively the "PI Attorneys"), represented Beselt and her husband in a personal injury action against GWR Wailea Property, LLC, Grand Wailea Resort Hotel & Spa ("Defendant Waldorf"), and the Department of Land and Natural Resources, State of Hawaii, entitled Ronda Beselt, et al. v. GWR Wailea Property LLC, et al., Civil No. 2CC161000597 in the Circuit Court of the Second Circuit, State of Hawaii ("Grand Wailea Case"). Beselt's personal injury claim arose from an incident that occurred on the public beach fronting the Grand Wailea Resort on Maui. Beselt

5. On January 30, 2019, during the process of litigating the Grand Wailea Case, the parties agreed to engage in mediation with Keith Hunter of DPR. A mediation date was sent on March 15, 2019. The case was set for a non-jury trial in the Second Circuit Court before the Honorable Judge Peter T. Cahill ("Judge Cahill"). It was a non-jury trial because Beselt's former attorney, Fredrick Matson Kelly, Esq. ("Kelly"), had not filed a demand for jury trial when he filed suit against Defendant Waldorf.

6. On April 18, 2019, Defendant Waldorf served Beselt a Rule 68 Offer of Settlement in the amount of $125,000.

7. Without the knowledge or consent of any of the PI Attorneys, Beselt contacted mediator Keith Hunter ("Hunter") directly to negotiate a settlement. On June 12, 2019, one of Defendant Waldorf's attorneys informed me that Defendant Waldorf's lead attorney, Patty NaPier, Esq. ("NaPier"), had received a call from James Krueger, Esq. ("Krueger"), informing NaPier that Beselt had contacted him to see if he would take over the case. NaPier

informed Krueger that her client would keep its last offer of $175,000 open. We (Green and I) did not know that Beselt had contacted Krueger.

8. On June 14, 2019, Green and I filed a motion to withdraw as Beselt's counsel in the Grant Wailea Case on the grounds that (1) substantial irreconcilable differences of opinion existed between us and Beselt; (2) further representation would result in an unreasonable financial burden on us; (3) Beselt insisted upon taking positions or pursuing objectives that we considered repugnant or imprudent, and (4) withdrawal could be accomplished without material adverse effect on the interests of Beselt.

9. On June 18, 2019,. Hunter asked me if I knew that Krueger had floated a settlement offer of $225,000 to Defendant Waldorf's counsel. I informed Hunter that I did not know.

10. On June 27, 2019, Defendant Waldorf provided Beselt with a Settlement Term Sheet in the amount of $200,000, for general damages only, and a Joint Tortfeasor Release and Indemnification Agreement from Defendant Waldorf.

11. On June 28, 2019, I was informed that two weeks prior Beselt had gone behind our backs and instructed Hunter to communicate with her only and to not communicate with us.

12. On August 7, 2019, 18 days after the Court granted our Motion to Withdraw, Beselt sent an email to us, informing us that she had just settled her case with Defendant Waldorf on August 6, 2019, but she did not disclose the amount of the settlement.

3

13. Based on Defendant Waldorf's Term Sheet and the numbers that were being floated, however, I surmised and formed a good-faith belief that the settlement amount was probably around $250,000, given the numbers that were being exchanged up to that point in time.

14. I subsequently learned that the amount of the settlement was $250,000, and that Beselt had retained attorney John Rapp, who advised Beselt and reviewed and revised the settlement agreement for her, which had been drafted by NaPier.

15. Beselt consummated the settlement and executed the settlement agreement without the knowledge or consent of the PI Attorneys.

16. On July 4, 2019, Beselt filed an opposition to our motion to withdraw as her counsel.

17. On July 19, 2019, the Court heard and granted our Motion to Withdraw over Beselt's objection.

18. On July 25, 2019, Green and I filed a Notice of Attorneys' Lien ("Attorneys' Lien") and served it on Beselt and Defendant Waldorf. Beselt Beselt

19. On February 1, 2021, Green and I filed a motion to collect attorney fees in the Wailea Resort Case.

20. On February 4, 2021, Beselt filed an opposition to our motion to collect on the grounds that the motion to collect was subject to the arbitration provision in our legal services

4

contract.

21. On March 7, 2021, Beselt, through her attorney, Arnold T. Phillips, II (deceased), filed Plaintiff Beselt's Motion to Compel Arbitration as to All Former Counsel of Plaintiff Ronda Beselt [Dkt. 249], alleging her former attorneys, Jan K. Apo, Frederick Matson Kelly, James J. Bickerton, Michael Jay Green, Glenn H. Uesugi, and Peter C. Hsieh negligently failed to provide competent representation in the Grand Wailea Case.

22. On March 10, 2021, Kelly and his firm, Kelly & Wilkens, filed a Notice of Disclaimer of Claim for Attorneys' Fees and Costs.

23. On March 12, 2021, we filed a Statement of No Position to Beselt's motion to compel arbitration.

24. On March 18, 2021, Beselt, through her attorney, Arnold T. Phillips, Esq. (deceased), filed Plaintiff Beselt's Dismissal of James Bickerton and Robert Miyashita from her Motion To Compel Arbitration as to All Former Counsel of Plaintiff Ronda Beselt, based upon Mr. Phillips's Declaration, stating that Beselt's retainer agreement with Bickerton did not permit arbitration as to all disputes and controversies.

25. On May 5, 2021, the Court entered an order denying Plaintiff Beselt's Motion to Compel Arbitration as to All Former Counsel of Plaintiff Ronda Beselt.

26. On May 13, 2021, Beselt filed a Demand for Arbitration with Dispute Prevention and Resolution, Inc. ("DPR") against the

PI Attorneys. In her arbitration demand, Beselt stated her claim as follows:

> Because of the errors and negligence of Plaintiff's former attorney's Mr. Green, Mr. Hsieh, and Mr. Uesugi who represented the Plaintiff's in the Beselt v. Waldorf=Astoria management LLC CIVIL NO. 16-1-0597(2), pro se, Plaintiff was forced to take a substantially low settlement offer, under duress, while not being represented by Counsel.

A true and correct copy of Beselt's Demand for Arbitration, dated May 13, 2021, is attached hereto as Exhibit "1".

27. On September 27, 2021, Beselt filed a More Definite Statement, asserting the following 8 claims:

1. Breach of Contract
2. Negligence and Negligent Misrepresentation
3. Fraudulent Misrepresentation
4. Intentional Infliction of Emotional Distress
5. Negligent Supervision of Co-Counsel
6. Threatened Assault
7. Sexual Assault
8. Punitive Damages

A true and correct copy of Beselt's More Definite Statement, dated September 27, 2021 (without the exhibits), is attached hereto as Exhibit "2".

28. On May 15, 2022, Beselt filed a Concise Statement of Claims, amending her claims

1. Breach of Contract
2. Legal Malpractice and Negligence during representation of Plaintiff
3. Negligent Misrepresentation
4. Fraudulent Misrepresentation regarding Respondents'

6

Attorneys' Lien Claim
         5.    Intentional Infliction of Emotional Distress
         6.    Negligent Supervision of Co-Counsel
         7.    Assault, Battery and Terroristic Threatening
         8.    Sexual Assault
         9.    Willful and Wanton Disregard of Respondents' Legal
               Duties and Responsibilities to their client, thus
               constituting legal malpractice

A true and correct copy of Beselt's Concise Statement of Claims, dated March 15, 2022, is attached hereto as Exhibit "3".

    29.   On June 3, 2021, Green and I, each, filed identical Answers to Claimant Ronda Beselt's Claim and Counterclaims against Beselt, asserted the following counterclaims:

        Count I:     Enforcement of Attorneys' Lien Pursuant to
                     HRS § 507-81
        Count II:    Breach of Contract
        Count III:   Fraudulent Misrepresentation
        Count IV:    Negligent Misrepresentation

A true and correct copy of Hsieh's Answer and Counterclaim against Beselt, filed on June 3, 2021 (without the exhibits), is attached hereto as Exhibit "4".

    30.   On March 15, 2022, Beselt filed an Answer to PI Attorneys' Counterclaim.

    31.   In her proof of claim filed in this case, Beselt alleges that I owe her $17,500,000.00. This is simply not true. The amount has no basis in reality.

7

32. Based on information and good faith belief, I believe that Beselt is pursuing her claim in this case in bad faith and is harassing me, seeking unreasonable compensation from me that is not justifiable. It is like a shakedown for money where the more you ask for the more you can hope to settle for. I did not engage in the sexual misconduct Beselt alleges in her More Definite Statement or her Concise Statement of Claims. Beselt makes allegations and statements that are not true.

32. Beselt is not credible, evidenced by her dishonest, evasive, deceitful, and manipulative conduct during her **oral deposition** in the Grand Wailea Case, in an attempt to conceal her plan to alter her medical records to avoid jeopardizing her claim for damages in the Grand Wailea Case, as follows:

    a. At a deposition taken on May 28, 2019, Beselt was questioned about why in 2018 she was looking at Dr. Lorraine Natho's records, which Dr. Natho made in 2010. A true and correct copy of the excerpts from the deposition transcript of Ronda Beselt, dated May 28, 2019, is attached hereto as Exhibit "5" ("Beselt Depo Tr.");

    b. Beselt testified she only wanted to look at one doctor's records, that Dr. Lorraine Natho (Ex. "5" – Beselt Depo Tr. 212/12-22). When the defense attorney, Calvin Young ("Young"), asked her why she wanted to look at Dr. Natho's records, Beselt answered, "I wanted to know what was in my record." When Young pressed her to be more specific, she answered, "I was curious." Asked why she was curious, she answered, "I

8

don't know." (Ex. "5" - Beselt Depo Tr. 213/15-24). When Young asked her "what spurred her to go to the central records and ask to see Dr. Natho's records?", Beselt answered, "Because I wanted to know what was in my records." (Ex. "5" - Beselt Depo Tr. 213/25 and 214/1-4). When Young asked her, "So why did you choose to look at Dr. Natho's records only, at that time?", Beselt answered, "Because I was curious." (Ex. "5" - Beselt Depo Tr. 214/12-14). When Mr. Young asked, "But what spurred your curiosity?", she answered "I just was." (Ex. "5" - Beselt Depo Tr. 214/15-16). At that point Young informed Beselt, ". . . I believe you're being evasive, and you won't give us the reason why you chose to only look at one doctor's records in February of 2018.) (Ex. "5" - Beselt Depo Tr. 214/20-23);

c. At that point in the deposition, Young confronted Beselt with a letter she had written to Dr. Natho and the Canadian health records respository in 2018, in which Beselt sought to change the Dr. Natho's diagnosis of postpartum depression and anxiety she made of Beselt in 2010. (Ex. "5" - Beselt Depo Tr. 215/8-25 and 216/1-8.). When Young asked Beselt whether it was true that she wanted Dr. Natho's records revised because she knew that Dr. Natho's records would be reviewed by the experts in this lawsuit . . . ?", Beselt answered, "No . . . ." (Ex. "5" - Beselt Depo Tr. 216/16-25);

d. Several minutes after this, Young took a break in the
9

deposition. During the break, I took Beselt outside (we were at Iwado Court Reporter's Office on Maui) and I told her that she had just lied and she needed to correct her statement on the record after the break. She agreed — reluctantly — concerned that doing so would hurt her case. I said if she did not correct her lie and rehabilitate her credibility, the defense would destroy her credibility at trial in the eyes of Judge Cahill, who was going to be the trier of fact because her case was a bench trial. It was going to be a bench trial because her former attorney, Kelly, did not file a demand jury trial. When we returned to the deposition, I informed Young on the record that Beselt wanted to clarify her prior testimony in two areas of questioning that he had made of Beselt. I asked Beselt, "Why were you looking at Dr. Natho's records?" Beselt answered, "I didn't agree with the diagnosis of postpartum depression and anxiety, and I knew that I records were going to go, and I didn't want inaccurate information to be sent out, and I was embarrassed because I didn't feel that I met the criteria for postpartum depression anxiety in 2010 . . . I feel like it would have hindered all the emotional distress and the psychological and psychiatric symptoms I've had since being hit by the umbrella and I was – I worried that it would lessen what I truly experienced after the umbrella." (Ex. "5" - Beselt Depo Tr. 237/9-25 and 2384-19); and

e. In 2018, Beselt sent a letter to Dr. Natho and the Canadian health records repository to change Dr.

10

Natho's diagnosis of postpartum depression and anxiety she made of Beselt in 2010. A true and correct copy of the letter Beselt wrote to Dr. Natho and the Canadian health records repository in July 2018 is attached hereto as Exhibit "6". This letter was introduced in Beselt's deposition as Exhibit "13". (Ex. "5" - Beselt Depo Tr. 215/8-25 and 216/1-8.). When Mr. Young asked Beselt whether it was true that she wanted Dr. Natho's records revised because she knew that Dr. Natho's records would be reviewed by the experts in this lawsuit . . . ?", Beselt answered, "No . . . ." (Ex. "5" - Beselt Depo Tr. 216/16-25).

33. Beselt's lack of credibility is also demonstrated by her conscious decision to engage in dishonest, evasive, deceitful, and manipulative conduct during discovery in the Grand Wailea Case, as follows:

    a. On January 14, 2019, Defendant Waldorf filed a Motion to Compel Discovery As to Plaintiff Ronda Beselt ("Waldorf's Motion") on the grounds that Beselt had "engaged in an ongoing campaign to obstruct Waldorf's efforts to obtain [Beselt's medical and employment records], which are directly relevant to her personal injury claims" by "(1) substituting her own authorization forms in place of the ones provided to her by Waldorf's counsel, apparently to restrict Waldorf's access to her medical records; (2) signing medical and employment authorizations only to revoke them later and demand the destruction of documents already obtained by Waldorf pursuant to those

11

authorizations; and (3) signing medical and employment authorizations only after being ordered to do so by the Court on July 20, 2018, and then later contacting providers and administrators directly and instructing them not to produce records to Waldorf. (Emphasis original.)";

b. On March 14, 2019, the Court (Honorable Peter T. Cahill, Judge of the Second Circuit Court, State of Hawaii) granted Waldorf's Motion and made the following **findings**:

   (1) That Waldorf raised the issue of Beselt's "apparent interference in the discovery process, including issues relating to the execution and use of medical and employment authorizations to obtain Plaintiff's records;

   (2) That at the Status Conference on July 20, 2018, "the Court verbally warned, ruled and ordered Plaintiff [Beselt] to comply with Hawaii discovery procedures and not to interfere with the discovery process; and

   (3) That "Beselt's third-party Custodians of Records have produced redacted records to Waldorf in violation of the Court's previous July 20, 2018 Status Conference and Order (document citation omitted.) and the records and argument by counsel indicate that Plaintiff directed that redactions be made and/or has interfered in the production

12

of documents requested by Waldorf, including the production of her employment records by Alberta Health Services." Judge Cahill attached to the end of his Order a copy of a letter from Alberta Health Services to Goodsill Anderson Quinn & Stifel dated January 31, 2019.

c. On March 14, 2019, the Court (Honorable Peter T. Cahill, Judge of the Second Circuit Court, State of Hawaii) granted Waldorf's Motion and imposed the following **sanctions** against Beselt:

   (1) Beselt is barred from producing additional records to Waldorf after February 13, 2019;

   (2) The presentation of Beselt's claims at the trial in this case, which was set for September 30, 2019, shall be limited to the records that have been produced by Plaintiff or third-party Custodian of Records to Waldorf on or before February 13, 2019;

   (3) All records produced by Plaintiff or or third-party Custodian of Records after February 13, 2019 shall not be considered by Plaintiff's experts or permitted for use at trial;

   (4) Testimony by any witness, including Plaintiff and/or her expert(s), shall be limited to information contained in the records that have

13

been produced to Waldorf on or before February 13, 2019;

 (5) Plaintiff is barred from recovery of damages for lost earnings or loss of earning capacity; and

 (6) "Plaintiff is expressly warned that her failure to comply with any of the terms of this Order or with her obligations under the Hawaii Rules of Civil Procedure in any respect will result in the imposition of increasingly severe sanctions, up to and including dismissal of this action."

A true and correct copy of the Order Granting In Part and Denying In Part Defendant Waldorf-Astoria Management LLC's Motion to Compel Discovery, filed March 14, 2019, is attached hereto as Exhibit "7".

 34. Beselt's lack of credibility is also confirmed by her own attorney Bosko Petricevic ("Petricevic"), in the DPR Arbitration proceeding. On March 2, 2023, Petricevic sent email message to the arbitrator, Retired Judge Karl Sakamoto, and opposing attorneys, informing Judge Sakamoto and opposing attorneys that he was withdrawing as Beselt's attorney in the DPR arbitration case because "[h]er [Ronda Beselt] and her husband Mark have scammed me, lied to me and defrauded me. I cannot continue on like this. I will be filing a lawsuit against them today or tomorrow." A true and correct copy of the email from Bosko Petricevic to Judge Sakamoto and others, dated March 2, 2023, is attached hereto as Exhibit "8".

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on July 14, 2023 at Honolulu, Hawaii.

_____
PETER CHEN HSIEH