CENTURY SQUARE, SUITE 2907
1188 BISHOP STREET
HONOLULU, HAWAII 96813

MOBILE: (808) 781-1414
TOLL FREE AND FAX: (888) 467-0555
E-MAIL: ATP@atphillipslaw.com
www.ATPhillipslaw.com

Michael J. Green, Esq. (michael@michaeljaygreen.com)
Glenn Uesugi, Esq. (glenn.uesugi@gmail.com)
Peter Hsieh, Esq. (hsiehlaw808@gmail.com)

May 13, 2021

Re: 2CC 1610000597(2)
Beselt v. Waldorf=Astoria Management LLC
Demand Letter for arbitration

Dear Mr. Green, Mr. Uesugi and Mr. Hsieh,

      Our office represents Plaintiff Ronda Beselt in all matters relating to the above referenced civil action. On behalf of my client this letter serves as demand for arbitration for all disputes, differences and controversies between Plaintiff and her former Counsel, (as noted above), who represented her in the above-entitled civil action as required by the DPR procedures.

      As per the Attorney/Client Contingent Fee Retention Agreement executed on March 9, 2018, all disputes, differences and controversies between Plaintiff and her former Counsel during their representation of Plaintiff are to be resolved by binding arbitration through DPR.

      The disputes, differences, and controversies that Plaintiff is pursuing through this demand of binding arbitration are the claims for negligence of former Counsel and the Court ordered resolution of the fees and costs asserted in your Attorney's lien, filed July 25, 2019, against Plaintiff.

      Plaintiff is agreeable to a single arbitrator for both the malpractice claims and outstanding fees and costs with the alternative dispute resolution by the offices of Dispute Prevention Resolution Inc. at 1003 Bishop Street, Suite 1155, Honolulu, Hawaii 96813 and/or done virtually due to the COVID-19 pandemic office closure.

      Plaintiff seeks the determination of responsibility and compensation for full damages for all injuries incurred due to the above-entitled civil action as well as further damages incurred through the conduct of the lawyer's representation, special, general and punitive damages, as to be determined at the arbitration.

Respectfully submitted,

Arnold T. Phillips II

ATP:tpg

# SUBMISSION TO ADR FORM

We, the undersigned parties, hereby agree to submit the dispute described below to:

☐ Confidential Mediation      ☐ Med/Arb
☑ Binding Arbitration      ☐ Other _____

Nature of dispute: (Attach exhibits if necessary)

Number of Neutrals requested:    ☑ One      ☐ Three

Hearing room location:    ☐ DPR facilities    ☐ Other _____

---

Claimant: Ronda Beselt
Address: 1239 19 St NE
Calgary, AB Canada T2E4Y1

Phone: 4032557051   Fax:_____
Email: bvswaldorf@gmail.com

Signature: _____

Respondent: Peter Hsieh
Address: Suite 2201, 841 Bishop Street,
Honolulu, Hawaii 96813

Phone: 808-521-3336   Fax: 808-566-0347
Email: hsiehlaw808@gmail.com

Signature: _____

Counsel - Claimant: Arnold T. Phillips II
Address: #2907 1188 Bishop Street, Honolulu,
Hawaii 96813

Phone: 8087811414   Fax: 888-467-0555
Email: atp@atphillips.com

Counsel - Respondent: _____
Address: _____
_____

Phone: _____ Fax:_____
Email: _____

*If more than two parties are participating, please attach an additional sheet.*
*Thank you for contacting DPR.*

## Dispute Prevention & Resolution, Inc.

1155 Pauahi Tower, 1003 Bishop Street, Honolulu, Hawaii 96813
Phone: (808) 523-1234 * Fax (808) 599-9100 * Email address: kellybryant@dprhawaii.com
Website: www.dprhawaii.com

LAW OFFICES OF

ARNOLD THIELENS PHILLIPS II

ATTORNEY AND COUNSELOR

CENTURY SQUARE, SUITE 2907
1188 BISHOP STREET
HONOLULU, HAWAII 96813

MOBILE: (808) 781-1414
TOLL FREE AND FAX: (888) 467-0555
E-MAIL: ATP@atphillipslaw.com
www.ATPhillipslaw.com

Dispute Prevention & Resolution
1003 Bishop St # 1155
Honolulu, HI 96813

May 13, 2021

Re: Letter to Dispute Resolution Prevention
Beselt v. Michael Jay Green, Glenn Uesugi, and Peter Hsieh

Dear Sir or Madame;

The following is the letter regarding our client – Ronda Beselt's – request for arbitration:

The Law Office of Michael Jay Green and Associates : Claimant Ronda Beselt demands arbitration regarding Michael Jay Green and his co-counsel Glenn Uesugi and Peter Hsieh via registered mail on March 8, 2021 at 841 Bishop Street, #2201 Honolulu, Hawaii 96813, phone 808-521-3336, in the attached Submission to ADR form and Motion to Compel Arbitration as to All Former Counsel of Plaintiff Ronda Beselt and via email to michael@michaeljaygreen.com, glenn.uesugi@gmail.com, hsiehp002@hawaii.rr.com for legal malpractice claims and fees and costs associated with their representation of Claimant in civil action 2cc161000597(2), Beselt v. Waldorf=Astoria Management LLC filed in the 2nd Circuit, however, it appears Mr. Uesugi has not been included in the DPR arbitration 21-0106. He is a necessary party and a further demand letter has been sent electronically, on May 12, 2021 to Mr. Green, Mr. Uesugi and Mr. Hsieh along with a "Submission to ADR form" to address all parties in this arbitration for legal malpractice and fees and costs disputes. (See Exhibit "7")

In accordance with Mr. Green's law offices attached ATTORNEY/CLIENT CONTINGENT FEE RETENTION AGREEMENT with Plaintiff(s), which Plaintiff(s) signed on or about March 2, 2018, and Mr. Green signed and executed on March 9, 2018, it clearly states the following:

"Point 7. Mandatory Arbitration of Disputes- All disputes and differences which may arise between Attorney and Client in any way related to Attorney's representation of

Client pursuant to this Agreement shall be resolved by binding arbitration by Dispute Prevention and Resolution. Client understands Client and Attorney are giving up the right to trial on this matter." (See Exhibit "1" p. 3)

It was ruled by the Court on the February 26, 2021 hearing on Plaintiff Ronda Beselt's Motion to Set Aside Order of Dismissal which was granted and Ordered by the Court that all matters between Plaintiff and her former Counsel, of the Law office of Michael Jay Green are to be resolved by May 28, 2021. (See Exhibit "2")

Mr. Green's Motion to Collect, filed February 1, 2021 was denied by the Court as their Attorney/Client Contingent Fee Retention Agreement states that any disputes between Counsel and Plaintiff must be resolved by binding arbitration through DPR. (See Exhibit "3")

Further, Attorney/Client Contingent Fee Retention Agreement signed by Mr. Green on March 9, 2018, clearly states, "The undersigned further consents to legal representation by an attorney or attorneys not part of Michael Jay Green's law firm under the following conditions: (a) Each attorney assumes joint responsibility for the representation, (b) The Attorney(s) covered by this consent are: GLENN H. UESUGI" (See Exhibit "1" p. 4) Mr. Hsieh, while Plaintiff's were in his office on May 21, 2018 crossed out Glenn Uesugi's name, and added himself as Counsel to represent Plaintiff. (See Exhibit "4")

Additionally, Mr. Uesugi represented Plaintiff as noted in the communications he had with Defendant Waldorf and Plaintiff in March through April 2018 via telephone and emails. (See collectively as Exhibit "5") Therefore, there is no dispute that Mr. Uesugi must also be a party to this arbitration to resolve all disputes, differences and controversies that Plaintiff has with the representation of her former counsel Michael Jay Green, Peter Hsieh and Glenn Uesugi.

Lastly, the expert opinion of Mr. George R. Clark dated February 23, 2021, substantiates the malpractice claims that Plaintiff has against her former Counsel Mr. Green, Mr. Uesugi and Mr. Hsieh during their representation of Plaintiff. (See Exhibit "6") Claimant's position is that no fees or costs are due to her former Counsel, as demanded by Mr. Green's Attorney's lien, filed July 25, 2019 with the 2nd Circuit, due to the injury

caused by actions and inactions that Plaintiff(s) suffered through former Counsel's poor representation.

Because of the errors and negligence of Plaintiff's former attorney's Mr. Green, Mr. Hsieh and Mr. Uesugi who represented the Plaintiff's in the Beselt v. Waldorf=Astoria management LLC CIVIL NO. 16-1-0597(2), *pro se* Plaintiff was forced to take a substantially low settlement offer, under duress, while not being represented by Counsel. The Court granted Mr. Hsieh and Mr. Green's Motion to Withdraw as Counsel for Plaintiff Ronda Beselt, filed June 12, 2019 based on the false testimony and statement of facts presented by these two attorneys in their pleadings and oral argument on the Motion. In accordance with the confidential mediation statement filed by her former counsel Mr. Green and Mr. Hsieh, Plaintiff seeks damages in that amount of at least $8.25 million, plus further damages incurred due to the conduct of her attorney's representation, along with punitive damages, and a sum of all claims to be determined at arbitration.

Respectfully submitted,

Arnold T. Phillips II

ATP:tpg



## Law Offices of Michael Jay Green, *Attorney at Law*

841 Bishop Street, Suite 2201
Honolulu, Hawaii 96813
Tel 808.521.3336
Fax 808.566.0347

## ATTORNEY/CLIENT CONTINGENT FEE RETENTION AGREEMENT

RONDA BEGELT & MARK BEGELT ("Client") employs MICHAEL JAY GREEN, Attorney at Law ("Attorney"), to represent Client as legal counsel and to provide legal services in connection with _____
("Case"). Client understands and agrees the representation is based on the following conditions:

1.     NO PROMISES OR GUARANTEES. Client understands Attorney has made no promises or guarantees regarding the result or outcome of Client's Case.

2.     FEES. Attorney's fees are on a contingent basis. If Client recovers nothing, then Attorney receives no fee.

Attorney's fees are based on: (a) the amount of recovery, and (b) when recovery occurs. Recovery means the total value of the amount recovered by settlement, verdict or award, whether in money or in kind. The amount recovered (including any award by either the court or arbitrator of costs and/or attorney's fees) is to be computed without subtracting the amount of costs incurred for this Case.

Client will pay Attorney a fee equivalent to THIRTY-THREE AND ONE-THIRD PERCENT (33-1/3%) of any and all amounts recovered, regardless whether by way of settlement, trial verdict, or arbitration decision. Hawaii General Excise Tax (GET) (currently at the rate of 4.712%) will be added to all attorney's fees.

Attorney's fees are payable in full at the time of the settlement, verdict, or award. In the event a structured settlement is reached, Attorney shall have the option to take attorney's fees in a lump sum payment based upon an economic analysis as to the present value of the settlement.

Fee Agmt - 33-1/3%
As of June 2014

Exhibit "1"

3.    COSTS. Client agrees to pay all costs which relate to the Case, including costs advanced by Attorney, from any recovery. If no recovery is obtained, Client shall not be obligated to repay Attorney for costs advanced, except as provided in paragraph 4 below.

Costs include all expenses deemed appropriate by Attorney for the proper handling of the Case. Typically costs include, but are not limited to, fees for court filing, service of process fees, witness fees, expenses for expert witnesses, consultants and investigation, deposition transcript and court reporter fees, and travel expenses (including business class air travel).

Attorney does not specifically charge for in-house copying, postage, facsimile transmissions and local delivery. Instead, Attorney will charge Client a flat fee of $200.00 for such miscellaneous expenses if we are successful.

4.    DISCHARGE AND WITHDRAWAL. Both Client and Attorney have the right to terminate this Agreement at any time. On receiving written notice of termination, Attorney will stop work on the Case. Upon such discharge, Client is obligated to pay any costs incurred prior to such termination.

Attorney may withdraw upon reasonable notice to Client or with Client's consent. Should court approval of withdrawal become necessary, Client will be responsible for expenses incurred by Attorney if the court approves Attorney's request to withdraw.

In the event of either discharge by Client or withdrawal by Attorney, Attorney shall have a lien for Attorney's fees and costs incurred and the right to recover from Client such costs and the reasonable value of services rendered by Attorney from any recovery ultimately obtained by or on behalf of Client.

5.    SCOPE OF SERVICES. This Agreement covers costs and Attorney's fees up through a trial or arbitration of Client's claim. This Agreement does not include or cover the costs and legal fees involved in filing or defending an appeal from a final court judgment nor does this Agreement obligate Attorney to take or handle such an appeal.

The matter of Attorney's representation, costs, and legal fees regarding an appeal and/or a re-trial of Client's claim, if any, are subject to further negotiation between Attorney and Client.

Fee Agmt - 33-1/3%
As of June 2014

2

6.    LIENS AND REIMBURSEMENT. If third parties have paid for all or a part of the damages you recover (i.e., DSSH, insurers), Client agrees that such sources will be reimbursed out of any proceeds or recovery of applicable damages from Client's share.

7.    MANDATORY ARBITRATION OF DISPUTES. All disputes, controversies and differences which may arise between Attorney and Client in any way related to Attorney's representation of Client pursuant to this Agreement shall be resolved by binding arbitration by Dispute Prevention and Resolution. Client understands Client and Attorney are giving up the right to a trial on this matter.

8.    OBLIGATIONS JOINT AND SEVERAL. All terms, covenants, and conditions to be observed and/or performed by Client shall be joint and several if entered into by more than one person.

9.    CHOICE OF LAW AND SEVERABILITY. This Agreement shall be governed by the laws of the State of Hawaii, both as to interpretation and performance. If any provision of this Agreement is found by any court in the State of Hawaii to be illegal, invalid, or unenforceable, the validity of the remaining provisions will not be affected, and the rights and obligations of the parties will be interpreted and enforced as if this Agreement did not contain the particular provision held to be illegal, invalid, or unenforceable.

CLIENT HAS READ THIS AGREEMENT, UNDERSTANDS IT, AND AGREES TO ITS TERMS, COVENANTS, AND CONDITIONS.

CLIENT
Date: March 2/2018

MICHAEL JAY GREEN
ATTORNEY
Date: 3-9-18

Fee Agmt – 33-1/3%
As of June 2014

The undersigned further consents to legal representation by an attorney or attorneys not part of Michael Jay Green's law firm under the following conditions:

(a)     Each attorney assumes joint responsibility for the representation.

(b)     The Attorney(s) covered by this consent are:

glenn H. Uesugi

(c)     All other terms of the Agreement are applicable.

CONSENT HAS READ THIS CONSENT, UNDERSTANDS IT, AND AGREES TO IT.

"CLIENT"
Date: March 21 2018

MICHAEL JAY GREEN
"ATTORNEY"
Date: 3-9-18

Fee Agmt - 33-1/3%
As of June 2014

GOODSILL ANDERSON QUINN & STIFEL
A LIMITED LIABILITY LAW PARTNERSHIP LLP

CALVIN E. YOUNG      3278-0
STACY Y. MA         10537-0
First Hawaiian Center, Suite 1600
999 Bishop Street
Honolulu, Hawai'i 96813
Telephone: (808) 547-5600
Facsimile: (808) 547-5880

Electronically Filed
SECOND CIRCUIT
2CC161000597
16-MAR-2021
08:32 AM
Dkt. 268 ORDG

Attorneys for Defendant
WALDORF=ASTORIA MANAGEMENT LLC

## IN THE CIRCUIT COURT OF THE SECOND CIRCUIT

### STATE OF HAWAI'I

| | |
|---|---|
| RONDA BESELT aka RONDA MELNYCHUK-BESELT, MARK WARREN BESELT,<br><br>        Plaintiffs,<br><br>vs.<br><br>WALDORF=ASTORIA MANAGEMENT LLC, a foreign limited liability company; DEPARTMENT OF LAND AND NATURAL RESOURCES, STATE OF HAWAI'I, JOHN DOES 1-5, JANE DOES 1-5, ROE CORPORATIONS 1-5, ROE NON-PROFIT CORPORATIONS 1-5 AND ROE GOVERNMENTAL AGENCIES 1-5,<br><br>        Defendants. | 2CC161000597<br>(Other Non-Vehicle Tort)<br><br>ORDER GRANTING MOTION TO SET ASIDE ORDER OF DISMISSAL, FILED JANUARY 31, 2021 |

ORDER GRANTING MOTION TO SET ASIDE ORDER OF DISMISSAL,
FILED JANUARY 31, 2021

Plaintiff's Motion to Set Aside Order of Dismissal, filed January 31, 2021

Motion, came on for hearing before the Honorable Peter T. Cahill on February 26, 2021 at 8:15

Exhibit "2"

U.S. Bankruptcy Court - Hawaii  #23-00149  Dkt # 41-1  Filed 07/14/23  Page 10 of 52

a.m. Arnold T. Phillips appeared on behalf of Plaintiff Ronda Beselt ("Plaintiff"), and Stacy Y. Ma appeared for Defendant Waldorf=Astoria Management LLC ("Waldorf"). Peter C. Hsieh entered an appearance on behalf of Michael J. Green and himself.

## I. **BACKGROUND**

WHEREAS, Plaintiff initiated this personal injury case on December 2, 2016, and subsequently filed a First Amended Complaint on January 6, 2017 to name Waldorf as a defendant;

WHEREAS, Plaintiff and Waldorf entered into a valid and enforceable confidential settlement agreement, which was placed on the record before the Court on August 7, 2019;

## II. **ORDER**

Upon consideration of the records herein, as well as the case procedural background and written submissions,

IT IS HEREBY ORDERED, ADJUDGED and DECREED that the Court GRANTS Plaintiff's Motion to Set Aside Order of Dismissal pursuant to the following terms:

1.      Plaintiff shall resolve any outstanding matters with Waldorf and inform the Court as to the status within ninety (90) days (i.e., by May 28, 2021);

2.      The Court will dismiss *with* prejudice the present action in ninety (90) days (i.e., on May 28, 2021) and will no longer retain jurisdiction over the case.

IT IS SO ORDERED.

DATED: Wailuku, Hawai'i, ___March 16___ 2021.

_____
JUDGE OF THE ABOVE-ENTITLED COURT

Order Granting Motion to Set Aside Order of Dismissal, Filed January 31, 2021
*Ronda Beselt v. Waldorf=Astoria Management LLC*, CIVIL NO. 2CC161000597 Circuit Court
of the Second Circuit, State of Hawai'i

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | DECLARATION OF RONDA BESELT, EXHIBITS "1" - "74" | | | | | | |
| 241 | NEF | Notice of Electronic Filing | | RONDA BESELT | 17-FEB-2021 | 18:26:06 | | N | N |
| 242 | MER | Memo in Reply/Response to____ EFile Document upload of type Memo in Reply/Response to | Michael Jay Green and Peter C. Hsieh's Memorandum in Reply to Plaintiff's Memorandum in Opposition to Michael Jay Green and Peter C. Hsieh's Motion to Collect Attorneys' Lien Pursuant to Notice of Attorneys' Lien, filed July 25, 2019, filed February 1, 2021, filed February 4, 2021; Certificate of Service | RONDA BESELT | 22-FEB-2021 | 11:01:29 | Hsieh, Peter (A3204) | N | N |
| 243 | NEF | Notice of Electronic Filing | | RONDA BESELT | 22-FEB-2021 | 11:01:29 | | N | N |
| 244 | *MINH | *MINH **3.21/8:29** No oral argument heard. 1) Michael J. Green and Peter C. Hsieh's Motion to Collect Attorneys Lien– Denied for reasons stated on the record. Mr. Phillips to prepare the order. 2) Plaintiff's Motion to Set Aside Order of Dismissal – Granted. Court granted Plaintiff 90 days to resolve matter and inform court by 05/28/21. Mr. Phillips to prepare the order. | | All Case Parties | 28-FEB-2021 | 08:15:00 | | N | N |
| 245 | RMHG | Remote Hearing | | RONDA BESELT | 26-FEB-2021 | 10:00:44 | | N | N |
| 246 | NEF | Notice of Electronic Filing | | RONDA BESELT | 26-FEB-2021 | 10:00:44 | | N | N |
| 247 | OT | Other PROPOSED ORDER. GRANTING MOTION TO SET ASIDE ORDER OF DISMISSAL, FILED JANUARY 31, 2021, CERTIFICATE OF SERVICE | PROPOSED ORDER: GRANTING MOTION TO SET ASIDE ORDER OF DISMISSAL, FILED JANUARY 31, 2021, CERTIFICATE OF SERVICE | RONDA BESELT | 05-MAR-2021 | 12:51:07 | BESELT, RONDA (@4230849) | N | N |
| 248 | NEF | Notice of Electronic Filing | | RONDA BESELT | 05-MAR-2021 | 12:51:07 | | N | N |



Law Offices of Michael Jay Green, *Attorney at Law*

841 Bishop Street, Suite 2201
Honolulu, Hawaii 96813
Tel 808.521.3336
Fax 808.566.0347

### ATTORNEY/CLIENT CONTINGENT FEE RETENTION AGREEMENT

RONDA BEZELT & MARK BEZELT ("Client") employs MICHAEL JAY GREEN, Attorney at Law ("Attorney"), to represent Client as legal counsel and to provide legal services in connection with _____

("Case"). Client understands and agrees the representation is based on the following conditions:

1.    NO PROMISES OR GUARANTEES. Client understands Attorney has made no promises or guarantees regarding the result or outcome of Client's Case.

2.    FEES. Attorney's fees are on a contingent basis. If Client recovers nothing, then Attorney receives no fee.

Attorney's fees are based on: (a) the amount of recovery, and (b) when recovery occurs. Recovery means the total value of the amount recovered by settlement, verdict or award, whether in money or in kind. The amount recovered (including any award by either the court or arbitrator of costs and/or attorney's fees) is to be computed without subtracting the amount of costs incurred for this Case.

Client will pay Attorney a fee equivalent to THIRTY-THREE AND ONE-THIRD PERCENT (33-1/3%) of any and all amounts recovered, regardless whether by way of settlement, trial verdict, or arbitration decision. Hawaii General Excise Tax (GET) (currently at the rate of 4.712%) will be added to all attorney's fees.

Attorney's fees are payable in full at the time of the settlement, verdict, or award. In the event a structured settlement is reached, Attorney shall have the option to take attorney's fees in a lump sum payment based upon an economic analysis as to the present value of the settlement.

Fee Agmt - 33-1/3%
As of June 2014

3.    COSTS. Client agrees to pay all costs which relate to the Case, including costs advanced by Attorney, from any recovery. If no recovery is obtained, Client shall not be obligated to repay Attorney for costs advanced, except as provided in paragraph 4 below.

Costs include all expenses deemed appropriate by Attorney for the proper handling of the Case. Typically costs include, but are not limited to, fees for court filing, service of process fees, witness fees, expenses for expert witnesses, consultants and investigation, deposition transcript and court reporter fees, and travel expenses (including business class air travel).

Attorney does not specifically charge for in-house copying, postage, facsimile transmissions and local delivery. Instead, Attorney will charge Client a flat fee of $200.00 for such miscellaneous expenses if we are successful.

4.    DISCHARGE AND WITHDRAWAL. Both Client and Attorney have the right to terminate this Agreement at any time. On receiving written notice of termination, Attorney will stop work on the Case. Upon such discharge, Client is obligated to pay any costs incurred prior to such termination.

Attorney may withdraw upon reasonable notice to Client or with Client's consent. Should court approval of withdrawal become necessary, Client will be responsible for expenses incurred by Attorney if the court approves Attorney's request to withdraw.

In the event of either discharge by Client or withdrawal by Attorney, Attorney shall have a lien for Attorney's fees and costs incurred and the right to recover from Client such costs and the reasonable value of services rendered by Attorney from any recovery ultimately obtained by or on behalf of Client.

5.    SCOPE OF SERVICES. This Agreement covers costs and Attorney's fees up through a trial or arbitration of Client's claim. This Agreement does not include or cover the costs and legal fees involved in filing or defending an appeal from a final court judgment nor does this Agreement obligate Attorney to take or handle such an appeal.

The matter of Attorney's representation, costs, and legal fees regarding an appeal and/or a re-trial of Client's claim, if any, are subject to further negotiation between Attorney and Client.

Fee Agmt - 33-1/3%
As of June 2014

6.    LIENS AND REIMBURSEMENT. If third parties have paid for all or a part of the damages you recover (i.e., DSSH, insurers), Client agrees that such sources will be reimbursed out of any proceeds or recovery of applicable damages from Client's share.

7.    MANDATORY ARBITRATION OF DISPUTES. All disputes, controversies and differences which may arise between Attorney and Client in any way related to Attorney's representation of Client pursuant to this Agreement shall be resolved by binding arbitration by Dispute Prevention and Resolution. Client understands Client and Attorney are giving up the right to a trial on this matter.

8.    OBLIGATIONS JOINT AND SEVERAL. All terms, covenants, and conditions to be observed and/or performed by Client shall be joint and several if entered into by more than one person.

9.    CHOICE OF LAW AND SEVERABILITY. This Agreement shall be governed by the laws of the State of Hawaii, both as to interpretation and performance. If any provision of this Agreement is found by any court in the State of Hawaii to be illegal, invalid, or unenforceable, the validity of the remaining provisions will not be affected, and the rights and obligations of the parties will be interpreted and enforced as if this Agreement did not contain the particular provision held to be illegal, invalid, or unenforceable.

CLIENT HAS READ THIS AGREEMENT, UNDERSTANDS IT, AND AGREES TO ITS TERMS, COVENANTS, AND CONDITIONS.

CLIENT
Date: March 2/2018

MICHAEL JAY GREEN
ATTORNEY
Date: 3-9-18

Fee Agmt - 33-1/3%
As of June 2014

5

The undersigned further consents to legal representation by an attorney or attorneys not part of Michael Jay Green's law firm under the following conditions:

(a)  Each attorney assumes joint responsibility for the representation.

(b)  The Attorney(s) covered by this consent are:

~~Glenn H. Uesugi~~  *LB  mB*  May 11/2018

(c)  All other terms of the Agreement are applicable.

CONSENT HAS READ THIS CONSENT, UNDERSTANDS IT, AND AGREES TO IT.

R. Beaulet
"CLIENT"
Date: March 2/2018

MICHAEL JAY GREEN
"ATTORNEY"
Date: 3-9-18

Fee Agmt - 33-1/3%
As of June 2014

Law Offices of Michael Jay Green, Attorney at Law

Davies Pacific Center
841 Bishop Street, Suite 2201
Honolulu, Hawaii 96813
Tel 808.521.3336
Fax 808.566.0347

## CONSENT TO CO-COUNSEL

Re:   Ronda Beselt, et al. v. Waldorf=Astoria Management LLC, et al.;
      Civil No. 16-1-0597(2)

We, Ronda Beselt and Mark Beselt, hereby consent to have Peter C. Hsieh, Esq., and the Law Office of Peter C. Hsieh, as co-counsel with Michael Jay Green and Michael Jay Green and Associates, Inc., to represent us in the above-referenced case pursuant to the Attorney/Client Contingency Fee Retention Agreement, which we signed with Mr. Green on March 2, 2018 ("the Agreement"), the terms and conditions of which are incorporated herein by this reference.

In accordance with the Office of Disciplinary Counsel's Formal Opinion No. 47, we understand that Mr. Hsieh's association with Mr. Green will not cost us anything more and we will not be required to pay any additional contingency fee. All of the terms and conditions of the Agreement are applicable to Mr. Hsieh as co-counsel.

RONDA BESELT                              Date   May 21/18

MARK BESELT                               Date   May 21/18

MICHAEL JAY GREEN                         Date   MAY 2 2 2019

PETER C. HSIEH                            Date   5/21/2018

U.S. Bankruptcy Court - Hawaii  #23-00149  Dkt # 41-1  Filed 07/14/23  Page 18 of 52

 Gmail                                    R LB <rondabeselt@gmail.com>

## Re: Beselt-my son
1 message

**Glenn H. Uesugi** <glenn.uesugi@gmail.com>                    Wed, Mar 7, 2018 at 4:32 PM
To: RLB <rondabeselt@gmail.com>

It means I was brain dead and went home right after speaking to you. I told kelly to have mr. green sign and send to you
via email. Sorry but I was really tired yesterday.

Sent from my iPhone

> On Mar 7, 2018, at 8:09 AM, RLB <rondabeselt@gmail.com> wrote:
>
> Good morning Glenn,
>
> This is my son, Nathan with his first hockey trophy.
>
> It was nice talking with you yesterday...you haven't sent the contract. Does that mean you've changed your mind? :)
> Ronda

Exhibit "5"

 **Gmail**

R LB <rondabeselt@gmail.com>

---

## Fwd: Beselt-transfer of file

1 message

---

**RLB** <rondabeselt@gmail.com>                            Fri, Mar 9, 2018 at 5:54 PM
To: Glenn Uesugi <glenn.uesugi@gmail.com>

---

FYI. please see email below. Jim has been notified and consent has been granted for handover.

Have a nice weekend.
Ronda

---------- Forwarded message ----------
From: **RLB** <rondabeselt@gmail.com>
Date: Fri, Mar 9, 2018 at 4:55 PM
Subject: Beselt-transfer of file
To: Jim Bickerton <bickerton@bsds.com>
Cc: Mark Beselt <mwb2015@gmail.com>, Angela McMullen <angela@bsds.com>


Hello Jim,

We are really blessed that Mr. Green has taken on my case. Thank you for speaking with him.

Mr. Uesugi will be contacting you shortly for hand over. I am consenting to a discussion between the two of you in regards to my case. Please forward my file to Mr. Green's law office.

Wishing you all the best.

Ronda Beselt

 **Gmail**

R LB <rondabeselt@gmail.com>

---

## Re: Beselt-Tuesday at 4
1 message

---

**RLB** <rondabeselt@gmail.com>                         Wed, Mar 14, 2018 at 5:12 PM
To: Glenn Uesugi <glenn.uesugi@gmail.com>

So...are there any days between April 26 and May 21 that may work? :)

R.

On Mar 14, 2018 17:08, "Glenn H. Uesugi" <glenn.uesugi@gmail.com> wrote:
> We will be in the middle of the trial at that point.
>
> Sent from my iPhone
>
> On Mar 14, 2018, at 10:45 AM, RLB <rondabeselt@gmail.com> wrote:
>
>> Glenn, thank you for working on my case.
>>
>> Would May 3-10 be better for you and Mr. Green? I don't mean to bother you but if we are going to come all that way, it would be advantageous to get "legal stuff" done as well. I recognize that you can not offer much advice until you get my file but hopefully that will be soon!
>>
>> Thanks again,
>> Ronda
>>
>> On Mar 14, 2018 02:43, "Glenn H. Uesugi" <glenn.uesugi@gmail.com> wrote:
>>> Until I get your file it is difficult to give you advice. From May 10-20 we have a trial scheduled that will probably go forward. I will look into the withdrawal and substitution of counsel.
>>>
>>> On Tue, Mar 13, 2018 at 12:03 PM, RLB <rondabeselt@gmail.com> wrote:
>>>> Hello from Calgary, Glenn!
>>>>
>>>> I hope you are well. I was wondering, if my time slot, Tuesday at 4 was my time or yours? :)
>>>>
>>>> We have sprung ahead so there is a 4 hour difference now. I did just call your office phone but didn't leave a message.
>>>>
>>>> Can you help me, with the following 3 things:
>>>>
>>>> 1) Withdrawl and substitution-needs to be done by March 23, 2018 with Bickerton Dang. Can you please look into that?
>>>>
>>>> 2) My sport therapist/rehab trainer from Germany and his girlfriend are coming to Hawaii. I think we are going to come out for a week or so to join them and are looking at flights now. Do you think that you and Mr. Green would have time for me between May 10-20?
>>>>
>>>> 3) Would it be helpful to have me see Dr. Rogers in Maui or Dr. Rossi in Oahu or Dr. Hall on the Big island while I am there? Or anyone that you folks might need me to see?
>>>>
>>>> I look forward to hearing from you,
>>>>
>>>> Ronda Beselt
>>>> 403-255-7051 h
>>>> 403-630-5557 c

 Gmail                                          R LB <rondabeselt@gmail.com>

---

## Re: Beselt-update pls
1 message

---

**Glenn H. Uesugi** <glenn.uesugi@gmail.com>                    Wed, Mar 21, 2018 at 6:03 PM
To: RLB <rondabeselt@gmail.com>

I have spoke to Patti Napier. She said that one defense could be that someone moved the tent. Did you see anyone trying
to move the tent? Also I mentioned to her that the latest releases are ok, but she said the only ones she has was the ones
used that got the records in the first place and then later were destroyed. I believe in full disclosure and would ask that
you simply turn over all the medical records including the records that talk about your son. I don't believe in hiding things.
Preventing records from being disclosed makes defendants suspicious and that you are hiding something, and it creates
issues in litigating the case. Patti Napier also said that because of all these records issues, that she said the trial date
needs to be moved because nothing has been done in the way of discovery. I don't know how you feel about that. I
mentioned the need for the medical records to be subpeonaed in canada and she said that is more expensive and drives
up costs tremendously. That is why they requested the records by medical authorization in the first place.

I have not spoken to Ryan Akamine who represents the state of hawaii. The case against the state from my perspective
at the moment is thin. Unless there were prior incidents that the state knew about, it is a tough case against them.

Jim Bickerton sent over the files on a cd and we are having them printed.

On Wed, Mar 21, 2018 at 12:56 PM, RLB <rondabeselt@gmail.com> wrote:
> Hi Glenn,
>
> How is the withdrawal and substitution paperwork coming along? I have not received any paperwork to date.
>
> Have you spoken with Jim or Patty Napier?
>
> When is the best time to call you?
>
> Thanks,
> Ronda

Gmail R LB <rondabeselt@gmail.com>

# Fwd: Beselt-we are coming to Hawaii May 2018

1 message

**RLB** <rondabeselt@gmail.com> Thu, Apr 5, 2018 at 1:51 PM
To: Glenn Uesugi <glenn.uesugi@gmail.com>, Mark Beselt <mwb2015@gmail.com>

Hello Glenn,

FYI. please see email below. We are coming to Hawaii in May. If you need me to see anyone while in Hawaii, please let me know.

Also, we are visiting with my German sport therapist from my spinal surgery in Germany. His english is near fluent and he would be able to translate any german documents if you needed.

Regards,
Ronda Beselt

---------- Forwarded message ----------
From: **RLB** <rondabeselt@gmail.com>
Date: Thu, Apr 5, 2018 at 1:38 PM
Subject: Beselt-we are coming to Hawaii May 2018
To: michaeljgreen@hawaii.rr.com

Hello Mr. Green,

I just wanted to notify you that we will be in Hawaii in May for the following time line:

May 10-17 Big Island
May 17-21 Maui
May 21 Honolulu (we fly out at 1010 pm from HNL)

We recognize that you are extremely busy and most likely in court but if possible we would like to meet with you for a few minutes. I could fly over any time between May 11 and 21 or see you on the 21, if you have time.

Please let me know if you are available.

Thank you,
Ronda Beselt

403-255-7051 h
403-630-5557 m

U.S. Bankruptcy Court - Hawaii #23-00149 Dkt # 41-1 Filed 07/14/23 Page 23 of 52

# GEORGE R. CLARK

## ATTORNEY AT LAW

### 800 CONNECTICUT AVENUE, N.W.
### SUITE 300
### WASHINGTON, D.C. 20006

202-331-3200
202-331-2100 (FAX)
GRCLARK@GEORGERCLARK.COM

February 23. 2021

<u>Via E-mail</u>
Arnold T. Phillips
Century Square Bldg.
1188 Bishop Street
Ste. 2907
Honolulu, HI 96813

Re: Ronda Beselt Matter

Dear Mr. Phillips:

As you know I have been retained as an expert on behalf of Ms. Ronda Beselt. You have provided me a number of documents concerning this matter.

I have given you a lengthy chronology which sets forth various failures to meet the standard of care as evidenced in may instances by the failure to abide by the Hawaii Rules of Professional Conduct. I have prepared a short summary of the various Rules violations which is also attached to this letter. You have previously filed a declaration by me concerning many of the same matters.

My opinions expressed to date are only preliminary and are subject to revision upon my review of further documents, depositions, and other information that may become available during the course of the case, which has yet to be filed. At this stage, there has been no discovery, and further information will become available.

Sincerely yours,

*George Clark*

George R. Clark

Exhibit "6"

Categories of Violations

- This lists the various Hawaii Rules of Professional Conduct that Ms. Beselt's lawyers failed to follow, with their actions evidence of negligence. I have not tried to list all of the failures under each Rule. There is more detail on that in the longer chronology. Here I give some examples. The numbers are listed in numerical order.

- **Hawaii Rule of Professional Conduct 1.1** requires competence; The failure to obtain medical records is a prime example. as even Judge Cahill said why did not plaintiff's counsel get the medical records instead of leaving it to defendants? This would have allowed RMB to have the records needed to prove her case and control over them; instead neither she nor her lawyers knew what records had been produced to defendants and whether they were getting copies; some of this negligence was as simple as defense not paying for records and thus not being produced; this was complicated by Canadian law (also German) which required certain procedures to be followed; all the lawyers failed on competence here too because they did not want to do the work the right way. Forged consents meant that providers in Canada would not produce to defense, without Court Order, or at all; RMB left to try to straighten this out as JB and PH really did nothing to get the records; their attitude was let the defense do the work; but they needed the records to prove the case; JB sent forged consents – which he acknowledges months later were forged – 6-27+28-17 without RMB consent.

  - Issues of competence and diligence on producing medical records; JB and MG say will use own forms but end up doing otherwise; say they will control the consents, but they do not, including on 3d party (kids) records.

1

- **More 1.1 issues.** Failure to ask for a jury trial. PH failure to list witnesses just straight incompetence. MK failure to serve Hawaii the same; dropping Hawaii later was just PH laziness.
- All of the records issues lead to motion to compel where RMB sanctioned from producing more records – these were needed to prove case and to give to experts; RMB precluded from using evidence to prove her case.
- Consistent file transfer problems among firms, including destroying records; failure to account for expenses and to pay expenses of doctors which led to expert problems.
- **Rule 1.2 speaks to the lawyer's obligation to follow client's right to control the object of the representation and settlement**. Production of psychiatric records; RMB did not want to do this and was willing to sacrifice some damages to keep her privacy. This is an issue on which she had the right to decide even if the lawyers wanted more money by including them. Rule 1.2 gives here this right: "a lawyer shall abide by a client's decisions concerning the objectives of representation,
- **Rule 1.2(a) also says that: A lawyer shall abide by a client's decision whether to settle a matter.** MG pressured RMB to settle so he would get a fee, and never took responsibility for how poorly the case was handled and how discovery had been botched. Recall that MG said on day one that "these people are dead in the water." That changed only by PH's incompetence.

- **The lawyers also violated Hawaii Rule 1.3 "A lawyer shall act with reasonable diligence and promptness in representing a client."** Forgetting the forged consents issue for a moment, the lawyers were lazy,

2

which means This also comes up in failing to help prepare discovery answers and for MG and PH prepare RMB for deposition. PH was particularly guilty in failing to file oppositions to motions and other documents on time and complete but other incidents are noted throughout.

- Forged consents by JB firm; although there is some evidence, he lets defense know this and they start over, the record is not clear that defense admitted the problem was JB and not RMB; later defense uses forged consents as RMB problem and PH never really explains; more 1.3.

- 

- On consents (before talking about forgeries) MG says 2-27-18 that what JB did on forged consents was wrong, but neither he nor PH ever lay out to the Judge what happened – PH had the chance to do that at the first status conf on 7-20-18 where the Judge restricts amendments to consents and PH does not object.

- **Rule 1.4 is important for several reasons, primarily that the client must be kept informed of what is happening**. All the lawyers here were tardy in responding to requests for information or asking how to do things – most often they never helped. They said, "don't ever call me." PH on 6-18-18 "Don't call, don't ask questions." They went months before getting in touch after they were hired, and they threatened to quit all the time to try to intimidate RMB into doing what they wanted, which usually was to allow them to do less work or to try to get psych damages back in the case to increase their fees. Hawaii Rule 1.4 in full:

Rule 1.4. COMMUNICATION.
   (a) A lawyer shall:
   (1) promptly inform the client of any decision or circumstance with respect to which the client's consent after consultation, as defined in Rule 1.0(c), is required by these Rules;

3

> (2)  reasonably consult with the client about the means by which the client's objectives are to be accomplished;
>
> (3)  keep the client reasonably informed about the status of the matter;
>
> (4)  promptly comply with reasonable requests for information;
>
> (5)  consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Rules of Professional Conduct or other law; and
>
> (6)  promptly inform the client of a written offer of settlement in a civil controversy or a proffered plea bargain in a criminal case which the lawyer receives.
>
> **(b)** A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

- As required by Rule 1.4, the lawyer shall consult with the client as to the means by which the objectives are to be accomplished."

- **Rule 1.6 requires the lawyer to preserve client confidences.** Rule 1.6(a) on confidentiality also required the lawyers to protect RMB's confidences, including these records; "**(a)**  A lawyer shall not reveal confidential information relating to the representation of a client unless the client consents after consultation, the disclosure is impliedly authorized in order to carry out the representation, or as stated in paragraph (b) or (c)." The lawyers produced records without protective orders being entered; ignored RMB's questions and comments on the eventual protective order and did not police filings to make sure protected info was not public.

- MG motion to withdraw violated Hawaii Rules 1.6 and 1.16. He laid out details of the relationship which had gone sour, hurting the plaintiff in the eyes of the defense and encouraging defense not to settle for even something more than nuisance value.

- **Jan Apo initial conflict**: later defense uses this as part of argument that RMB keeps switching lawyers to avoid discovery **Rule 1.7** ". To determine whether a conflict of interest exists, a lawyer should adopt reasonable

4

procedures, appropriate for the size and type of firm and practice, to determine in both litigation and non-litigation matters the persons and issues.

- **Sexual relationship with client forbidden by Hawaii Rule 1.8(j):** "**(j)** A lawyer shall not have sexual relations with a client unless a consensual sexual relationship existed between them when the client-lawyer relationship commenced." Comment 17 to the Rule explains why: *[17]The relationship between lawyer and client is a fiduciary one in which the lawyer occupies the highest position of trust and confidence. The relationship is almost always unequal; thus, a sexual relationship between lawyer and client can involve unfair exploitation of the lawyer's fiduciary role, in violation of the lawyer's basic ethical obligation not to use the trust of the client to the client's disadvantage. In addition, such a relationship presents a significant danger that, because of the lawyer's emotional involvement, the lawyer will be unable to represent the client without impairment of the exercise of independent professional judgment. Moreover, a blurred line between the professional and personal relationships may make it difficult to predict to what extent client confidences will be protected by the client-lawyer evidentiary privilege, since client confidences are protected by privilege only when they are imparted in the context of the client-lawyer relationship. Because of the significant danger of harm to client interests and because the client's own emotional involvement renders it unlikely that the client could give adequate consent, this Rule prohibits the lawyer from having sexual relations with a client regardless of whether the relationship is consensual and regardless of the absence of prejudice to the client.*

5

Remember that PH said he would be fired if MG found out about the sexual relationship; did MG knew PH did this often because PH bragged to RMB that he had many such liaisons. So MG may have added liability here.

- **Rule 1.16(b): (b) Except as stated in paragraph (c), a lawyer may withdraw from representing a client if:**

  **(1) withdrawal can be accomplished without material adverse effect on the interests of the client;**

- MG motion to withdraw violated Hawaii Rules 1.6 and 1.16. He laid out details of the relationship which had gone sour, hurting the plaintiff in the eyes of the defense and encouraging defense not to settle for even something more than nuisance value. You do not do this. You file for "irreconcilable differences" and any details are in camera. The Judge was experienced enough to hold the hearing in camera, but the harm was done. Rule 1.6(b)(4) "(4) to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client, to establish a defense to a criminal charge or civil claim against the lawyer based upon conduct in which the client was involved, or to respond to allegations in any proceeding concerning the lawyer's representation of the client;" You are allowed to disclose only the minimum necessary – this is why any ethics lawyer will tell you to say "irreconcilable differences."

- MG moved to withdraw with critical discovery happening, a motion to compel granted, a trial date looming, and expert reports not done. The Judge let them out because he concluded RMB had caused discovery problems – but PH never put forth what had happened – he wanted out.

- **Rule 3.2 requires expediting litigation consistent with the interests of the client.** Here the lawyers delayed doing discovery, fact investigation, filing

6

U.S. Bankruptcy Court - Hawaii  #23-00149  Dkt # 41-1  Filed  07/14/23  Page 30 of 52

pleadings late, agreeing to trial date postponements over the client's objection and not looking at the file for months after being retained.

- **Rule 3.3 requires candor to the tribunal.** PH consistently failed to prepare for hearings, blamed his client for his own failures in discovery and failed to correct the false statements by defense counsel.

7

## Michael Green (MG), Glenn Uesugi (GU) and Peter Hsieh (PH)

1. 3-2-18 RMB talks with well known plaintiffs lawyer Michael Green after he spoken to JB; MG says "these people are dead in the water" "this is not rocket science' and no settlement unless you get what you need and they know I will "try the case if we have to"; MG agrees no psych damage claim in exchange for not producing records although I detect a reduced enthusiasm once RMB mentions that; says I always return phone calls same day, my people will always get back to you, is aware of 9-24-18 trial date; while these statements are not guarantees of a result they are inconsistent with what his firm does in the case

2. 3-7-18 MG has mailed his consents but RMB says use the ones I signed for JB with the right info about Court reporter etc and have records go to MG; working with Glenn Uesugi (GU). **1.2**

3. 3-21-18 GU in touch with Napier about new consents but she says she only has old consents, wants a trial date delay from 2-18-19 and GU agrees to turn over RMB's son's medical records; CGU wants to drop state; RMB doesn't want to turn over, GU says "it's easier" for him that is; tells RMB he can't work on her case until Sept., 6 months away; again neglect of case and not following request of client on protecting privacy.
   **1.1, 1.2, 1.3, 1.4, 1.6, 3.2**

4. 4-26-18 call MG re needing new lawyer and can't wait 6 months, MG says will get one and "you aren't going to have a problem with a lawyer" I have 16 lawyers here; traumatic injury and Sept not acceptable; "we're not too busy for your case" but nothing happens. **1.1, 1.2, 1.3, 1.4, 1.6, 3.2**

1

5. 5-4-18 Peter Hsieh (PH) reviews and wants to drop State says too hard; substitution of counsel not filed; again delay in working on case; PH says don't call me; "too much work to go after State" but was hired to do that; breached agreement, taking client choice away. **1.1, 1.2, 1.3, 1.4, 3.2**

6. 5-21-18 brief meeting HI with MG rest with PH who says won't take case unless psych damages even though MG agreed to the contrary; forced client to pursue case she didn't want at threat of dropping whole thing; tells PH about consents which defense is saying were withdrawn, but was result of forgery by JB office, but MG says he doesn't care "I don't like to bash other lawyers"; this is a huge problem because it leads to motion to compel in 1-19 that kills RMB case; RMB says defense agreed to no psych records but will produce if individual provider consents are used and 3d party redactions. **1.1, 1.2, 1.3, 1.4, 1.6, 3.2**

7. 6-5-18 PH unaware of pro order than was in place and RMB had sent to him; PH not up to the case. PH says cannot produce records in camera even though MG said could be done. **1.1, 1.2, 1.3, 1.4, 1.6, 3.2**

8. 6-6-18 PH says Pro order will protect so no need for in camera; PH (and RMB) did not know in Alberta redaction must be done before records are sent out by provider – this problem comes up again and is part of motion to compel problem. **1.1, 1.2, 1.3, 1.4, 1.6, 3.2**

9. 6-8-18 PH says he's withdrawing and don't call me; lawyer can't say client has no right to find out status of case; PH says I'm doing this case for the money not for free or I'm not doing the case. Napier had told PH would be motion to compel unless consents issued and discovery answered, but RMB didn't find out until months later; this was important for 7-20-18 status call that PH did not prepare for. **1.1, 1.2, 1.3, 1.4, 1.6, 3.2, 3.3**

2

**10.** 6-21-18 PH won't say whether withdrawing – breach of duty of care because status call was important and client didn't know if she had a lawyer and lawyer wouldn't respond if he was withdrawing. **1.1. 1.4, 1.16**

**11.** 7-5-18 PH won't say if staying case; RMB says she'll sign any form necessary. **1.1. 1.4, 1.16**

12. 7-11-18 PH will stay but doesn't understand what he was told by RMB -- "If you recall from our last conversation in June, the providers here are particular about the authorizations, and won't provide information on a blanket consent form. Some government custodians of records will only take authorizations on their government forms." Plaintiff and PH knew there would be issues with record retrieval because of the forged authorizations, and that she must give "informed consent" (ie. one provider per authorization) and she wanted to prevent any further issues from happening. **1.1, 1.2, 1.3, 1.4, 1.6**

13. 7-12-18 PH agrees to consents allowing son's info and that of Mark even though Mark wasn't making employment or damage claims; forms Therefore, Napier changed her blank authorization to INCLUDE 3rd party information. Signing Napier's blank authorizations would give defense complete control of discovery, is illegal in Alberta, and would give them the ability to go anywhere without Plaintiff knowing, which is what Jim had told Plaintiff and Mark he did not allow to happen.

Regardless, PH emailed that defense authorizations were okay, full well knowing that Plaintiff couldn't sign a blank authorization because of the record issues that had occurred, nor was she agreeable to providing her

3

child's medical information, particularly the files that were intermingled, to be released to defense counsel. Plaintiff couldn't understand why her children had to have their privacy invaded, especially when Plaintiff and Mark had been told by JB and MG that it was not necessary.

This meant PH was creating discovery issues because he did not understand what the law required in Canada and was having RMB agree to things she could not do; RMB would be sanctioned for this later; failure to meet standard of care. **1.1, 1.2, 1.3, 1.4, 1.6, 3.2, 3.3**

14. 7-13-18 RMB repeats all the problems with Napier consents to PH and says use the JB ones that were done properly (even though JB wanted to change those). Plaintiff clearly explained in the email to Peter that if she was to sign Napier's authorizations there would be problems obtaining the records in Canada; however, he thought they were acceptable even though Plaintiff and Mark had discussed it on the phone, and sent him emails explaining that he should not agree to her terms because it was going to cause issues in the retrieval. It wasn't just Plaintiff's children's privacy issues that she was concerned about but the problems created by JB's forged authorizations, and Napier's blank consents were not legal in Alberta as they were in contravention of privacy laws, such as giving informed consent. You are not consenting, if you don't know who they are requesting records from.

Plaintiff also explained to Peter over the phone, that in Canada, plaintiff's attorneys gather the records, redact 3rd party information, then provide the records to defense counsel. That is how plaintiff's attorneys are able to get records without redactions in Alberta, otherwise some agencies would not allow 3rd party information to be sent. **1.1, 1.2, 1.3, 1.4, 1.6**

4

15. 7-16-18 RMB received 7-13 status report of Napier in which she falsely accuses RMB of interfering with and impairing discovery; Napier fails to mention that consent w/d by JB was because of their forgery mistake.

16. 7-17-18 PH files one page saying no discovery done, doesn't rebut claims by defense; RMB signs and sends 32 authorizations for PH to send to defense but he waits until 12 minutes before 7-20 status pissing off defense and more claims of interference; PH never uses the consents to obtain plaintiff's records himself; failure to do discovery and failure to protect RMB interest in status call which turns Judge against RMB. **1.1, 1.2, 1.3, 1.4, 1.6, 3.3**

17. 7-20-18 RMB summary of status which shows PH did nothing to defend RMB actions on discovery and approved consents which PH was told would create discovery issues in Canada; this was part of continued malpractice on discovery -- failure to meet standard of care. Because neither GU nor PH worked on Plaintiff's case for nearly 5 months, didn't offer to do any discovery or even suggest RMB sign authorizations for their office, it further hindered the case. In JB's most recent authorizations (Jan-Feb 2018) it clearly states, "THIS AUTHORIZATION DOES NOT AUTHORIZE ANY ORAL COMMUNICATION OR CONSULTATIONS WITH CUSTODIANS OF RECORDS OR HEALTH CARE PROVIDERS. NO WRITTEN REPORTS MAY BE REQUESTED THAT ARE NOT ALREADY PART OF THE RECORDS BEING REQUESTED."
Losing this additional information allowed Goodsill and staff to contact Plaintiff's providers, and the custodians of records. Sandra Cole paralegal of Napier signed declarations that were false because she stated that the custodians of records told her information, that simply was untrue. (That

5

definitely impacted Judge Cahill's decision at the February 13, 2019 hearing on the Motion to Compel). Peter also didn't contact the custodians to get an accurate account of what took place.)

Napier knew there would be problems with her blank authorizations from the first go around in 2017 with JB's forged consents and that many of the providers required their own authorizations which they sent back to her office, but she insisted and PH did nothing to oppose her at the Status Conference. PH relayed to RMB that he agreed with the Judge that RMB should sign the defense's blank authorizations knowing what RMB had told him about the previous problems. PH hadn't prepared for this Status Conference at all. He did nothing to heed RMB warnings about the problems that where already as issue with the custodians of records in Alberta.

From July 20, 2018 onwards, Napier completely controlled and dictated discovery, records retrieval and Plaintiff's attorney were constantly reacting to Napier's lies. PH knew there were going to be issues with the records retrieval, but instead he sat back and allowed Napier to do whatever she wanted. **1.1, 1.2, 1.3, 1.4, 1.6, 3.2,3.3**

18. 7-20-18 Judge ordered no changes to authorizations creating issues; in call after conf PH tells RMB that she would have to "do anything he told her to do, including drinking his pee." This type of crude control shows his view he would make the decisions, even if client input was needed or appropriate; this does not meet general litigation standard of care. **1.1, 1.3, 1.4**

6

19. 7-30-18 RMB forced to answer RFA late at night; PH never gave help on how to answer interrogs. **1.1, 1.2, 1.3, 1.4, 1.6**

20. 7-31-18 discovery answers due; PH makes changes w/o approval from RMB and not under Pro Order; again failure to meet standard of care. **1.1, 1.2, 1.3, 1.4, 1.6**

21. 8-2-18 RMB sends incomplete list of medical providers; PH says don't worry they'll get later; PH never sent until 1-19 after defense in motion to compel says never got full list; another discovery failure that severely impacted RMB. **1.1, 1.2, 1.3, 1.4, 1.6, 3.2, 3.3**

22. 8-3-18 PH refuses help of Canadian lawyer on discovery – again this hurt on motion to compel 1-19 which basically doomed RMB case. **1.1, 1.2, 1.3, 1.4, 1.6**

23. 8-6-18 90 providers mentioned; would trial be postponed? RMB wanted minimal delay; PH non-responsive .Was Hawaii dismissed (done days later) but PH didn't try to get jury trial against Waldorf – another failure to meet standard of care. **1.1, 1.2, 1.3, 1.4,**

24. 8-31 and 9-1 -18 RMB tried to make sure Alberta will produce records but some are delayed months. PH did nothing to try to get production – that was his job, not RMB's. **1.1, 1.2, 1.3, 1.4, 1.6, 3.2**

25. 9-3-18 RMB asks for help on RFA but PH never does; was starting romantic relationship by then which interfered with PH doing his job and is against the ethics rules. **1.1, 1.2, 1.3, 1.4, 1.6, 1.8**

26. 9-3-18 PH fails to get surgery records; threatens Hague Convention but never does anything. **1.1, 1.2, 1.3, 1.4,**

27. 9-9-18 romantic relationship since mid August; PH says he has them often with clients and are ok; masturbates while on calls; RMB says no

7

sex until divorce – of course PH also represents Mark so he's in a conflict besides an unethical relationship. **1.1, 1.7, 1.8**

28. 9-13-18  PH makes no effort to obtain medical records from Germany which are critical to case; Germans wanted legal procedure to be followed. **1.1, 1.2, 1.3, 1.4, 1.6**

29. 9-18-18 no help to RMB on RFA answers – part of continuing problem. **1.1, 1.2, 1.3, 1.4, 1.6**

30. 9-24-18 Alberta says won't release under consent and usually gives to plaintiff not defendant PH does nothing about this issue. **1.1, 1.2, 1.3, 1.4, 1.6**

31. 9-26-18 PH planning to visit RMB in Canada but he has no passport, money and owes IRS and child support; has bankruptcy; using case to solve his problems, not the clients. **1.1, 1.2, 1.3, 1.4, 1.6, 1.8, 3.2**

32. 9-28-18 PH agrees to later trial expert reports 120 days before trial but he's nothing to put this in motion. **1.1, 1.2, 1.3, 1.4, 1.6**

33. 10-3-18 blank authorizations causing problems; either doctors don't want to produce without confirmation from RMB but because she has had to sign blank forms; she doesn't know who is being asked; other providers think defense is her lawyer and turn over records but RMB doesn't even know; this becomes apparent over time and is caused by PH failures before July status where he did not explain what had happened with JB consents. **1.1, 1.2, 1.3, 1.4, 1.6, 3.3**

34. 10-8-18 spinal records that PH doesn't get (like ones from Germany too) meaning RMB can't prove her injuries or treatment. **1.1, 1.2, 1.3, 1.4, 1.6**

35. 10-9-18  RMB e-mail to PH shows failure to gather or produce records was causing chaos and delaying and impeding RMB case.

8

There were a number of issues with obtaining the records. Napier requested copies of Plaintiff's driver's license and Alberta health care card along with creating their own Attachment "A" to blanket providers, which everyone knew would not suffice to get the records because in Canada a person must give informed consent, so it needed to appear that Plaintiff knew which providers of records she was releasing. Because of the record issues created by Bickerton's forged consents, AHS told Plaintiff they required her to sign one authorization per provider and initial it. Plaintiff's attorney did not attempt to help the situation by even asking Plaintiff to sign authorizations for his office so that he could get the records and provide them to defense.

Napier now pushed back trial to September 2019, and stated that IME's, deposition and mediation would be off if she didn't have all Plaintiff's records (medical, employment and academic by end of November 2018). Peter agreed to the trial date of September 30, 2019 against Plaintiff's request to have it no later than July 2019. **1.1, 1.2, 1.3, 1.4, 1.6, 3.2**

36. 10-10-18 defense wants to use Dr. Ross as expert – he treated RMB; she objects, goes to MG who says no; PH was going to allow ; more failure to know how to conduct case. **1.1, 1.2, 1.3, 1.4, 1.6**

37. 10-18-18 PH forgets to produce records -- again not paying attention to what needs to be done. PH says this is a damages only case so medical records are key. **1.1, 1.2, 1.3, 1.4, 1.6**

38. 10-19-18 Napier accusing of impeding discovery, PH has e-mails from JB showing he created problems but doesn't want to use them based on attorney-client privilege. **1.1, 1.2, 1.3, 1.4, 1.6**

9

39. 10-28-18 more issues with consents that PH seems baffled by and doesn't try to solve but leaves to RMB. **1.1, 1.2, 1.3, 1.4, 1.6**

40. 10-30-18  PH never contacts the Shanks family in Los Angeles that were witnesses and hit themselves until a phone call in May 2019 when the case was about to be dismissed; PH never talks to EMT; failure to investigate. **1.1, 1.2, 1.3, 1.4, 1.6, 3.2**

41. 11-7-18 RMB asks for help on interrog answers ; none given by PH. **1.1, 1.2, 1.3, 1.4, 1.6, 1.8**

42. 11-14-18 Napier using blank consents sent all over to doctors she never saw; PH does nothing to stop. **1.1, 1.2, 1.3, 1.4, 1.6**

43. 11-14to17-18 PH and RMB stay at Fairmont in Victoria; have sexual relationship even though RMB resists. 1.8

44. 11-26-18 Napier doesn't pay for records until late so they aren't sent; Napier blames RMB for this later; PH doesn't contradict. **1.1, 1.2, 1.3, 1.4, 1.6**

45. 11-28-18 PH also doesn't know from whom records have been requested as he hasn't asked for them; don't know if records beyond consents have been produced; PH was to make sure consents sent to named providers and no others but never did this. **1.1, 1.2, 1.3, 1.4, 1.6**

46. 11-30-18 PH makes RMB physically get counseling records and they are redacted because they included Mark; PH should have handled this on phone; Napier uses this to claim RMB interference in January 2019 motion. **1.1, 1.2, 1.3, 1.4, 1.6, 3.2, 3.3**

47. 12-10-18 PH agrees he "messed up" expert exchange dates with RMB 120 days and defense 90; now Sept 2019 trial so these are May and medical records are not yet fully produced. **1.1, 1.2, 1.3, 1.4, 1.6**

U.S. Bankruptcy Court - Hawaii  #23-00149  Dkt # 41-1  Filed  07/14/23  Page 41 of 52

48. 12-11-18 confusion over what employment records have been produced by PH does not straighten out. **1.1, 1.2, 1.3, 1.4, 1.6**

49. 12-12-18 PH doesn't help on interrogs – this is a basic job of a trial lawyer. **1.1, 1.2, 1.3, 1.4, 1.6**

50. 12-17-18 RMB says PH there are problems with records from 27 providers, from payment to no records to Plaintiff; PH does nothing. **1.1, 1.2, 1.3, 1.4, 1.6, 3.2**

51. 12-17 to 21-18 problems with production including refusals to give to defense or no payment; PH won't deal the issues; this is about to blow up. **1.1, 1.2, 1.3, 1.4, 1.6**

52. 12-26-18 PH doesn't ask for umbrella incidents more than 3 years before event. **1.1, 1.2, 1.3, 1.4, 1.6**

53. 1-3-19 Napier threatening motion to compel; PH responding by blaming RMB even though he has done little to get discovery done; RMB says are real records issues and PH not helpful and doesn't seem to understand privacy issues; instead argues over personal relationship which he has characterized as "Stockholm Syndrome" several times because of his abusive treatment of RMB; again this is breach of fiduciary duty of loyalty to client. **1.1, 1.2, 1.3, 1.4, 1.6, 1.8**

54. 1-4-19 PH looks at 12-27 e-mail from Napier threatening motion to compel (m/c); motion filed 1-10; again PH failed to adequately represent; in interim many records being produced. **1.1, 1.2, 1.3, 1.4, 1.6**

55. 1-10-19 m/c filed accusing RMB of impeding discovery; PH had not told Judge in July status conference what had happened; RMB had signed consents for PH to get records (which would have eliminated many of the problems in Canada) but PH insisted on defense getting them – and thus

11

causing the many problems; PH wanted someone else to do the work, so the discovery became chaotic. **1.1, 1.2, 1.3, 1.4, 1.6, 3.2, 3.3**

56. 1-19 scrambling to show what caused problems but PH putting burden on RMB to do the work of getting affidavits; this was his job. **1.1, 1.2, 1.3, 1.4, 1.6**

57. 1-21-19 series of depositions and doc visits in Hawaii; site inspection on 1-25 but PH brings RMB instead of engineer who can testify and defense denies later 2d request; again failure to do ordinary work on case. **1.1, 1.2, 1.3, 1.4,**

58. 1-19 opp to m/c being worked on but RMB having to gather info. **1.1, 1.2, 1.3, 1.4, 1.6**

59. 1-24-19 GWR employee says in depo umbrellas blew into people once a week, then changes to once a month but PH doesn't follow up **1.1**

60. 1-26-19 info gathered that defense problem was in part they didn't pay for records, in addition to Canada rules. **1.1, 1.2, 1.3, 1.4, 1.6**

61. 1-29-19 RMB-goes to Dr. Rossi for reassessment since 2017; not done because PH didn't pay his fee (again basic lawyering) **1.1, 1.2, 1.3, 1.4, 1.6**

62. Late Jan early Feb RMB and PH (letter of 2-5 only one PH got on his own) get info on why Canada records not produced or redacted and defense failure to pay for use in opp to m/c. **1.1, 1.2, 1.3, 1.4, 1.6, 3.3**

63. 2-7-19 PH files opp to m/c; 38pages. On time (only time PH did so) but exceeded the 20 page limit which angered Judge. **1.1**

64. 2-10-19 hearing PH says his fault; Judge says why didn't you get records; but thinks RMB playing games, no more discovery. **1.1, 1.2, 1.3, 1.4, 1.6, 3.3**

65. Next several weeks scramble over records while on reconsideration

12

66.3-6-19 PH has dumped RMB; says MG will fire him if MG learns of romantic relationship; PH copies MG on this. **1.8**

67.3-7-19 PH confesses another relationship; Mark showed RMB Hawaii rules stating couldn't have sexual relationship; PH now says records issue was RMB fault – lawyer blaming client for his conduct. **1.8**

68.3-15-19 mediation goes nowhere PH gave all expert reports; 100K offer PH counters 825K defense goes 125K; MG on phone to say hello only **1.1, 1.2, 1.3, 1.4,**

69.3-19-19 m/c order says only RMB can't do more discovery but at hearing was both sides; PH says don't bother to correct order which was submitted by defense – again PH fails to act to protect client, for no apparent reason. **1.1, 1.2, 1.3, 1.4, 1.8**

70.3-23-19 big argument PH and RMB; PH blames RMB for records issues, even though he refused to state what had happened or help deal with the issue; as Judge had asked at m/c compel hearing – why didn't you get records? Part of the fight was instigated by break up between PH and RMB, showing why lawyers are forbidden to have such relationships with their clients. **1.1, 1.2, 1.3, 1.4, 1.6, 1.8**

71.3-25-19 motion for reconsideration filed; says PH would try to get records but he never did; again failure to adequately represent. **1.1, 1.2, 1.3, 1.4, 1.6**

72.3-27-19 Napier says to PH re his saying will find records : In Napier's March 26, 2019 email to Peter she quotes, "As for redactions, you have the same records we do and can review them to see whether they are redacted. I must admit that some of the requests in your emails remind

me of Tom Sawyer trying to get assistance in painting the fence." PH always making excuses for his failings. **1.1, 1.2, 1.3, 1.4, 1.6**

73. 3-27-19 PH does not respond to Napier false claims.

Email chain between PH and Napier. Examples of some of Napier's misstatements:
-They don't have records that she is aware of, prior to the time periods requested;
-Plaintiff revoked authorizations in Sept 2017 (Not JB's forged authorizations)
-Defense could continue to obtain records after Feb 13 and use them at trial;
-Only Plaintiff couldn't obtain further records nor use them at trial; and
-Defense doesn't deny that they are withholding plaintiff's records (she leads Judge to believe this is the case). **1.1, 1.2, 1.3, 1.4, 1.6**

74. 3-27-19 RMB and Mark don't want PH at their depos and want MG but he won't appear; ask PH to get a new lawyer and he says only if get my 1/3 fee and new lawyer gets 1/3; extortion of client who he malpracticed against; PH can't settle claim v. RMB without her getting independent legal advice. **1.1, 1.7, 1.8**

75. 4-1-19 PH e-mails medical records to Napier which he has had since 2-13-19; again failure to act in timely fashion and he had promised records in motion for reconsideration. **1.1, 1.2, 1.3, 1.4, 1.6**

76. 4-4-19 RMB unsure if should keep supplying records which she was getting; PH not saying what to do; issues with doing IMEs which PH was not paying attention to. **1.1, 1.2, 1.3, 1.4, 1.6**

14

77.4-4-19 Napier says RMB and PH lying in motion for reconsideration. **3.3**

78.4-7-19 problems with IMEs which PH got late because he didn't pay for
   them and too late to meet dates; problems with doing Mark's depo
   because of romantic relationship; PH didn't tell RMB about new m/c;
   again failure to inform client of important events. **1.1, 1.2, 1.3, 1.4, 1.6,
   1.8**

79.4-8-19 PH incommunicado over m/c **1.1, 1.2, 1.3, 1.4, 1.6**

80.4-9-19 PH sends draft opp to m/c filled with factual errors. **1.1, 1.2, 1.3,
   1.4, 1.6**

81.4-17-19  PH scrambling on IMEs and depo dates and production of
   records but getting little done and agreeing to dates and places
   inconvenient for RMB.  Summary: RMB emailed PH a long email with
   concerns that she had with the Stipulation he signed without talking to
   RMB about it, and issues with why he hadn't booked plaintiff's experts
   for future IME dates, etc. RMB asked to have Dr. Rossi physically
   examine her to document her nerve damage, but PH keeps forgetting to
   schedule Dr. Rossi for RMB. **1.1, 1.2, 1.3, 1.4, 1.6**

82.4-18-19 problem with Dr. Rossi exam because no payment by PH; again
   failure to perform ordinary tasks. **1.1, 1.2, 1.3, 1.4, 1.6**

83.4-29-19 PH doesn't have records for Rossi who is on vacation in NY and
   PH wants RMB to go there but Rossi says  is silly and he'll look at
   imaging; Napier attacks later Rossi didn't see her in person but would
   have in 1-19 if PH had retained him as he was supposed to; failure to
   procure experts. **1.1, 1.2, 1.3, 1.4, 1.6, 3.2**

84.Late April 2019 exchanges of Rule 68 offers; PH wants to lowball at
   $2.5M **1.2**

15

85. 5-6-19 RMB brings suitcase full of records for hearing on reconsideration MG won't attend; worried Napier will say records aren't authenticated but PH has been no help in gathering them. **1.1, 1.2, 1.3, 1.4, 1.6, 3.2**

86. 5-8-19 hearing Judge says evidence of RMB interference; Doesn't explain including that third party issue caused by Mark who is now separated from RMB. **1.1, 1.2, 1.3, 1.4, 1.6, 3.3**

87. 5-8-19 settlement offers now 175K 900K; PH doesn't explain lien issue **1.1, 1.2**

88. 5-10-19 RMB doesn't' want to settle; issues with having expert reports by 5-31; defense files summary judgment but RMB doesn't learn of it until after PH MG withdrawal and still hasn't seen it; another failure to keep client informed and also to hide what was going on. **1.1, 1.2, 1.3, 1.4, 1.6**

89. 5-13-19 RMB sees 5-8 Tr; PH pg 20, line: 1- Court stated, "There is some proof that client interfered with the process" PH could have provided the emails plaintiff had exonerating her, or explained to the Judge that plaintiff's employer AHS had made a mistake as he was aware of all of it, but he didn't and hence allowed the Judge to believe something that was untrue which led to significant and severe sanctions of plaintiff's case". **1.1, 1.2, 1.3, 1.4, 1.6, 3.3**

90. 5-14-19 PH insists on Hawaii psych doc Wendler who costs $20K US instead of one in Calgary at 3-5 Canadian; RMB did not like this doc; PH refuses to pay. **1.1, 1.2, 1.3, 1.4, 1.6**

91. 5-17-19 improper bates stamping by PH firm causes problems with claim by defense RMB was faking how many records produced; this time is one trying to produce records, explain issues (which PH failed at) and do

16

IMEs which RMB was not doing well physically and trying to settle too. **1.1, 1.2, 1.3, 1.4, 1.6**

92. 5-20-19 PH does not use corrected info in RMB declaration; again failure to correct errors; info used against RMB by Napier; PH doesn't make changes in brief; PH and asst not responding. **1.1, 1.2, 1.3, 1.4, 1.6**

93. 5-24-19 hearing PH again fails to make key points :

1. Peter violated the Order by giving plaintiff's experts her records obtained after the Feb 13, 2019 hearing;

2. Peter did not produce the unredacted records of Bajwa , Natho and Eagle (emailed to him on May 20 which he promised on May 16 and 22, he would get to defense before the hearing);

3. Peter never produced documents to state that AHS had erred with the letter they produced to defense;

4. Peter stated he would file a writ of mandamus- but when plaintiff asked him afterwards he said no, it could be appealed after trial, and plaintiff should contact Peter Esser.

5. Peter mislead the Court in a number of places, particularly when he stated that he went over the transcripts with plaintiff and insinuated that somehow the 3 providers that had redacted her records was plaintiff's fault and/or she had control over these providers and their actions.

Peter states, "But if the Court's inclined to do something about that, please don't take it out on my client. If the Court feels that our response in producing these documents and the list of doctors in lieu of a formal response to the interrogatories, please sanction me" (pg. 30, lines 11-15).

This led to another Order by Judge Cahill, which limited plaintiff's experts from viewing her records produced before their initial report and after Feb 13, 2019 for any treatment she had prior to or after this time frame. Hence, plaintiff's expert testimony was significantly hindered. **1.1, 1.2, 1.3, 1.4, 1.6, 3.3**

94.5-27-19 RMB discovers PH never told Napier about accommodations RMB needed for depo. **1.1, 1.2, 1.3, 1.4,**

95.5-27-19 PH goes off on RMB in depo prep; says not his fault he didn't get the records; gets out of car and says won't prep her; causes RMB severe stress. **1.1, 1.2, 1.3, 1.4, 1.6**

96.5-28-19 depo a disaster with no prep, no accommodation and no help in depo. **1.1, 1.2, 1.3, 1.4, 1.6**

97.5-30-19 IMEs RMB not feeling well; RMB tells PH again will need corrections to depo TR; he never responds or helps. **1.1, 1.2, 1.3, 1.4, 1.6**

98.5-31-19 PH discloses experts but not list of witnesses, key witness not available is Dr. Rossi who treated RMB early; PH did not pay him; failure to meet standard of care. **1.1, 1.2, 1.3, 1.4,**

99.5-31-19 call PH and MG where MG says case worthless and should settle;

John Rapp, a previous attorney that use to work for MJG, told plaintiff in late June 2019, that when MJG screwed up a case, they always tried to convince the client that it was their fault, that their damages weren't worth anything and to settle for any amount so they would get off on their negligence. Rapp told plaintiff that MJG was likely taping their meeting and it was a set up. **1.1, 1.2, 1.3, 1.4, 1.7, 1.16**

18

100. 6-5-19 settlement conference with Court being set up and PH and MG threatening withdrawal; abandoning client at critical stage; leaving in lurch. **1.16**

101. 6-6-19 note of 5-31-19 in office conference where RMB begs not to withdraw; MG say will but wants 1/3of $175 Rule 68 offer; MG screams at her insists on talking to her even though has extreme headaches; they talk about other numbers  MG says $250 is good; coercive settlement in this situation violates fiduciary and duties of loyalty; accuse RMB of hurting case in depo. **1.2, 1.7, 1.16**

102. 6-7-18 again want to withdraw and trash case that MG had said "these people are dead in the water" **1.2, 1.7, 1.16**

103. 6-9-19 RMB says will take $275K to keep MG because she can't get another lawyer; again abandoning her**1.2, 1.7, 1.16**

104. 6-12-19 draft motion to withdraw claiming irreconcilable differences. **1.7, 1.16**

105. 6-18-19 PH and MG wanted 1/3 of $175K plus $45K in expenses; RMB coerced into saying will take this. **1.2, 1.7, 1.16**

106. 6-21-19 RMB begs not to withdraw. **1.2, 1.7, 1.16**

107. 6-23-19 no communication from PH MG Plaintiff's counsel was not responding, not providing her with the status of her case, hiding information from her, not disclosing what was happening with her experts being subpoenaed, not notifying her that they had not filed a final naming of witnesses, any direction to her, not trying to settle her case for as much as possible as she had directed them to, and not setting up the settlement conference as she kept requesting. MJG and Peter were completely non responsive counsel, negligent in representing plaintiff and falsely accusing plaintiff of all kinds of things, such as it was her

19

fault for not getting the records earlier, hiding the records, she had pre-existing medical issues (which she didn't), she was difficult and unreasonable, etc.

Plaintiff requested, numerous times for assistance to address her deposition transcripts from her counsel, as changes were due by June 26, 2019, but no response. **1.1, 1.2, 1.4, 1.7, 1.16**

108.  6-24-19 Plaintiff kept checking hoohiki to see what was happening with her case as her attorneys were failing to communicate with her. More Motions to strike plaintiff's experts testimony and reports were being filed. Plaintiff wanted to know what Peter was doing about it. His response was defense was able to dismiss her experts but it could potentially be appealed. **1.1, 1.2, 1.4, 1.7, 1.16**

109.  6-27-19 PH nonresponsive on depo corrections now due. **1.1, 1.2, 1.4, 1.7, 1.16**

110.  6-27-19 RMB gets in touch with mediator because PH won't answer anything; MG kicks Mark and RMB out of his office. **1.1, 1.2, 1.4, 1.7, 1.16**

111.  6-27-19 defense filing more motions PH doing nothing; defense lowers offer to $200k. **1.1, 1.2, 1.4, 1.7, 1.16**

112.  6-29-19 PH admits asked no questions of defense experts; says defense can file s/j but doesn't mentioned they did so on May 10; again failure to communicate or file papers on time. **1.1, 1.2, 1.4, 1.7, 1.8,1.16**

113.  7-3-19 MG won't respond about motion to strike experts or to submit counteroffer to mediator. **1.1, 1.2, 1.4, 1.7, 1.16**

114.  7-4-19 RMB files opp to 6-14 motion to w/d

115.  7-8-19 settlement conference with Judge has disappeared. **1.1, 1.2, 1.4, 1.7, 1.16. 3.2, 3.3**

U.S. Bankruptcy Court - Hawaii   #23-00149   Dkt # 41-1   Filed  07/14/23   Page 51 of 52

116. 7-10-19 RMB withdraws authority to settle for any amount

117. 7-11-19 PH makes unauthorized offer of $320K – can't offer to settle against client order, **1.2, 1.7. 1.16**

118. 7-11-19 PH refused to give RMB defense expert reports (can't do that) and she needed to evaluate settle offer. **1.1, 1.2, 1.4, 1.7, 1.16**

119. 7-16-19 PH reply on withdraw accuses client of misconduct; motion to withdraw you do not file derogatory information in public or for opposition to see; you file in camera**1.1, 1.2, 1.4, 1.7, 1.16**

120. 7-19-19 in camera w/d hearing ; PH again doesn't help on 3d party redactions but RMB convinces Judge on that but withdraw allowed. **1.1, 1.2, 1.4, 1.7, 1.16**

121. 7-20-19 RMB asks defense status of offer; had to take anything at this point. **1.1, 1.2, 1.4, 1.7, 1.16**

122. 7-22-19 PH places lien. **1.1, 1.2, 1.4, 1.7, 1.16**

123. End of July lots of back and forth on records where PH was uncooperative . **1.1, 1.2, 1.4, 1.7, 1.16**

124. 8-1-19 mediator says I'll try to get you $225

125. 8-2-19 PH again refuses to send full copies of filed motions. **1.1, 1.2, 1.4, 1.7, 1.16**

126. 8-5-19 Will take $250 if Napier pays BC liens

127. 8-6-19 signed agreement – can sue MG. **1.1, 1.2, 1.4, 1.7, 1.16**

128. 8-7-19 submitted. **1.1, 1.2, 1.4, 1.7, 1.16**

129. 8-12-19 m/d granted; MG reasons crossed out

130. 12-12-19 MG asks for $75K in fees and 60K expenses even though amount was confidential and he found out. **1.1, 1.2, 1.4, 1.7, 1.16**