LAW OFFICE OF ARNOLD T. PHILLIPS II
ARNOLD T. PHILLIPS    6640
1188 Bishop St., Suite 2907
Honolulu, Hawaii  96813
Phone: (808) 781-1414
atp@atphillips.com

Attorney for Plaintiff
RONDA BESELT

DISPUTE PREVENTION & RESOLUTIONS, INC.

STATE OF HAWAI'I

| | |
|---|---|
| RONDA BESELT, | ARB CASE NO. 21-0106- A |
| Claimant, | |
| vs. | **CLAIMANT RONDA BESELT'S MORE DEFINITE STATEMENT OF CLAIMS AGAINST RESPONDENTS MICHAEL JAY GREEN, GLENN UESUGI AND PETER HSIEH, DATED SEPTEMBER 27, 2021; CERTIFICATE OF SERVICE** |
| MICHAEL JAY GREEN, GLENN UESUGI, PETER C. HSIEH, | |
| Respondents. | |
| | HEARING: September 8-16, 2022 |

**CLAIMANT RONDA BESELT'S MORE DEFINITE STATEMENT OF CLAIMS
AGAINST RESPONDENTS MICHAEL JAY GREEN, GLENN UESUGI AND
<u>PETER C. HSIEH, DATED SEPTEMBER 27, 2021</u>**

COMES NOW, Claimant RONDA BESELT, by and through her Attorney ARNOLD T.

PHILLIPS II, responds to Respondent MICHAEL JAY GREEN'S Motion for More Definite

Statement, dated August 3, 2021, hereby submits the following MORE DEFINITE STATEMENT

EXHIBIT "2"

OF CLAIMS against Respondent's Michael Jay GREEN, Glenn UESUGI and Peter HSIEH (collectively "Respondents") pursuant to the Order of August 19, 2021, to provide as stated below:

## PARTIES AND JURISDICTIONAL ALLEGATIONS

1.  This arbitration seeks compensation for the serious personal – physical and psychological- injuries and financial losses suffered by Claimant BESELT as a result of negligence of the Respondents in their representation of the Plaintiff in her claim against Defendant Waldorf=Astoria Management LLC's ("Defendant Waldorf") AKA Grand Wailea Resort ("GWR") for it's negligence complained and alleged within the original Complaint and Summons filed with the Second Circuit Court on December 2, 2016 and the First Amended Complaint and Summons filed on January 6, 2017, hereto attached collectively as Exhibit "A".

2.  Due to Respondent's errors and negligence, they failed to competently represent Claimant BESELT so that she could recover all of her damages from an incident which occurred on January 7, 2015 which was, solely, due to the fault of Defendant Waldorf=Astoria Management LLC.-GWR.

3.  Because of the Respondent's negligence and malpractice Claimant BESELT alleges Respondent's are liable for such damages which include, without limiting them, to: general damages; special damages; punitive damages; attorney's fees and litigation costs; prejudgement and post-judgement interest; and such further relief as the Court may have deemed appropriate, just and equitable caused by their malpractice, contract breaches and negligence which include all damages arising from the lost claims against Defendant Waldorf in Ronda Melnychuk-Beselt AKA Ronda Beselt and Mark Beselt vs. Waldorf=Astoria Management LLC, et. al., case no.

2CC161000597 in the Circuit Court of the Second Circuit, Maui, Hawaii (The "Waldorf Damages").

4.       This arbitration seeks further compensation for the serious personal injuries and financial losses suffered by Claimant Ronda BESELT as a result of Respondent's errors, which fall under the legal claims as follows: 1) breach of contract; 2) negligence during representation; 3) negligent misrepresentation; 4) attorney lien fraud; 5) intentional infliction of emotional distress; 6) negligent supervision of co-counsel; 7) threatened assault; 8) sexual assault; 9) wilful and wanton disregard of Respondent's legal duties and responsibilities to their client(s), thus constituting malpractice along with punitive damages during Respondent's representation of Ronda Melnychuk-Beselt AKA Ronda Beselt and Mark Beselt as Plaintiff's in Ronda Beselt, et. al., vs. Waldorf=Astoria Management LLC, et. al., case no. 2CC161000597 in the Circuit Court of the Second Circuit, County of Maui, State of Hawaii ("The Respondent's Damages").

5.       This arbitration, also, seeks to void, cancel and nullify Respondent's Motion for Attorney's Lien, filed July 22, 2019, attached hereto collectively as Exhibit "B", in Ronda Beselt, et. al. vs. Waldorf=Astoria Management LLC, et. al., case no. 2CC161000597 in the Circuit Court of the Second Circuit, Maui, Hawaii, and to forever release and indemnify Claimant BESELT and Mark Beselt from any alleged attorney's fees and costs including claims against Claimant BESELT and Mark Beselt associated with the negligent representation of Respondents during or after Respondent's representation in case no. 2CC161000597 in the Circuit Court of the Second Circuit, County of Maui, State of Hawaii.

6.       At all times relevant herein, Claimant Ronda BESELT and Mark BESELT were citizens and residents of Calgary, Alberta, Canada.

7.      At all times relevant herein, Respondent's GREEN, UESUGI and HSIEH all maintained their law offices and performed legal services in the County of Honolulu, in the State of Hawaii while representing Claimant BESELT and Mark Beselt.

8.      At all times relevant herein, Respondent's managed, controlled, maintained, and/or did business in the State of Hawaii where Claimant BESELT was injured, repeatedly.

9.      Dispute Prevention & Resolution Inc., has jurisdiction of these claims pursuant to the Attorney Client Contingent Fee Retainer Agreement signed between Respondents and Claimant BESELT and Mark Beselt on March 2, 2018, executed on March 9, 2018, along with the co-counsel retainer agreement signed and executed on May 21, 2018, hereto attached collectively as Exhibit "C".

## A.      CONCISE LEGAL CLAIMS

10.      There are nine major concise legal claims and theories asserted in this Arbitration. Although the legal basis are often intertwined they do fall under the legal claims counts as follows: 1) Breach of Contract; 2) Negligence- during representation; 3) Negligent misrepresentation; 4) Fraudulent Misrepresentation- Attorney Lien Fraud; 5) Intentional Infliction of Emotional Distress; 6) Negligent Supervision of Co-Counsel; 7) Threatened Assault; 8) Sexual assault; and 9) Wilful and Wanton Disregard of Respondent's Legal Duties and Responsibilities to their client(s), thus constituting legal malpractice.

11.      The first and one of the most significant legal claims and theory asserted in this Arbitration is a breach of contract claim. This claim arises from the retainer agreement contract that Claimant and Mark Beselt had with the Respondents. The retainer agreement included an implied duty of good faith and fair dealing in the performance and enforcement of the contract and by accepting to give legal advice or to render other legal services, impliedly agrees to use such

skill, prudence, and diligence as lawyers of ordinary skill and capacity commonly possess and exercise in the performance of the tasks which they undertake. The duties listed above consist of the Respondents' breaches of the retainer fee contract. The breaches on the contract duties caused damage and injury to Claimant for which remedy can be sought through a claim for breach of the retainer fee contract. The Respondents of the retainer fee contract were the proximate cause of the loss sustained by the Claimant-client and that Claimant incurred actual damages as a result of the Respondents' actions or inaction; and "but for" the Respondents negligence, the Claimant would have prevailed in the underlying action.

12.     The second and third legal claims involving negligence on the part of the attorney whether intentional or not, are consistent throughout Respondent's representation of Claimant. Respondents' representation often breached their legal duty such as by acting on behalf of Claimant which resulted in performing their duties incorrectly and with errors or failing to act on behalf of Claimant in a timely fashion or in many cases not at all. Additionally, Respondent's negligently misrepresented a fact in which they had no reasonable grounds for believing the representation was true when they made it. Claimant and Mark Beselt relied on Respondent's misrepresented facts which caused them harm in their litigation against Defendant Waldorf. This caused Claimant to suffer damages so extreme that this arbitration action has been taken. The intentional negligent misrepresentation of Respondents was a significant factor in the poor outcome of Claimant's case in the Second Circuit Court.

13.     The fourth legal claim is the fraudulent misrepresentation encompassing the attorney lien fraud. Respondents were fraudulent with their billing by adding costs to Claimant's summary of accounts which were not incurred on her case, which they would not provide Claimant an explanation for the costs that they billed Claimant and even attempted to have the Judge of the

Second Circuit Court enforce their fraudulent lien by fraudulently misrepresenting that they had notified and served Claimant by email and regular mail that her case was to be dismissed with prejudice in December 2020 and their Motion to Set Aside the Order of Dismissal to allow time for them to file a Motion to the court to Enforce Attorney's lien. This fraudulent misrepresentation of Claimant's attorneys is the basis of this legal claim.

14.     The fifth legal claim asserted is the intentional infliction of emotional distress by Respondent's upon Claimant. This is particularly evident with Respondent HSIEH's sexual relationship with Claimant in which he inflicted emotional distress upon her as he manipulated her to allow his repeated sexual assaults. Respondent HSIEH knowingly inflicted severe emotional distress which the Claimant repeatedly suffered. The injuries from this conduct were particularly severe because of Claimant's condition at that time which were substantial emotional injuries already sustained by the negligence of Defendant Waldorf and the incident causing her emotional injuries from the umbrella and resultant surgery complications.

15.     The sixth legal claim is that the action of Respondent GREEN is liable for his lack of proper supervision of the action of his associates Respondent's UESUGI and HSIEH to ensure their performance in their duty of care to Claimant's representation. Respondent GREEN should have known or knew of Respondent HSIEH's wrongful conduct and that it would cause a substantial risk of harm to Claimant and her outcome of her case. Respondent GREEN in a supervisory role, failed to take adequate action when he knew that Claimant's case was already in jeopardy with the lack of discovery, but disregarded his duties and did not take any reasonable steps to prevent further harm. This failure was the proximate cause of injury and loss to the Claimant.

16.     The seventh and eighth legal claims are related to and directly pertain to Respondent HSIEH's conduct. While in an impermissible sexual relationship with Claimant which took place after the formation of the attorney client relationship, Respondent HSIEH sexually assaulted the Claimant and threatened to harm her and her family if she spoke to anyone of what had taken place between the two of them. This occurred while he was representing Claimant. The legal claim arises from the violation of Rule 1.8(j) where Respondent HSIEH had sexual relations with a client after the attorney client relationship was formed. Claimant is not asserting liability for the violation of Hawaii Rules of Professional Conduct Rule 1.8(j). rather she is asserting that the conduct was a contractual breach of the duty to exercise the care, skill, and diligence commonly possessed and exercised by a member of the legal profession. This was, also, a breach of the contractual duty which involved the unfair exploitation of the lawyer's fiduciary role. A breach of the contractual duty not to use the trust of the client to the client's disadvantage and caused damage to the Claimant. The Claimant alleges that this conduct of Respondent HSIEH intentionally inflicted emotional harm on the Claimant when he acted intentionally or recklessly involving himself in an intimate relationship with the Claimant. Given these circumstances this conduct of Respondent Peter HSIEH was extreme and outrageous. This conduct injured and caused severe emotional distress to the Claimant for which counseling treatment has been necessary.

17.     The claim is that in the particulars set above the Respondents willfully, wantonly and often with malice breached the retainer agreement and disregarded Respondent's contractual duties and responsibilities to their client(s). These acts of the Respondents caused actual damages to the Claimants and resulted in the dismissal of the Claimant's lawsuit. Except for the Respondents contractual breaches and negligent actions of the Respondents, the Claimant and

Mark Beselt would have prevailed in their case, instead of having to settle the lawsuit, as pro se plaintiff, for less than half of her expenses.

## B.     FACTUAL BASIS SUPPORTING THE LEGAL CLAIMS

18.     Claimant restates the allegations contained in the preceding paragraphs of this More Definite Statement of Claims and incorporate those paragraphs by reference, as if fully set forth herein.

19.     Claimant BESELT has suffered serious permanent long-term injury, including but not limited to a traumatic brain injury, vision injuries, spinal cord injuries, vestibular injuries, post-traumatic stress disorder, emotional distress, sepsis secondary to her spinal surgeries, etc. due to being struck by the subject umbrella. These factual allegations are supported by Claimant's medical records from AMR, the Maui Memorial Hospital, Dr. S. Bajwa, Claimant's experts, and other treating medical personnel.

20.     These disputes, differences and controversies between Claimant and Respondent's arise from a January 7, 2015 incident where Claimant BESELT, while standing on the public beach fronting the Waldorf=Astoria Management LLC (Grand Wailea Resort) with her two children, ages 3 and 5, was, without warning, harpooned in the forearm and head by one of the large beach cabana umbrellas ("subject umbrella") which had become airborne due to wind blowing on the beach ("incident"). The umbrellas were not secured properly into the sand. Respondent HSIEH, Mark Beselt and Claimant will testify to this fact as will the pictures taken of the umbrellas be used as evidence of this fact.

21.     Prior to and at the time of the said incident, the subject umbrella was the property of and rented and/or offered to be rented by Defendant Waldorf for profit and was owned and operated by Defendant Waldorf directly or through its agents. The liability of Defendant Waldorf has been established through the taking of a Rule 30(b)(6) deposition and statement by the GWR's Director of Security, Michael Palazzotto as the designated representative of Defendant Waldorf. The transcripts of Mr. Palazzotto's deposition conducted on January 23, 2019, are attached hereto as Exhibit "D".

22.     Once Claimant BESELT realized how serious her injuries were she contacted the Law Office of Jan Apo in January 2016 to represent her. Mr. Apo, unfortunately, after signing a Retainer Agreement with Claimant Beselt and Mark Beselt, notified his clients that there was a conflict, and he would have to withdraw on or about September 13, 2016. This was due to the fact that his only associate, Mark Reck had previously worked for the Grand Wailea Resort Recreation Department and knew some of the individuals involved. These parties can not be joined under Hawaii Rules of Civil Procedure ("HRCP") Rule 19 as the contractual agreement does not have an arbitration clause over any differences, controversies and disputes between Claimant and her previous counsel, Mr. Apo is not agreeable to arbitration and the Second Circuit Court would not order arbitration as to all of Claimant's previous counsel at the hearing on the Motion to Compel Arbitration As to All Former Counsel of Plaintiff Ronda Beselt, filed March 7, 2021, attached hereto as Exhibit "E".

23.     Claimant BESELT further retained Matson Kelly in October 2016, as per the suggestion of Jan Apo. Mr. Kelly filed an original Complaint and Summons and First Amended Complaint against Defendant Waldorf and the State of Hawaii- Department of Land and Natural Resources ("DLNR"), attached hereto collectively as Exhibit "A"; however, Mr. Kelly did not

demand a jury trial as per the Beselt's request and the relationship and trust eventually deteriorated between the parties resulting in the need for Claimant BESELT to seek new counsel. These parties can not be joined under Rule 19, HRCP as the contractual agreement does not have an arbitration clause over any differences, controversies and disputes between Claimant and her previous counsel, Mr. Kelley is not agreeable to arbitration and the Second Circuit Court would not order arbitration as to all of Claimant's previous counsel at the hearing on the Motion to Compel Arbitration as to all of Plaintiff Ronda Beselt's previous Counsel.

24.     Claimant BESELT and Mark Beselt then retained Bickerton Dang to represent them in April 2017. Mr. Bickerton's office had, for several months, been signing authorizations on behalf of Claimant BESELT from approximately June 26, 2017 until discovered on approximately September 8, 2017 without Claimant BESELT's knowledge or permission as she was in Germany having triple spine surgery due to the injuries she suffered from the January 7, 2015 umbrella incident. Claimant BESELT attempted to make the attorney client relationship work for the next six months; however, Mr. Bickerton's second chair Robert Miyashita made a number of errors thus resulting in Claimant BESELT and Mark Beselt having to seek new counsel. These parties can not be joined under HRCP, Rule 19 as the contractual agreement does not have an arbitration clause over any differences, controversies and disputes between Claimant and her previous counsel as it clearly states jurisdiction is the court of the State of Hawaii, Mr. Bickerton is not agreeable to arbitration and the Second Circuit Court would not order arbitration as to all of Claimant's previous counsel at the hearing on the Motion to Compel Arbitration as to all of Plaintiff Ronda Beselt's previous Counsel.

25.     On or about February 27, 2018 Claimant BESELT contacted the Law Office of Michael Jay Green and Associates and spoke with Respondent GREEN, briefly, about the

possibility of him representing Claimant BESELT and her spouse Mark Beselt in Case no. 2CC161000597 in the Circuit Court of the Second Circuit, County of Maui, State of Hawaii. Respondent GREEN told Claimant BESELT that he wanted to contact Jim Bickerton, Claimant's previous attorney to discuss the case and verify her injuries. This is noted in the March 2, 2018 audio recorded telephone transcripts between Claimant and Respondent GREEN.

26.     On or about March 2, 2018, Claimant BESELT spoke to Respondent GREEN and Respondent GREEN indicated to Claimant that he had spoken to Mr. Bickerton, that he was satisfied that the case was a good case and the injuries Claimant BESELT had sustained were significant and he would like to represent her and Mark Beselt in case no. 2CC161000597 in the Circuit Court of the Second Circuit, County of Maui, State of Hawaii. This conversation is documented in the audio recorded transcripts between Claimant and Respondent GREEN.

27.     Respondent GREEN was fully aware of all previous errors made by Claimant's previous attorneys offices of Apo, Kelly and Bickerton and still chose to take Claimant's case. Furthermore, Claimant made Respondent's UESUGI and HSIEH aware of her previous attorney's errors during their representation of Claimant and they still chose to take Claimant's case. At no time are Respondent's justified in placing the blame on Claimant's previous counsel as they had a legal obligation to correct any errors made once they became Claimant's new counsel, hence Rule 19 HRCP Joinder of Parties is not feasible.

28.     On or about March 2, 2018, Claimant BESELT and Mark Beselt signed an Attorney Client Contingent Fee Retainer Agreement between Respondents and Claimant BESELT and Mark Beselt on March 2, 2018 and executed on March 9, 2018, hereto attached collectively as Exhibit "C".

29.     In the March 2, 2018 conversation between Claimant BESELT and Respondent GREEN, he stated that Respondent UESUGI would be the working attorney on the case and potentially another attorney- later to be determined as Respondent HSIEH. Transcripts of this March 2, 2018 call between Claimant BESELT and Respondent GREEN, are attached hereto as Exhibit "F".

With respect to the attorney's negligence or breach of duty, the Hawaii Supreme Court has "observe[d] that the general rule with respect to the liability of an attorney for failure to properly perform his duties to his client is that the attorney, by accepting to give legal advice or to render other legal services, impliedly agrees to use such skill, prudence, and diligence as lawyers of ordinary skill and capacity commonly possess and exercise in the performance of the tasks which they undertake." *Blair v. Ing, 21 P.3d 452, 464 (Haw. 2001).*

30.     Because many of the factual allegations comprise of several legal theories supporting Claimant's factual basis and for ease of not repeating each factual basis under several of the legal claims, Claimant has separated her factual allegations into six main legal claims (counts) that best represent each statement of facts. Because most statements also comprise of additional legal theories, these have been added to the statements under each count as follows below.

## COUNT I

### (BREACH OF CONTRACT)

31.     Claimant restates the allegations contained in the preceding paragraphs of this More Definite Statement of Claims and incorporate those paragraphs by reference, as if fully set forth herein.

32.     Claimant BESELT at all relevant times herein had a valid and enforceable contract for legal services to be provided by Respondent's GREEN, UESUGI and HSIEH. *See* Exhibit "C", the Attorney Client Contingent Fee Retainer Agreement signed on March 2, 2018.

33.     Claimant BESELT at all relevant times herein has complied or substantially complied with all the terms and conditions of the contract(s) with Respondents. Testimony of Mark Beselt, Claimant and Respondents along with email communications, text messages and audio recorded telephone calls will be shown to support this allegation.

34.     Respondents GREEN, UESUGI and HSIEH at all relevant times herein have significantly breached the contract(s) and caused Claimant injury and damages.

35.     None of Respondent's breaches were excused nor justified. Respondents had a duty of standard of care to Claimant and Mark Beselt which they did not fulfill.

36.     From the March 2, 2018 signing of the Attorney Client Contingent Fee Retainer Agreement which Claimant BESELT and Mark Beselt signed with the Law Office of Michael Jay Green and Associates including Respondents UESUGI and HSIEH as co-counsel, this representation was substandard, inadequate, failed to meet requirement of competency and it was significantly detrimental to Claimant BESELT, Mark Beselt and their family and their lawsuit in the Second Circuit against Waldorf=Astoria Management LLC. Respondents consistently violated their professional responsibilities, wilfully disregarded Claimant's case, were negligent in their representation, intentionally misrepresented Claimant and negligently inflicted emotional distress upon their client- Claimant. This negligence constitutes legal malpractice.

37.     In the March 2, 2018 audio recorded telephone call Respondent GREEN promised Claimant that he would be available to take her calls, emails, and answer any questions whenever she needed as he had an answering service available 24/7; however, Claimant experienced the

opposite and often waited weeks or longer to speak to her attorney of record, resulting in failing to communicate, to the detriment of the case. This is particularly evident in June and July 2019 after Respondent GREEN and HSIEH filed a Notice to Withdraw as Claimant's Counsel. This is a breach of contract.

38.     Claimant BESELT contacted Respondent UESUGI at his law office and spoke with him on or about March 6, 2018 for over an hour about her injuries, her family, and the status of her case with the Bickerton office before the representation ended. Claimant BESELT asked Respondent UESUGI to sign a Withdrawal and Substitution as soon as possible so that discovery could proceed forward as trial was still set for September 2018. There are numerous emails in which Claimant requested Respondent UESUGI to sign the withdrawal and substitution and file a notice of appearance and Respondent UESUGI agreed he would do such, but he kept neglecting Claimant's case by setting it to the bottom of his work pile. This is a breach of contract, wilful and wanton disregard of Respondent's legal duties, and this conduct is negligence, thus constituting legal malpractice.

39.     Claimant BESELT and Respondent UESUGI had a number of emails back and forth about her case and again spoke by telephone on March 21, 2018. Respondent UESUGI had indicated in this call that Claimant BESELT'S claims against the State of Hawaii were "thin" and Respondent UESUGI suggested that she drop the state as a Defendant because the Counsel assigned to the case, Ryan Akamine was too difficult to beat, and it would result in too much work for Respondent UESUGI. A copy of a March 21, 2018 email from Respondent UESUGI to Claimant BESELT, attached hereto as Exhibit "G", along with the testimony of Claimant, Mark Beselt and Respondents will affirm this claim. This factual allegation falls not only under a breach

of contract but is in violation of Respondent's professional representation and also negligence, which constitutes legal malpractice.

40.     In this March 21, 2018 call Respondent UESUGI became angry because Claimant BESELT had requested a number of times by email and telephone communications that he sign a Withdrawal and Substitution with Mr. Bickerton and start working on her case. Respondent UESUGI lost his temper and yelled at Claimant BESELT and told her that he would not be able to work on her case until September 2018 or later and not to bother him again, although he knew that Claimant BESELT had a July 20, 2018 Status Conference, as trial was set for September 2018. This interaction is documented in the April 26, 2018 audio recorded transcript of the telephone call between Claimant and Respondent GREEN. In this call, Claimant needed to ask for new counsel since Respondent UESUGI was too busy to work on her case in violation of his professional responsibilities and standard of care. This was intentional infliction of emotional distress upon Claimant, negligence and breach of contract by Respondent UESUGI.

41.     Claimant BESELT continued to email Respondent UESUGI throughout the remainder of March 2018 and April 2018, but Respondent UESUGI would not proceed forward with discovery on Claimant BESELT'S file. This is documented in several emails between Claimant and Respondent UESUGI. This conduct is a breach of contract, wilful and wanton disregard of Respondent's legal and ethical duties, and negligence. This is legal malpractice.

42.     On or about April 26, 2018, Claimant BESELT contacted Respondent GREEN by telephone and told him that no attorney in his office was working on her case and asked for his assistance. Respondent GREEN stated he would speak to Respondent UESUGI and get back to Claimant BESELT. Transcripts of this April 26, 2018 telephone call, attached hereto as Exhibit "H". This is negligent supervision of co-counsel by Respondent GREEN, along with breach of

contract as nearly two months had passed and neither he or his associates were doing any work on Claimant and Mark Beselt's case against Defendant Waldorf.

43.    In the April 26, 2018 audio recorded telephone call between Claimant and Respondent GREEN, Claimant made a request for a new lawyer because she was concerned about Respondent UESUGI'S lack of work product and didn't think it wise to wait 6 more months as that was when he stated he would work on her file. In this call, Respondent GREEN stated he would get another attorney as he had "16 lawyers in his office who worked for him" and promised Claimant, "You aren't going to have a problem with a lawyer in my office" and I know that you have had a "traumatic injury" and September 2018 is not acceptable to start work on your case. Although Claimant relied on Respondent GREEN'S words "we're not too busy for your case", nothing happened on the case. Respondents made the representations when they were aware of their falsity or without knowledge of their truth and breached the contract.

44.    On or about May 4, 2018 Claimant BESELT received a telephone call from Respondent HSIEH who was inquiring about representing Claimant BESELT and Mark Beselt. This was the first time Claimant BESELT ever spoke to Respondent HSIEH and he indicated he was doing an intake with her over the phone. The call was over an hour long and Respondent HSIEH indicated he wanted to represent Claimant BESELT in civil action no. 2CC161000597 in the Circuit Court of the Second Circuit, County of Maui, State of Hawaii. Respondent HSIEH indicated that he had contacted Claimant's previous counsel, Mr. Miyashita to discuss Claimant and her case without Claimant's prior consent or knowledge. This invasion of privacy caused Claimant intentional infliction of emotional distress and is in violation of an attorney's professional responsibility. An email from Claimant to Respondent HSIEH is evidence of this May 4, 2018 call along with an audio recording of this call. Respondent HSIEH emailed Claimant BESELT his co-

counsel retainer agreement on May 11, 2018, therefore, Claimant believed and relied on Respondent HSIEH'S representation along with Respondent GREEN's representation. Email communications dated May 11 and 18, 2018 between Claimant BESELT and Respondent HSIEH, attached hereto collectively as Exhibit "I", along with his co-counsel agreement indicated the date of representation began on March 2, 2018 in which Claimant BESELT and Respondent GREEN signed the Attorney Client Contingent Fee Retainer Agreement.

45.    On or about March 2, 2018 Claimant spoke with Respondent GREEN after he had spoken to Mr. Bickerton, Claimant's previous attorney, and Respondent GREEN agreed to represent Claimant BESELT. Respondent GREEN agreed to Claimant's request for no psychological damage claims in exchange for not producing any psychological and counseling records to protect her privacy and potentially her families as well. Claimant BESELT relied on this statement from Respondent GREEN as a material fact which enticed her to sign a contract with his office to represent her as she soon had an upcoming trial date. Respondent GREEN promised Claimant that if she would be required to produce her psychological records due to her other claims, he would make sure the records would be held in camera and not just given to Defendants. Respondents GREEN and HSIEH reneged on this verbal agreement on May 21, 2018 when they threatened Claimant that they would withdraw after not doing any work on her case for several months unless she agreed to pursue all her damages claims, taking away her right to decide. This not only breached the contract Claimant had with Respondents but Respondent GREEN'S conduct was negligent. Both violated Respondents legal responsibilities and professional representation.

46.    Claimant BESELT inquired with Respondent HSIEH in the beginning of June 2018 to have her psychological records *in camera* as per Respondent GREEN's promise to Claimant,

and which she relied on to reluctantly agree to pursue her psychological damages claims and/or emotional distress claims, and hence the release of such records, this was along with the threat of withdrawal and coercion by Respondent HSIEH. Respondent HSIEH told Claimant she could not have her records *in camera* contrary to what Respondent GREEN had told Claimant. This infuriated Respondent HSIEH and he told Claimant not to call him again and he was going to withdraw his representation and Respondent GREEN's as well. This is documented in emails between Claimant and Respondent HSIEH. This conduct on the part of Respondents was a breach of contract and Respondent GREEN'S agreement as Respondents refused to perform their obligation under the retainer agreement contract. This conduct by Respondent HSIEH caused intentional infliction of emotional distress of Claimant and violated his professional responsibilities.

47.    Claimant had been inquiring about her case and the *in camera* agreement she had with Respondent GREEN when Respondent HSIEH, on or about June 8, 2018, suddenly called Claimant BESELT and Mark Beselt and stated he was withdrawing and so would Respondent GREEN but they would reconsider if Claimant BESELT and Mark Beselt agreed to their terms, one which was that the Claimant and her spouse were not allowed to contact Respondent's to even find out the status of the case, nor ask any questions of Respondent's during their representation of Claimant and then Plaintiff Mark Beselt. Email communication of this June 8, 2018, email is attached hereto as Exhibit "J". The terms that Respondent's GREEN and HSIEH demanded of Claimant were in violation of  breach of contract, intentional infliction of emotional distress, willful and wanton disregard of their legal responsibilities and negligent misrepresentation.

48.    Because Claimant had had no contact with Respondents, in or about June 18, 2018 and July 5, 2018, Claimant inquired whether Respondents were withdrawing or they were going

to continue to represent Claimant as her July 20, 2018 Status Conference was coming soon. This was a breach of duty of care because the status call was important and Claimant didn't know if she had a lawyer and lawyer wouldn't respond if he was withdrawing violating his duty to inform and advise the client. This conduct is documented in the email communications that Claimant sent to Respondent's with no response in return, leaving Claimant to sit and wait to see if her counsel would act on her behalf. This caused intentional infliction of emotional distress on Claimant and Mark Beselt. Respondent's conduct violated their professional responsibilities and was negligent misrepresentation. This is legal malpractice.

49.     Respondent HSIEH told Claimant BESELT and Mark Beselt on June 8, 2018, that he would make his decision to reconsider in a few days; however, he only notified Claimant on or about July 16, 2018, via email, attached hereto as Exhibit "K", nearly five weeks later that he and Respondent GREEN weren't going to withdraw as counsel. This is not only a breach of contract but also negligent misrepresentation, and intentional infliction of emotional distress.

50.     By this point in time, Respondent HSIEH while representing the client had so neglected the case that it was not possible to adequately prepare for a Status Conference booked for July 20, 2018, in a few days. This is evident in the one sentence Respondents represented in their Status Conference Memorandum filed July 17, 2018. This was a violation for the duty of care of the attorney and in breach of the contract, including negligence on the part of Respondents GREEN and HSIEH. This constitutes legal malpractice.

51.     After the July 20, 2018 Status Conference call Judge ordered Claimant to sign Defendant Waldorf's blank authorizations which created significant issues. In a call after the Conference Respondent HSIEH told Claimant BESELT that she would have to "do anything he told her to do, including drinking his pee."  This is documented in text messages between

Respondent HSIEH and Claimant and testimony of such will be given at the hearing on this matter. This type of crude control showed his views that he would make the decisions, even if client input was needed or appropriate. This does not meet general litigation standard of care nor the obligation of the lawyer to avoid abusive, insulting conduct directed to the client. This constitutes breaches of professionalism, breach of contract and negligence on the part of Respondents.

52.    Respondent HSIEH agreed to a new trial date of September 30, 2019, against Claimant's request to schedule it no later than July 2019. This information is contained in email communications and Claimant will testify to such at a hearing on this matter. There was no communication or consideration of the ability of the Claimant to be able to meet this schedule, only the needs and schedule of Respondent HSIEH were considered. This is a breach of contract and negligence.

53.    Respondent's GREEN, UESUGI and HSIEH did not represent Claimant adequately when they never made any attempt to obtain Claimant's medical or employment records so that she could prove her damages claims. Respondents made no efforts to obtain discovery on behalf of Claimant and Mark Beselt during their representation from March 2, 2018 to July 19, 2019. Claimant, Mark Beselt and Respondent's will testify to this at the arbitration hearing. Email communications, and hearing transcripts in the Second Circuit case will be presented. This is a breach of contract, negligent misrepresentation and willful, wanton disregard for Respondent's duties and legal representation.

54.    Respondent HSIEH not having any relationship with the Claimant prior to their instant attorney/client representation in a breach of the contractual duty to act in the client's best interests, Respondent HSIEH pursued and enticed Claimant BESELT into a romantic relationship which began after the attorney-client relationship started. This personal romantic relationship

began in August 2018 and ended in or about February 2019. This romantic relationship included sexual relations. This information was provided to the Second Circuit Court on or about February 16, 2021 through Claimant's attorney Arnold Phillips, as a Supplemental Declaration by Claimant BESELT, and is attached hereto as Exhibit "L". This impermissible relationship breached contract and caused Claimant intentional infliction of emotional distress.

55.     In the May 21, 2018 meeting with Respondents GREEN and HSIEH in Honolulu, Hawaii, Respondent HSIEH stated he wouldn't take Claimant's case unless she was willing to pursue her psychological damages even though Respondent GREEN agreed to the contrary. Claimant stated to Respondent HSIEH, based on what Mr. Bickerton had stated to her, Defense had already been notified that Claimant wanted to drop her psychological damages in exchange for no psych records. Respondent HSIEH was not concerned about the direction and request of Claimant. This constitutes a breach of contract by Respondents to coerce Claimant into pursuing claims she did not want to. This conduct breaches the retainer agreement contract as an attorney's wilful disregard for his clients wishes. This is confirmed in the audio recorded transcripts of the March 2, 2018 call between Claimant and Respondent GREEN and in email communications between Respondents and Claimant.

56.     In the May 4, 2018 call between Claimant BESELT and Respondent HSIEH, Respondent HSIEH reviewed Claimant's file sent over by the Bickerton firm and not unlike Respondent UESUGI, he too wanted to drop the DLNR-State of Hawaii because he stated it was too hard to go after the State. Evidence that Respondent HSIEH wanted to drop the State of Hawaii as a Defendant is held in the first contact on a May 4, 2018 call between him and Claimant. This call is recorded and provided to Respondents and will be used as evidence at the hearing. Dropping

a claim against a Defendant because it was too much work and/or too difficult is negligence and in breach of the contract.

57. Respondent HSIEH was very insistent in this May 21, 2018 meeting and indicated he would not take Claimant BESELT'S case unless she would pursue her psychological damages claims. Under the threat of withdrawal, since it was already May 21, 2018 and Respondent's GREEN and USEUGI had failed to complete any work on her case in breach of the retainer agreement contract, she felt pressured and without any choice but to agree to Respondent's demands. Claimant agreed to pursue her psychological damages claims under two conditions: 1) individual provider authorizations were to be used (ie.1 authorization per provider) and 2) 3rd party redactions are written on the authorizations. This information is verified as Claimant followed up with an email summarizing the May 21, 2018 meeting with Respondents, attached hereto as Exhibit "M".

58. Subsequently, Claimant believed that her psychological records would be held *in camera* as per Respondent GREEN's promise and Claimant relied upon this verbal agreement when forced to make this decision on pursuing her psychological damages claims. This is a breach of contract and Respondents caused intentional infliction of emotional damages upon Claimant.

59. Even though the Claimant was left with the impression that Respondent HSIEH took Claimant BESELT'S case because he recognized that it was a high value case, due to Claimant's permanent injuries, the substitution of counsel and entry of appearance was not filed until on or about May 30, 2018. This failure of contractual duties under the retainer agreement competency caused delay in working on Claimant's case which resulted in discovery delays and created a strained relationship with Defendant Waldorf and hurt the Claimant's credibility. This is a breach of contract and negligence on the part of Respondents GREEN, UESUGI and HSIEH.

60.     In or about early June 2018, Defense Counsel NaPier had emailed Respondent HSIEH that she would file a motion to compel unless authorizations were issued and discovery answered, but Claimant BESELT was not advised of this until months later due to Respondent's failure to communicate and Respondent HSIEH'S "don't bother me or call me attitude". This information is contained in email communications. This was important for the July 20, 2018 Status Conference call. Respondent HSIEH did not prepare for this and this contractual breach to provide competent representation caused Claimant's being made to appear to the Second Circuit that she was not prepared which was a breach of the duty to provide.

61.     On or about July 11, 2018 Respondent HSIEH stated he would stay on as counsel blaming the Claimant but not remembering from memory or referring to his notes to the file that he was told by Claimant concerning record retrieval that -- **"If you recall from our last conversation in June, the providers here are particular about the authorizations, and won't provide information on a blanket consent form. Some government custodians of records will only take authorizations on their government forms."** This information is contained in email communications and Claimant Mark Beselt, and Respondents will testify to such at a hearing on this matter. Claimant diligently and persistently attempted to educate Respondent's that there would be issues with record retrieval because of the earlier forged authorizations by the Bickerton firm, and that she must give "informed consent" (ie. one provider per authorization). Claimant wanted to prevent any further issues from happening, but Respondent's UESUGI and HSIEH would not listen or were not paying attention to Claimant's statement about the discovery protocols. This inattention to the information from the Claimant resulted in significant issues during Respondent's representation. This is a breach of contract and negligence on the part of all three Respondents.

62.     Therefore, shortly before the July 20, 2018 Status Conference call, Defendant Waldorf changed her blank authorization to state that providers were to INCLUDE 3rd party information and not redact this information from the records. Signing NaPier's blank authorizations would give Defense complete control of discovery. This breadth of the discovery request is illegal in Alberta, and would give the records requesting party the ability to go anywhere without Claimant knowing, which would not be adequate in Alberta. This lack of knowledge on the part of Respondent HSIEH created even more discovery issues. This action added to the discovery confusion which became apparent to the Second Circuit court contributing to the dismissal of Claimant's case. Respondent HSIEH'S agreement to Defendant's request breached contract with his clients in that it was not competent representation.

63.     Regardless of the history of the case at this point in the litigation and disregarding the specific directions of the client, Respondent HSIEH emailed a few days before the Status Conference call that Defense authorizations were okay, full well knowing that Claimant couldn't sign a blank authorization because of the record issues that had occurred, nor was she agreeable to providing her child's medical information, particularly the files that were intermingled with her records, to be released to Defense counsel. Claimant couldn't understand why her children had to have their privacy invaded, especially when Claimant and Mark Beselt had been told by Respondent GREEN that it was not necessary. Respondent HSIEH didn't provide competent representation for Claimant's interests or what was best to move the case along and obtain proper discovery. Claimant and Mark Beselt will testify to this and email communications will be presented at the hearing. This conduct by Respondent HSIEH is a breach of contract and failed to meet the agreement of competent representation to act with the legal knowledge, skill,

thoroughness and preparation which Respondents made when they entered in the retainer agreement with the Claimant.

64.     Furthermore, Claimant BESELT also explained to Respondent HSIEH over the phone, that in Canada, plaintiff's attorneys gather the records, redact 3rd party information, then provide the records to Defense counsel. That is how plaintiff's attorneys are able to get records without redactions in Alberta, otherwise many agencies would not allow 3rd party information to be sent. Respondent HSIEH would not listen to Claimant's repeated concerns. This disregard by Respondents' communications about the records process in Canada constitutes a breach of contract promise to provide competent representation.

65.     Claimant received the July 13, 2018 Status Conference Memorandum of Defense NaPier in which she from Napier's view accused Claimant of interfering with and impairing discovery. Although Respondents had received this and forwarded to the Claimant they took no action to rectify these misstatements by Defense. The only action Respondent HSIEH took was to file a memorandum in response consisting of two sentences and is contained in the Second Circuit pleadings. The breach of contract provision to provide competent representation to Claimant and Mark Beselt. Sadly, this history of contractual breaches was having a disastrous effect on the Claimant's Second Circuit case because the court was impugning the failure to respond to the discovery situation to the client.  This is a breach of contract to Claimant and Mark Beselt to provide thorough, skillful and reasonably necessary representation and extends to all the Respondents because if there is any reason for inability to meet the promise of competent representation the Respondents can be provided through association with a lawyer who can assist to provide the required, promised competence.

66.    Respondent HSIEH in response to Defendant Waldorf's Status Conference Memorandum filed a one page Memorandum, which was late, which stated that "No discovery has been done". Respondent HSIEH did not address the previous attorney's errors with the forged authorizations, explain the problems that would be caused if Claimant signed the blank authorizations requested by Defense during the Status Conference nor take advantage of this time with the Court attention on this case to explain what had happened with prior counsel. Rather the Respondents left the Court with the incorrect impression that it had been the Claimant's fault that the discovery was not completed. This particular set of action did not reflect on the Claimant in a positive light with the Judge and this opinion of her case from the actions of her lawyers was not fulfillment of their promise of competent representation and hindered her case. This is a breach of contract and negligence on the part of Respondents.

67.    Because Respondent's GREEN, UESUGI nor HSIEH who had worked on Claimant's case for nearly five months, had failed to do any discovery or even request Claimant sign authorizations for their office, this failure to take any action was a failure to provide competent representation which it further hindered the case. In previous counsel Mr. Bickerton's most recent authorizations (Jan-Feb 2018) it clearly stated, "THIS AUTHORIZATION DOES NOT AUTHORIZE ANY ORAL COMMUNICATION OR CONSULTATIONS WITH CUSTODIANS OF RECORDS OR HEALTH CARE PROVIDERS. NO WRITTEN REPORTS MAY BE REQUESTED THAT ARE NOT ALREADY PART OF THE RECORDS BEING REQUESTED." However, in a failure to provide competent representation at this point in the representation Respondents breached their contract and were negligent in this information removed when Claimant was ordered to sign Defendant's blank authorizations presented to her from the Respondents.

68.     When the additional language was removed from the records releases, above, allowed Defendant Waldorf and their staff to contact Claimant's providers, and the custodians of records. This was lack of competent representation and allowed Sandra Cole paralegal of Defendant Waldorf's counsel NaPier to sign declarations that were false because Ms. Cole stated that the custodians of records told her information, that simply was untrue. Respondents took no action to object or protect the record so that accurate reports of what took place were in the record. Respondents never contacted the custodians of records to get an accurate account of what took place with the discovery fiasco created by Defendant Waldorf and Respondents. This was a breach of Respondents duty to provide competent representation and negligence which significantly harmed Claimant's ability to prepare for trial.

69.     Defendant Waldorf's counsel NaPier knew there would be problems with their blank authorizations from the first go around in 2017 with Bickerton's forged authorizations and that many of the providers required their own authorizations which they sent back to her office, but she insisted, and Respondent Hsieh did nothing to oppose her at the July 2018 Status Conference. Respondent HSIEH relayed to Claimant that he agreed with the Judge and told him such at the Status Conference that Claimant should sign the Defense's blank authorizations knowing what Claimant had told him about the previous problems. Respondents were not paying attention and not displaying the thoroughness and preparation reasonably necessary for the Claimant's representation at this time. Claimant, Mark Beselt and Respondent HSIEH will testify to this. Respondents GREEN and HSIEH hadn't prepared for this Status Conference at all nor did nothing to heed Claimant's warnings about the problems that where already at issue with the custodians of records in Alberta.

70. From July 20, 2018 onwards, as a result of the Respondents casual, partial and unskillful actions, Defendant Waldorf's Counsel NaPier completely controlled and dictated discovery, records retrieval and Respondents were constantly reacting to NaPier's misstatements. Respondent Hsieh full well knowing that there were going to be issues with the records retrieval, failed to respond to counsel or the Court with any action to preserve the record and arrange for successful discovery instead did not act and allowed NaPier to press her narrative that would harm Claimant's ability to prove her damages at trial. This is reflected in email communications, in the court record and in future testimony of Claimant and Respondent HSIEH. This is a breach of contract failure to provide competent representation and is negligence on the part of Respondents GREEN and HSIEH.

71. Respondent HSIEH made changes to the interrogatories without the approval from Claimant and not under the Protective Order which resulted again in the failure to meet standard of care. Many of the production of documents produced by Claimant during the litigation, which were to be stamped as confidential were not stamped confidential by Respondent HSIEH and his legal assistant which caused Claimant emotional distress. This information is contained in email communications and discovery produced to Defendant Waldorf. This is a breach of contract by Respondents. In this instance Respondents failed to provide representation which demonstrated thoroughness, skill and preparation necessary for competent representation and negligence.

72. On or about August 6, 2018, after extensive pressure from Respondent's UESUGI and HSIEH, based on the argument that it was too much trouble not that it would be detrimental to the case, Claimant reluctantly agreed to severely limit her claim by the dismissal of the State of Hawaii as a Defendant which was dismissed soon thereafter. Because of this, Claimant asked Respondent HSIEH to then demand a jury trial since her earlier attorney Matson Kelly had not

done when requested by Claimant. Respondent HSIEH angerly told Claimant that it was not possible to demand a jury at this stage, even if the State of Hawaii was being dismissed. Respondent HSIEH didn't even try or make any attempt to get a jury trial against Defendant Waldorf. This was a failure to meet the promise of diligence which was contained in the retainer agreement. Respondent HSIEH'S conduct constitutes a breach of contract and negligence.

73.     None of the three Respondent's ever requested Claimant to sign any authorizations for their office so that they could obtain her records from Canada, on her behalf. This was a breach of the retainer agreement promise of diligence, thoroughness and reasonable preparation and negligence. Claimant, Mark Beselt and Respondent's will testify to this factual allegation, and it is also contained in the hearing transcripts and pleadings in the Second Circuit Court case.

74.     On or about August 3, 2018 Claimant asked her attorney for assistance with discovery but Respondent didn't assist because he was acting in an unprofessional manner starting a romantic relationship with Claimant. The Respondent HSIEH'S conduct was impacted by the desire for a sexual relationship with client and an attempt to control the Claimant which was a breach by Respondent HSIEH of his promise of competency. Claimant will testify to this allegation. This conduct by Respondent HSIEH is a breach of contract and negligence.

75.     In or about September and October 2018 Respondent HSIEH, although he was aware of their existence and the necessary part they played in the proof of injury damages, failed to get Claimant's triple spine surgery records from Germany and other providers in Canada. Although he threatened the Hague Convention with the German medical providers, he never followed up with them to get any of Claimant's records which are critical to the case. The Germans made it known that they wanted legal procedure to be followed, but Respondent's GREEN and HSIEH in another instance of not providing the reasonably necessary preparation made no efforts

to obtain these records meaning Claimant was unable to prove her spinal injuries or treatment required in Germany. This is a breach of contract promising to apply the requite knowledge and skill in their representation of the Claimant and acts constituting negligence.

76.     In the fall of 2018, many providers in Alberta stated they wouldn't release under Defendant Waldorf's blanket authorizations and that there standard of care was to give to Plaintiff's Counsel not Defendant. Claimant will testify to the breach of competence of the part of Respondents GREEN and HSIEH and that they did nothing to see that this procedure was followed which inhibited and delayed the Claimant's case. This is a breach of contract and negligence.

77.     There were further issues regarding the authorizations on or about October 28, 2018 which Respondent HSIEH didn't try to solve on behalf of Claimant. This is a breach of retainer agreement without some explanation it is wilful and wanton disregard of Respondent's legal duties to provide competent representation.

78.     Claimant resent emails with documents on or about November 30, 2018 to Respondent HSIEH from documents she had produced between August and October 2018 which he and Respondent GREEN or their staff neglected to Bates stamped and were not included in Claimant's production of documents. The failure to provide medical records to the opposing party when they were in the providing parties possession is a breach of promise to be reasonably provide discovery documents and thoroughness in the representation. Email communications will provide a trail of document which demonstrate this breach of contract by Respondents.

79.     Although Respondent HSIEH was aware on or about November 14, 2018 that NaPier was using her blank authorizations on a fishing expedition and sending them to doctors Claimant never even saw, as Claimant complained and emailed Respondent HSIEH about it, Respondents did nothing to stop it. This magnified the discovery issues as providers were

suspicious after receiving a parade of records requests, they did not want to provide records. This contributed to the discovery status of the lawsuit and understandably increased the trial courts concern regarding whether the Claimant was being fully responsive to her obligation as the plaintiff and as a party to the Second Circuit litigation. The possibility of this appearance being attached to the Plaintiff Claimants action in the trial court could have been totally avoided if the Respondents' conduct would have been competent. This is a breach of contract, negligence and willful disregard for the case and their legal duties.

80.    On or about November 28, 2018 Respondent HSIEH didn't know from whom records had been requested by Defense as he hadn't asked for them and didn't know if records beyond consents authorization (out of scope) have been produced. Although because of the status of the discovery proceeding in the trial up to this point Respondent HSIEH was to make sure authorizations sent to named providers and no others and within the agreed upon timeline. However, none of Respondents bothered to do this during their representation of Claimant. Therefore, a number of records were produced outside of the scope and timelines agreed to in discovery, hindering Claimant further and causing further privacy invasion. This factual allegation is contained in emails and pleadings with the Second Circuit and is a breach of contract.

81.    On or about November 30, 2018 Respondent HSIEH told Claimant she had to go physically to get her counseling records from Maver Eagle as Mr. Eagle, her previous Christian Counselor wanted to wait for a Canadian Court Order to release. Mr. Eagle mailed the records directly to Respondents GREEN and HSIEH, as was typical for a Canadian provider, which were redacted because they included couples counseling and Mark and Claimant's children's information. Respondents GREEN and HSIEH should have handled this on the phone and not forced Claimant to attend Mr. Eagles office as Defense NaPier later used this in the January 2019

Motion to Compel to claim Claimant had interfered. Again, Respondents GREEN and HSIEH forced Claimant to do the work that was their responsibility and is a breach of contract and negligence.

82.     In an email from Defense Counsel NaPier on December 11, 2018 she told Respondent HSIEH that he needed to get unredacted records of Maver Eagle or schedule a Status Conference with Cahill, but Respondent HSIEH just ignored her and this significant issue ended up in a Motion to Compel on January 10, 2019. This negligent conduct by Respondent HSIEH is a breach of contract promise to use methods and procedures used by competent practitioners and with a level of attention and preparation which corresponds to the value of the task to the matter and its outcome. This did not happen here.

83.     In January and February 2019 Respondent's GREEN and HSIEH did not provide their skill and resources, methods and procedures followed by the legal community and left Claimant BESELT and Mark Beselt to scramble to show what caused the problems with the discovery, and Respondent HSIEH placed the burden on Claimant to contact the providers, obtain statements and affidavits, which was Respondent's job. Many of the affidavits that were obtained by Claimant from her providers, Respondent HSIEH did not even contact. This is a breach of contract for not providing in their actions skill, legal knowledge, thoroughness and preparation, negligence and willful wanton disregard by Respondents to properly represent their client.

84.     Respondents GREEN, UESUGI and HSIEH did not sign a retainer agreement and pay Dr. Peter Rossi to be Claimant's expert although she had requested, by email, text and telephone calls that they do such as soon as possible. Claimant needed to be reassessed by Dr. Rossi as she hadn't seen him since 2017. Therefore, when Claimant BESELT flew from Canada, and attended his Hawaii office for her reassessment, on or about January 29, 2019, he turned her

away and was not able to assess her in person. This was not done because Respondents didn't pay his fee or sign his retainer agreement (again basic lawyering and incompetency) after nine (9) months of representation of Claimant. This is another breach of contract by Respondents and negligence.

85.     Although, on or about December 2019 to February 2019 information was gathered by Respondents that Defendant Waldorf's problem, was in part, that they didn't pay for records, in addition they weren't following Canada rules, and that was why at least some of the records weren't being sent. Charged with the knowledge this medical records detail is essential Respondents GREEN and HSIEH did not offer to contact the providers to pay and arrange for a records retrieval aware of the information of the Defense's difficulty obtain the records. Nothing was gained by the reticence of the Respondents and it contributed to the discovery debacle which drew the attention of the Court. Email communications supporting this allegation and the testimony of Claimant and Respondents will prove this allegation and breach of contract and negligence claims.

86.     Although Respondent HSIEH received a letter from Alberta Health Services General Counsel dated February 5, 2019 on why Canada records not produced or redacted but he did nothing to rectify the incorrect letter sent by Alberta Health Services ("AHS") dated January 30, 2019 from Charla Haynes. This AHS letter incorrectly stated Claimant wanted her records redacted and that was why they couldn't produce them to Defendants. Although Respondent HSIEH knew that Claimant had been emailing AHS for months requesting the remaining employee records to be sent to Defense, Respondent HSIEH did not produce this email communication to the Judge in his pleadings and filings or oral argument before the Second Circuit. This was the only piece of evidence, although false, that the Judge had of the misstatements of Defense,

however, Respondent's GREEN and HSIEH did not produce the documentation that would have exonerated Claimant and prevent her from being sanctioned at the February 13, 2019 hearing on the Motion to Compel. Respondent HSIEH was negligent and breached the contract by failures of the duty of diligence, thoroughness and preparation.

87. On or about February 7, 2019 Respondents GREEN and HSIEH filed a Memorandum in Opposition to the Motion to Compel, with the help of Claimant and Mr. Beselt, which was 38 pages but exceeded the 20 page limit which angered the Judge and Defendant Waldorf. This is symptomatic of how central the discovery issues were being viewed by the Court. Although this was the only pleading that Respondent's filed on time with the Second Circuit on behalf of Claimant. Email communications and the testimony of Claimant, Mark Beselt and Respondent HSIEH will affirm this allegation. This breached the contractual provision for the Respondents to be able to be prepared, skillful to be able to represent the client without relying on his clients to do the lawyers' work.

88. On or about February 13, 2019, after the hearing on the Motion to Compel and the Judge's ruling no more records disclosure after a date certain, Claimant personally drove to medical providers in the City of Calgary, Alberta to obtain as many records as possible and scanned them and sent them via email to Edna Bartolome, Respondents legal assistant, and Respondent HSIEH to have them Bates stamped before the end of the deadline day set by the Court. However. Respondent HSIEH went home for a nap after getting off the plane from Maui Court. Bartolome stated to Claimant she would not Bates stamp them without Respondent GREEN or HSIEH'S approval. Claimant finally was able to reach Respondent HSIEH by telephone later that day, and the records could still have been stamped and provided to Defense; however, Respondent HSIEH stated to Claimant that he couldn't be bothered with it. This was a breach of the promise in the

retainer to provide representation with competence, knowledge, skill, reasonable diligence and promptness. This breach was particularly impactful because the Court had made it clear that there was a rising concern that someone was hampering discovery and this was another missed opportunity for Claimant to show how seriously they took their obligation to produce discovery so the Court would be able to correctly assess who, what was the source of the discovery situation. This incident showed the Respondents' apparently willful, intentional, and wanton disregard for Claimant's case. The evidence on this point is provided by email communications and telephone calls between Claimant, Respondent HSIEH and Ms. Bartolome. This breach of contract and negligence by Respondent HSIEH and his staff is indicative of the representation by Respondent GREEN and his associates of the casual manner in which they held their obligation by contract to provide competent, diligent, thorough representation.

89.    Shortly after the February 13, 2019, hearing Claimant in speaking to her counsel requested Respondent HSIEH to either file a writ of mandamus or an appeal of the Court's decision as it was clearly made in error and without a clear complete understanding about the current situation and how it had arisen. Respondent HSIEH stated he felt the Judge had errored as well. Respondent HSIEH stated to Claimant that he would not file an appeal, but that Claimant could do it after the trial and that he thought it best to file a Motion for Reconsideration instead. This conduct by Respondent HSIEH is a breach of contract and in violation of his professional legal responsibilities.

90.    On or about March 7, 2019 Respondent HSIEH now stated that the records issue was not his fault but Claimants and he made the same assignment of error to her with Respondent GREEN in a conference call later in the day between the three of them which is audio recorded and provided for this arbitration. At this point, Respondents GREEN and HSIEH felt it necessary

to blame Claimant for their conduct, lack of representation and standard of care. This is a breach of conduct upon Claimant by her attorneys.

91.     At the March 15, 2019 mediation, Defense NaPier brought up her concerns about having the billing for medical treatment authenticated. Respondent HSIEH replied to Keith Hunter and Claimant that this was too expensive and wouldn't be done although it may have meant that Claimant would not be able to be compensated for any of her special damages. Claimant and Respondent will testify to this allegation. This was a failure of standard of care and in breach of contract for not having preparation reasonably necessary available.

92.     On or about March 23, 2019 Claimant and Respondent HSIEH, while working on the Motion for Reconsideration in Respondent GREEN's office, got into a huge argument and again Respondent HSIEH blamed Claimant for records issues, even though he refused to state what had happened or help deal with the issue as the Judge had asked at the motion to compel hearing – why didn't you get the records?  The argument was instigated by the break up between Respondent HSIEH and Claimant, showing why lawyers are forbidden to have such relationships with their clients. The work didn't get done that day because of the argument. This constituted a breach of his fiduciary duty, breach of contract and inflicted emotional distress upon Claimant. This situation was caused by the contract breach of the Respondent HSIEH and the existence of sexual relations in the circumstances of a relationship as lawyer and client.

93.     On or about March 25, 2019, Claimant's Motion for Reconsideration was filed which stated that although it stated that Respondent's would try to get the redacted records, but they never made any attempt. There were only a few redacted records, but Respondent's didn't state on the record that they would provide any of the other remaining records. Claimant had to undertake with her own time and resources get the records on her own and she was going to get as

many as she could, not just the redacted records unredacted. Records had become an issue and no one have a complete set of records and the Respondents were not contributing to the resolution of this litigation preparation issue. Respondents breached the contract in this circumstance because it was the Respondents' duty to by using the methods and procedures consistent with the practices of competent practitioners to have preparations which would be reasonably necessary for the representation ready and available.

94.     Because of the actions of the Respondent's and its effect on Claimant's case the Defense NaPier was not persuaded to make a reasonable offer of settlement. An example that Respondent HSIEH, had no idea which records were produced and if there were redactions or not, and he emailed NaPier for assistance. On or about March 27, 2019, in an email NaPier sent to Respondent HSIEH she quoted, "As for redactions, you have the same records we do and can review them to see whether they are redacted. I must admit that some of the requests in your emails remind me of Tom Sawyer trying to get assistance in painting the fence." This conduct was a breach for the retainer agreement in not demonstrating reasonable preparation which necessary, failure of skill, thoroughness, and preparation. Respondent HSIEH only made excuses for his failings. This conduct is negligence.

95.     On or about March 27, 2019 Claimant indicated to Respondent HSIEH that she did not want him at her and Mark Beselt's depositions and wanted Respondent GREEN instead, and Respondent GREEN could fulfil the promise he made to her to attend. But Respondent HSIEH stated Respondent GREEN would not appear. Claimant had asked Respondent HSIEH many times to ask another attorney in Respondent GREEN'S office to work with Claimant as she no longer wanted anything to do with Respondent HSIEH due to the end of the romantic relationship. This is documented in email communications between Respondent and Claimant. Respondent HSIEH

repeatedly told Claimant there was no one else and if Claimant wanted a new attorney, then she could hire a new lawyer but Respondent's would still want their 1/3 fee and a new lawyer would want another 1/3, leaving Claimant to pay 66.6% of any award or settlement. This was an attempt to extort the client who he has subjected to malpractice. Since Claimant couldn't settle claim without her getting independent legal advice, **Respondent HSIEH was in a bind**. This is a breach of duty of competent representation.

96. Due to the arguing over the end of the romantic relationship Claimant, and as a result of this change, Respondent HSIEH, restricted this communication with the Claimant. The action of Respondent HSIEH in not withdrawing from the representation when it was clear that the ability to provide competent communication without regard to competent representation was not present. Further, this impermissible relationship initiated by Respondent caused a breach of contract, violated his professional duties and resulting in negligence to the case. This is legal malpractice.

97. On or about April 1, 2019 Respondent HSIEH e-mailed medical records to Defense NaPier which he had been provided by Claimant after the February 13, 2019 hearing, which he would not bates stamp and submit that day. Again, failure to act in timely fashion even though he had promised records in Motion for Reconsideration, breaching the contract and is negligence.

98. On or about April 4, 2019 Claimant emailed Respondent as she was unsure if she should keep supplying records which she was getting as Respondent HSIEH was not communicating much with Claimant nor providing direction or any assistance. Failing to communicate is a consistent theme by Respondent's toward Claimant during their representation more pronounced after the end of the sexual relationship. It is a breach of contract and a violation of the promises of competence and diligence.

99.     Another example of the failure of the Respondents to perform their contractual obligation of diligence and competence were issues which arose with the Defense IMEs which Respondent's GREEN and HSIEH neglected. The Claimant was forced to attend invasive, and unnecessary IME's. These IME's were not limited to the medical restrictions of her May 21, 2019 medical accommodation requests requited by her physician due to the Claimant's permanent injuries. These medical requests for limitations and restrictions to support Claimant were completely ignored by Respondents breaching the duty of reasonable diligence and duty to see that the interests of the client and pertinent, reasonable restrictions are obtained with zeal in advocacy upon the client's behalf. This did not happen here there was an abandonment of the client, again breaching the duties of the retainer agreement contract and which resulted in negligence to the case. Email communications and medical records support this allegation.

100.    On or about April 7, 2019 there were problems with obtaining experts for Claimant's IMEs which Respondents GREEN and HSIEH delayed receiving until too late to meet dates for in person assessments. The Respondents are charged with the duty of having made and supply preparation necessary for the representation. This was a breach of contract and negligence as it should have been done months earlier. Emails and text messages relay this information and Claimant and Respondent HSIEH will testify to such at the hearing.

101.    Because of the issues with the scheduling of the Defendant's IME's another Motion to Compel was filed against Claimant. Due to Respondent's lack of work product, late filings, and poor representation it sowed her case in a bad light reflected on her apparent attitude to the litigation and allowed the Defense to take advantage of this situation their trial strategy. Respondents were slow to provide Claimant with the new Motion to Compel which resulted in a failure of the client opportunity to have input into the preparation of her case. This failure to keep

the client informed of important events in a timely manner is a breach of the lawyer's duties of competence and diligence. This constitutes negligence and breach of contract.

102.     In April 2019 Respondent HSIEH failed to communicate with Claimant over the Motion to Compel which made matters worse between Defendant and Claimant and the possibility of a fair settlement. This is recorded in the email communications between Claimant and Respondents. This was a breach of the lawyer's duty to keep the client aware of any developments in the matter, diligence, and competence.

103.     On or about an April 15, 2019 in an audio recorded call between Respondent HSIEH and Claimant, Claimant expressed that she was going out and getting, not just the redacted records, but all her records back to 2005. Claimant stated she could not scan them all in as she did not have the capabilities given there were thousands of pages, she was in rehabilitation for her brain/vision injuries and was trying to work for her employer. Respondent HSIEH did not lift a finger to assist but let his injured client do all the work. This is a breach of contract duties of thoroughness and preparation by Respondents.

104.     On or about April 29, 2019 Respondent HSIEH did not have records or imaging of Claimant's spine since Defendant had only provided a disc copy to Respondent's which couldn't be duplicated nor accessed. Claimant did not know this and either did Respondent's as no one had checked the disc prior to this date. Dr. Rossi who was leaving on vacation in NY by this point in time, needed to review the imaging but Respondents could not provide him a copy. Therefore, Respondents GREEN and HSIEH wanted Claimant to go to New York but Dr. Rossi stated it was too far and he would look at imaging while on vacation. Respondent HSIEH instructed Claimant to go to all providers to get a copy of the imaging in Canada to have it couriered to Dr. Rossi in New York, which Claimant did at her own expense. Unfortunately, Defense NaPier later attacked

this expert because Dr. Rossi didn't reassess Claimant in person but would have on January 29, 2019 if Respondents GREEN and HSIEH had retained him as they were supposed to. Failure to procure experts and breach of contract by Respondents of the duty to be thorough and prepared and which was negligence.

105.    Claimant was not sure if she was to provide records any longer due to the March 2019 Order denying discovery, and lack of communication or representation by the Respondents, showed up in Hawaii on May 6, 2019 with a suitcase full of medical records in excess of 5000 pages for the hearing on the Motion for Reconsideration. Again, Respondent GREEN didn't attend Court, as promised, breaching the contract he had with Claimant who relied on his promise to be the one who would be the lawyer to appear in court hearing and handle the trial work on the case. Claimant was worried Defense NaPier would state records weren't authenticated, which she did, but Respondent HSIEH would not help in gathering them. This conduct by Respondents is in breach of the contract, violates their agreement that he would provide the required attention and preparation, basic competence and is negligence.

106.    On or about May 10, 2019, although Claimant did not want to settle she was very concerned with the Judge and her ability to prove her damages at trial. She was especially concerned that Respondent HSIEH had demonstrated some confusion with the records, had been in an out of a sexual relationship with her and, again, Respondent GREEN was not appearing. Claimant was, then, pressured by Respondent HSIEH to settle for any amount. This was a breach of the contract constituting legal malpractice because the lawyer's duty of competence and diligence was not present. The liability was not being strongly opposed, but the mess the Respondents had made of the medical records meant the injury/damage was open. The errors of

the Respondents made with the medical records and the damage component of the claim was not competent.

107.     In May 2019, further issues ensued with having expert reports in by May 31, 2019 as Respondent's GREEN and HSIEH were unwilling to hire a psychiatrist in Canada as an expert for Claimant. Canadian expert which Claimant had found, Dr. Spivak provided a quote of $3000 – $5000 Canadian for an assessment and report; however, Respondent GREEN decided he wanted his person, Dr. Wendler in Hawaii, who ended up charging $20 000 US instead. Claimant didn't get a choice in the matter as Respondents were in control no matter the cost to Claimant which breached the contract and was negligent.

108.     Further in the issue of the Respondents' failure of their duty to communicate and inform with Claimant or about May 14, 2019, Respondents GREEN and HSIEH insisted on retaining Hawaii psychiatrist Dr. Sheila Wendler who cost $20K US instead of one in Calgary at $3000-5000 Canadian. Then, after, Respondents withdrew on Claimant a few weeks later refused to pay Dr. Wendler her fee, therefore, she indicated to Claimant that she would not testify at trial until being paid for her services. Unfortunately, due to all the trips Claimant made to Hawaii at the request of Respondents, and her ongoing medical expenses, Claimant could not afford to pay Dr. Wendler $20 000 US in August 2019,  nor was it her responsibility. Email communications and Claimant's account summary from Respondent GREEN support this allegation. This lack of payment by Respondent's eliminated Dr. Wendler's testimony and was a breach of contract by Respondents GREEN and HSIEH. This was preparation reasonably necessary and not done.

109.     Further, Respondents didn't explain issues to the Claimant. They failed to keep her informed with the many issues happening with her case where the Claimant's consent after consultation was required or best practice. Also, on basic operational actions on deadlines for filing

and replying, on report and exams from the IMEs of her experts and further filings by Defense. Although the Respondents had the obligation under the duty of communication in any regard especially where the Claimant was not doing well physically and emotionally as her PTSD was out of control by this time, this failure of the duty of communication was a breach of the duties the Respondents agreed to with the Claimant in the retainer agreement. This conduct by Respondents is documented in emails and Claimant will testify to such. Respondents conduct breached the contract and without their actions the Claimant would have prevailed on her action for damages sustained in the Waldorf Astoria accident.

110.     On or about May 20, 2019, Respondent HSIEH did not use the corrected information in Claimant's declaration/pleadings which Claimant had sent to him. Again, another failure of requisite knowledge and skill to find and correct errors. These errors and bad information were used against Claimant by Defense NaPier to make the Claimant's case seem to be unsupported which it was not. The Claimant has in excess of 20,000 pages of medical records. Respondent HSIEH did not make changes in briefs and other filing when the errors were disclosed to them and Respondents and their assistants would not respond to Claimant to correct the continuing errors, effectively breaching contract showing a less than operational support structure established to supply the litigation preparations reasonably necessary for the representation resulting in damages to the Claimant.

111.     On or about May 29, 2019 Claimant was so unwell with an intense headache that she hardly slept the night before her IME with Defense hired Tanya D'Avanzo. Claimant was approximately 30 minutes late and she wanted to discuss cancelling with her attorney, Respondent HSIEH, however, he was no longer available to speak to his client Claimant BESELT since the February breakup. Respondents, by this time, had completely abandoned Claimant to fend for

herself as they provided little to no direction, assistance, prep or support to her after the May 24, 2019 hearing. This is a breach of contract.

112.     On or about May 30, 2019 Claimant told Respondent HSIEH that she was not well and would need his assistance for corrections to deposition transcripts due June 28, 2019; however, Respondents HSIEH or GREEN never helped with this task even though Claimant requested such by email. Respondents left it to the last minute then emailed Defendant Waldorf and requested an extension, which would not have been given. Therefore, Claimant only provided one statement in her corrections although she emailed Respondents several corrections to be made, but since she was not provided any guidance or assistance Claimant wasn't sure of what to submit. This is a breach of contract by Respondents and negligence.

113.     Although Claimant complained to Respondent HSIEH about the defense IME's and the things, they were doing in the assessments of Claimant which should not be allowed, Respondent HSIEH did nothing to stop it. Claimant will testify to such at the hearing. This is a breach of contract by Respondents, negligence and willful, wanton disregard of their legal responsibilities to their client.

114.     Respondent HSIEH could have filed a Motion for Continuance so that discovery could be obtained and Defense could have time to prepare their experts for Claimant's IMEs, but he would not, which breaches the contract and is legal malpractice.

115.     After the Defense IME's on or about May 31, 2019 Claimant was supposed to fly to the Big Island of Hawaii to be reassessed by Dr. Hall for the purposes of him issuing a rebuttal report due June 30, 2019; however, Respondent HSIEH cancelled the reassessment so that Defense hired D'Avanzo's report wouldn't be rebutted by Dr. Hall. This again, significantly disadvantaged

Claimant's claims for damages and was intentional negligence on the part of Respondent HSIEH and breached the contract.

116.     Respondent HSIEH did not follow up on obtaining the depositions of key witnesses, Adam Bloomberg and Randolph Gayoma to the umbrella incident that struck Claimant, although he was requested by Claimant. Email communications between Respondent HSIEH and Claimant will affirm this allegation and Respondent HSIEH and Claimant will testify to such. This is a breach of contract.

117.     On or about June 5, 2019, Claimant inquired about the settlement conference with the Court and Defense decided they wanted Judge Ochiai. When Claimant inquired about this Judge and expressed her concerns, Respondent GREEN picked up the phone and harshly notified Claimant to call him immediately as he intended on withdrawing based on Claimant's email with questions. This is a breach of contract as Respondent's had a duty to answer questions of his client and represent her best interests.

118.     On or about June 6, 2019 Respondent GREEN decided he wanted to withdraw as Claimant's counsel and Respondent GREEN called Claimant, screamed at her and insisted on talking to her even though she had an extreme headache. Claimant begged him not to withdraw; however, Respondents withdrew without cause. Respondents still demanded that they wanted 1/3 of the last Rule 68 settlement offer of $175 000. There was no regard for Claimant and the fact that she had trial scheduled for September 2019. Respondents GREEN and HSIEH abandoned Claimant at a critical stage and left her in the lurch constituting a breach of contract.

119.     To appease Respondent GREEN, Claimant agreed she would go as low as $275 000 to settle the case on or about June 9, 2019. Claimant couldn't find new counsel and she needed to keep Respondent GREEN as her attorney if she was to get any settlement. Respondent's first

destroyed her ability to take her case to trial and then abandoned her because the case was too damaged to potentially win at trial. Defense knew this and were not making reasonable offers to settle, but it only got worse once they found out that Respondent's had filed a Motion to Withdraw. This was negligence on the part of Respondents and a breach of contract.

120.     On or about June 19, 2019 there was a Status Conference call with Respondents and Defense Counsel which Judge Cahill cancelled Claimant's settlement conference with Judge Ochiai. Respondents never requested another settlement conference from Cahill on Claimant's behalf and therefore she never had one scheduled. There are emails associated with this conference call and details. This is breach of contract by Respondents.

121.     In June 2019 very little to no communications between Respondents and Claimant ensued except a few emails. Respondents were not responding, not providing Claimant with the status of her case, hiding information from her, not disclosing what was happening with her experts being subpoenaed, not notifying her that they had not filed a final naming of witnesses, any direction to her, not trying to settle her case for as much as possible as she had directed them to, and not setting up the settlement conference as she kept requesting. Respondents GREEN and HSIEH were completely nonresponsive counsel, negligent in representing Claimant and falsely accusing her of all kinds of things, such as it was her fault for not getting the records earlier, hiding the records, she had pre-existing medical issues (which she didn't), she was difficult and unreasonable, etc. This is a breach of contract and negligence on the part of Respondents and Claimant and Mark Beselt will testify to such.

122.     On or about June 24, 2019 Claimant kept checking hoohiki to see what was happening with her case as Respondents were failing to communicate with her. More Motions to strike Claimant's experts testimony and reports were being filed. Claimant wanted to know what

Respondents were doing about it. Respondent HSIEH responded that Defense was able to dismiss her experts but it could potentially be appealed, but he had no intention of doing such. This is a breach of contract as Respondent's were not performing the duties of proper legal counsel.

123.    On or about June 27, 2019 Claimant and Mark Beselt, since they were in Hawaii, came to the office of Respondent's to obtain a copy of her records. Claimant had provided Respondent's with sufficient notice of their intent to arrive. Claimant requested a copy of her file to look for a new attorney as Respondent's would not reconsider, instead Respondent GREEN kicked Claimant and Mr. Beselt out of his office without even assisting them in any way. Therefore, Claimant and Mr. Beselt walked over to mediator, Keith Hunter's office to see if he could help them but he was not there and they never spoke to him. Claimant had never contacted Mr. Hunter before. This is a breach of contract and intentional negligence on the part of Respondents.

124.    On or about June 27-28, 2019 Defense continued to file more motions against Claimant but Respondent's did nothing and would not email the pleadings to Claimant so that she knew what was going on with her case. The email communications will support this allegation. This is a breach of contract and failing in their duty to represent their client.

125.    In July 2019, Claimant's experts were to produce their files to Defense by way of a subpoena duces tecum, which Claimant has never been provided with what information was given or if it was given to Defense Counsel as Respondent's were failing to communicate Claimant prior to their withdrawal. This is a breach of contract as Claimant was entitled to know what was happening with her case especially since Respondents were wanting to withdraw and she was looking for new counsel.

126.     On or about June 29, 2019 Respondent HSIEH admitted he asked no questions of Defense experts or filed any subpoenas to obtain their experts records. Respondent HSIEH stated Defense could file a Motion for Summary Judgement but didn't mention that this was already on Claimant's file on hoohiki dated May 10, 2019. This was again failure to communicate or file papers on time and is a breach of contract.

127.     On or about July 3, 2019, Respondent GREEN would not respond to Claimant's emails to him as Respondent HSIEH was on vacation, and Defense had filed more Motions to strike experts. Respondent GREEN would not submit Claimant's counteroffer to mediator as she had emailed him and instructed him to do. This was a breach of contract by Respondent GREEN.

128.     Due to Respondent's breach of contract, Claimant on or about July 4, 2019 filed her own Memorandum in Opposition to Respondent's June 14, 2019 Motion to Withdraw as Counsel which was expensive to have it flown overnight to Maui from Canada. This was egregious because Claimant had done nothing wrong to warrant a withdrawal of counsel on the eve of trial and the emails reflect this, and so will the testimony of Claimant and her expert witness, Mr. Clark state such affirmation.

129.     Suddenly, Respondent's on or about July 8, 2019 were notified by Judge Cahill that the settlement conference with Judge Ochiai had been cancelled. But Respondents weren't communicating with Claimant and she was left in the dark. Respondents didn't bother to set up another settlement conference or make any effort to represent Claimant although they were still attorneys of record. This is a breach of contract and the email communications reflect such.

130.     Claimant received a text message from Respondent HSIEH requesting she provide him with full authority to settle her case, which she agreed to out of desperation in June 2019. Later, Claimant decided to withdraw Respondent's authority to settle on her behalf, because

Claimant had serious concerns about Respondent HSIEH's earlier coerced blank authority to settle Claimant's case for any amount. This revocation was done by email on July 10, 2019, which upset Respondent HSIEH and he would not adhere to Claimant's revocation. This was a breach of contract and negligence.

131.     The very next day, on July 11, 2019 Respondent HSIEH admitted over email that he read Claimant's written request revoking Respondent's authority to settle the case without obtaining Claimant's permission but instead ignored it and made an unauthorized settlement offer of $320 000 on July 11, 2019 with Defense – can't offer to settle against client order. This is a breach of contract and intentional negligence by Respondent HSIEH.

132.     On or about July 16, 2019 Respondent HSIEH'S Reply Memorandum on the Motion to Withdraw as Claimant's Counsel accused Claimant of misconduct. (In a motion to withdraw you do not file derogatory information in public or for opposition to see; you file in camera. But this was even more important as it was a bench trial since no jury had been demanded.) This is a breach of contract by Respondents GREEN and HSIEH.

133.     In July 2019 Claimant had to file, by courier, many of her own Memorandum in Oppositions to Defense's Motions Striking Experts Testimony and Reports since Respondent's would not communicate with Claimant nor inform her of their intent to do any work on her case. The costs of couriering pleadings from Canada to Maui was extensive but Respondent's didn't seem to care. This is negligence and a breach of contract by Respondents.

134.     There are many instances of Respondent's failing to communicate with Claimant during their representation which is a breach of contract by Respondents.

135.     Not surprisingly, Respondent GREEN who raised his voice at Claimant in the March 7, 2019 telephone conference, that she had to attend mediation regardless of the cost to her

and her young family, did not attend the mediation as promised but only called in to Keith Hunter at DPR for a few minutes to say hello. The many promises Respondent GREEN made that he would attend Claimant's mediation, deposition, etc. because he always did, was a complete lie. Respondent GREEN never attended any of Claimant's court hearings even though she requested him to do such. This is a breach of contract and negligent misrepresentation.

136.     As a direct and proximate result of Respondent's wrongdoing, violations of professional competency to represent their client, intentional tortious behavior, numerous negligent errors' during their representation, and incompetent representation, Claimant suffered, and continues to suffer, damages, and is therefore entitled to recover any and all lawful Waldorf damages and further damages by Respondent's representation ("Respondents damages") in such amounts as to be shown at a trial or hearing thereof.

## COUNT II

### (NEGLIGENCE & NEGLIGENT MISREPRESENTATION)

137.     Claimant restates the allegations contained in the preceding paragraphs of this More Definite Statement of Claims and incorporates those paragraphs by reference, as if fully set forth herein.

138.     Claimant BESELT and Mark BESELT, on or about March 2, 2018 signed an Attorney Client Contingent Fee Retainer Agreement with The Law Office of Michael Jay Green and Associates. Respondent's UESUGI and HSIEH were co-counsel to Respondent GREEN in the representation of Claimant. The Respondents represented and entered into a written retainer agreement.

139.     At all times relevant hereto, Respondents and each of them were responsible for the duty of care in their representation of Claimant and Mark Beselt in Ronda Melnychuk-Beselt AKA Ronda Beselt and Mark Beselt vs. Waldorf=Astoria Management LLC, et. al., case no. 2CC161000597 in the Circuit Court of the Second Circuit, Maui, Hawaii.

140.     Respondents, and each of them, had a duty to Claimant and Mark Beselt to advocate for the Plaintiffs with competent and skilled representation. Under that contract Respondents owed a duty of care commensurate with the specialized skill as a professional and Claimant was led to expect that the Respondents would use such skill, prudence, and diligence as lawyers of ordinary skill and capacity commonly possess and exercise in the performance of the tasks which they undertook in their representation of the Claimant.

141.     The Respondents violated their contractual duties in their representation of the Claimant failing to exercise the care, skill, and diligence commonly possessed and exercised by a member of the legal profession.

142.     Furthermore, Respondents negligently breached their duty to Claimant and Mark Beselt by negligently and/or carelessly failing to represent Claimant as a skilled professional with competency and a basic standard of care.

143.     The negligence of each Respondent was a substantial factor in causing the additional losses and further injuries of Claimant in addition to her initial injuries from the umbrella incident. Such injuries and losses include, but are not limited to, severe and permanent emotional distress, loss of income, loss of enjoyment of life, expenses incurred for treatment of injuries, and pain and suffering.

144.     Respondents are vicariously liable to Claimant for the aforesaid negligence and/or gross negligence of its representation of Claimant and Mark Beselt.

145. The negligent acts and/or omissions of Respondents, and each of them, were the direct and proximate causes of the losses Claimant suffered in their representation of her civil action Ronda Melnychuk-Beselt AKA Ronda Beselt and Mark Beselt vs. Waldorf=Astoria Management LLC, et. al., case no. 2CC161000597 in the Circuit Court of the Second Circuit, Maui, Hawaii.

146. Claimant is entitled to damages based upon the negligence of Respondents in an amount to be proved at hearing.

147. Respondents GREEN and HSIEH consistently filed almost every pleading late in violation of court rules and standards of competent representation on behalf of Claimant in the Second Circuit resulting in psychological pressure on the client and created a poor impression with the trial judge which resulted in unfavorable rulings from the Court. This is proven by the filings and motions before the Second Circuit in which Respondents represented Claimant. This is negligence, breach of contract and in violation of Respondents professional responsibilities.

148. Respondent's GREEN, UESUGI and HSIEH were negligent in delaying an effort to obtain Claimant's medical and employment records but insisted that Defendant Waldorf could do it on their behalf. Respondent's fully allowed Defendant to conduct discovery but made no efforts themselves to obtain discovery or comply with litigation standards. This is shown in the January 2019 Motion to Compel, the Memorandum in Opposition to the Motion to Compel, the testimony of Claimant, Mark Beselt, Respondents and email communications. This is negligence, a breach of contract and constitutes legal malpractice.

149. Repeatedly Claimant requested assistance, via oral and email communications, from Respondent HSIEH in September, and November 2018, and in January, February, May and June 2019 to work on supplementing her Answers to Interrogatories as she later discovered that

they were not done completely in 2017. However, Respondent HSIEH mislead Claimant and told her not to worry they would work on it later, but that did not happen. This is negligent misrepresentation. These delays and inaction by Respondents were used against Claimant in the discovery fiasco before the Second Circuit Judge arising from the perception of the part of the Court that the Claimant was responsible for the delays when it was the lack of diligence on the part of her counsel. Adding insult to injury Claimant's trial counsel did not take any responsibility of the discovery failures leaving the Court with the impression that it was caused by the inattention of the Claimant. This is an example of the breach of duty by Respondent handling the most basic tasks and then avoiding responsibility by allowing Defense to use this against Claimant at hearing to accuse Claimant of playing discovery games when in fact it was their breach of the duty of competent representation and contract which created this situation which colored the Court's view of the case and the litigant and was a factor in the dismissal of the claim. This is negligence and breach of contract on the part of the Respondents constituting legal malpractice.

150.    Claimant BESELT discussed the 2017 forged authorizations with Respondents GREEN and UESUGI and requested Respondent UESUGI to use the authorizations for her medical and employment records retrieval that she had signed with the Bickerton firm in January and February 2018 as Defendant Waldorf had already agreed to the language in the authorizations, and it contained the correct information to properly obtain the records in Canada, however, Respondent UESUGI would not proceed forward to obtain any of Claimant's records and begin discovery knowing that there was a scheduled July 20, 2018 Status Conference and trial scheduled for September 24, 2018 which had just been delayed to February 19, 2019. Instead, Respondent UESUGI told Claimant that he wasn't going to work on her file until September 2018 or later. This conversation is partially contained in the March 21, 2018 email communication sent to

Claimant by Respondent UESUGI and in the April 26, 2018 call between Claimant and Respondent GREEN. This negligence was a lack of duty to Claimant who relied upon him to begin discovery on her case and in breach of the contract.

151.     Respondent UESUGI spoke to Defendant Waldorf's Counsel NaPier on or about March 21, 2018 about using the Bickerton authorizations but she stated she did not have any authorizations, which wasn't true. Defendant already wanted a trial date delay from February 18, 2019, although the date had just been moved to accommodate Defendant and it was nearly one year away. According to the March 21, 2018 email, Respondent UESUGI agreed to turn over Claimant's son's medical records against Claimant's request since Claimant's children were not a party to the lawsuit. Further, Respondent UESUGI wanted to drop the State of Hawaii as a Defendant and encouraged Claimant to do such in the March 21, 2018 telephone call between the two. This is neglect of Claimant BESELT and Mark Beselt's case and not following the request of client on protecting privacy. Respondent UESUGI called up Patricia NaPier, Defense Counsel for Waldorf on or about March 21, 2018 (the exact date is unknown) and discussed Claimant and Mark Beselt's children which included Nathan Beselt's previous health issues with Napier breaching attorney client confidentiality. Napier then requested the medical records and information of Claimant's children, who were never a part of the lawsuit against the hotel and went to Judge Cahill in her July 2018 Status Conference and Memorandum filed July 13, 2018 now demanding 3rd Party redactions no longer be allowed on Claimant's authorizations for medical records even though she knew that some of the medical records were intermingled between Claimant and her children, such as the PCP, Dr. Bajwa's records. Claimant and Respondent UESUGI discussed this topic in a March 21, 2018 telephone call and Claimant expressed her concerns when Respondent UESUGI suggested she provide her children's medical records to

Defense Counsel. Respondent UESUGI'S conduct constitutes negligence. Claimant will testify to these facts, along with a March 21, 2018 email from Respondent UESUGI, Claimant's March 2018 telephone bill verifying this call between her and Respondent UESUGI and the Status Conference Memo by Defendant's Counsel will show proof of this claim. Also, the motions filed in the Beselt v. Waldorf=Astoria Management LLC, 2nd Circuit civil action will show proof as well. This conduct by Respondent UESUGI was negligence, in breach of the contract and violated Respondent's professional responsibilities.

152.     In the May 21, 2018 meeting Claimant Beselt told Respondent HSIEH about the authorizations which Defendant Waldorf stated were withdrawn but were a result of forgery by the Bickerton firm in 2017. Respondent GREEN stated, "I don't like to bash other lawyers", which is contained in email communications between Claimant and Respondents. However, due to lack of competent counsel rectifying this authorization issue it became a major problem creating an incorrect view of the case by the Court which led to Defendant Waldorf's Motion to Compel Discovery in January 2019 which destroyed Claimant's ability to take her case to trial. Respondents could have but choose not to rectify Claimant's earlier attorney's errors, even though they were made fully aware of the issues. This is intentional negligence as all three Respondent's were fully aware of the discovery issues prior to taking on the case. This also constitutes a breach of contract and is legal malpractice.

153.     In the May 4, 2018 telephone call and the May 21, 2018 meeting Respondent HSIEH also stated it was "too much work" to go after the State of Hawaii-DLNR and encouraged Claimant BESELT and Mark Beselt to drop the State as a Defendant because according to Respondent HSIEH, the case was "weak against the State" to coerce Claimant and Mark Beselt. This was just laziness on the part of Respondent's, which they had no regard for how this action

might affect litigating the case against Defendant Waldorf. The May 4, 2018 audio recorded call between Claimant and Respondent HSIEH will prove this factual allegation and the eventual coercion of Respondents upon Claimant and Mark Beselt to agree to drop the State. Respondent HSIEH'S conduct is negligent misrepresentation as he lied to Claimant to entice her and Mark Beselt to make his job easier. This conduct also breaches the contract constituting legal malpractice.

154.    In May and June 2018, Respondent HSIEH told Claimant that there was no need and it was not possible for an *in camera* as the Protective Order would suffice regarding her privacy concerns around not wanting to release her psychological and counseling records. A protective order was not what Claimant had agreed to with Respondent GREEN should she have to provide her psychological records if she was not pursuing her emotional damages claims. Email communications and the testimony of Claimant and Mark Beselt will support this allegation. Respondent HSIEH made the representations when he was aware of their falsity or without knowledge of their truth, to do less work on the case in protecting Claimant's privacy request and is negligent misrepresentation by Respondent HSIEH.

155.    At the lengthy May 21, 2018 meeting with Respondent's GREEN and HSIEH, Claimant and Mark Beselt, many topics were discussed. In this meeting, Respondent HSIEH told Claimant BESELT that he was in a romantic relationship with his client, who later was identified as Terri Niimoto of Hawaii. Claimant was told by Respondent HSIEH that he met Ms. Niimoto after he began representing her and the relationship began and ended during his representation of this client. This information was relayed to Claimant by Respondent HSIEH to verify Claimant's concerns about getting into a romantic relationship with Respondent HSIEH, which began in August 2018. Respondent HSIEH used this information to reassure Claimant that it was perfectly

fine to date his clients. Respondent HSIEH also told Claimant about other clients that he had sexual relations with while representing these clients. Respondent HSIEH made these representations that it was fine to have sexual relations with his clients when he was aware of their falsity and is negligent misrepresentation.

156.    Claimant made Respondent HSIEH aware of her filed Protective Order that was already in place as she had sent him a copy in early June 2018, but Respondent HSIEH was not prepared with an understanding of the status of the case, did not have factual bases for his direction to the Claimant and this situation consistently happened during his representation. Respondent's GREEN and HSIEH often appeared confused as to what the status of Claimant's case was. This is contained in email communications, audio recorded calls and Claimant, Mark Beselt and Respondents will testify to such factual allegations. This conduct by all three Respondents is negligence and in breach of contract.

157.    Claimant took the brunt for all of Respondent's errors during the litigation, which caused her significant harm in the eyes of the Judge and with settlement efforts with Defendant Waldorf. This is contained in the hearing transcripts of the Second Circuit case and Defendant's offers of settlement. Respondents withholding of information to protect self or lying by omission is negligent misrepresentation and constitutes legal malpractice.

158.    Because Respondent UESUGI had told Claimant BESELT on or about March 21, 2018, that he had discussed Claimant's children's medical history with Defense Counsel NaPier, and suddenly, in mid-July 2018, NaPier no longer wanted an authorization excluding third party information, and requested Claimant sign her blanket authorizations, NaPier and Claimant knew that would not work based on the issues from 2017's record retrieval as individual authorizations needed to be signed. Respondent UESUGI even emailed Claimant and told her to provide her

children's medical information to Defendant. This was a breach of Claimant's privacy. Respondent UESUGI'S conduct constitutes negligent misrepresentation.

159.     Respondent HSIEH knowing the 2017 authorization issues, agreed on or about July 12, 2018 to Defense NaPier's authorizations allowing Claimant's son's previous medical information and that of Mark Beselt even though Mr. Beselt wasn't making any employment or damages claims. This was failure to follow directions of Claimant, was not necessary and a breach of privacy to his clients and duty of care. In early August 2018, Mark Beselt, then Plaintiff, had requested Respondent HSIEH to limit his discovery because Mr. Beselt had only a loss of consortium claim. But Respondent HSIEH agreed to Defense NaPier's discovery request of Mark Beselt to have all his medical and employment records back to 2005. Email communications which Claimant and Mark Beselt relied on Respondent HSIEH'S negligent misrepresentation resulted in Mark Beselt dropping his claim for loss of consortium.  Respondent HSIEH'S conduct is also a breach of contract as he failed to act on behalf of his clients and he violated his obligations.

160.     This lack of representation and conduct by Respondent HSIEH meant that he had created discovery issues because he did not understand what the law required in Canada and had forced Claimant BESELT to agree to things she could not do. Claimant was later sanctioned for this, resulting in Respondent's failure to meet standard of care, duty to provide competent representation and requirement of preparation. Claimant, and Mark Beselt will testify to these allegations and email communications between Respondents and Claimant will be provided at the hearing. These acts by Respondent HSIEH constitute negligence resulting in legal malpractice.

161.     On or about July 13, 2018 Claimant repeated all the problems with Defense NaPier authorizations to Respondent HSIEH and told him to use the previous Bickerton authorizations that were done properly. Claimant clearly explained in the email communications to Respondent

HSIEH that if she was to sign NaPier's authorizations there would be problems obtaining the records in Canada; however, he thought they were acceptable even though Claimant BESELT and Mark Beselt had discussed it on the phone and sent him emails explaining that he should not agree to NaPier's terms because it was going to cause issues in the retrieval. It wasn't just Claimant's children's privacy issues that she was concerned about but the problems created by Bickerton's forged authorizations. NaPier's blank authorizations were not legal in Alberta as they were in contravention of privacy laws, such as giving informed consent. Respondents did not listen to Claimant even though many warnings by her and Mr. Beselt were given. This willful behavior by Respondent HSIEH is negligence and also in breach of contract by Respondents.

162.    On or about July 16- 17, 2018 Claimant very concerned for her case, and on her own initiative, emailed Respondent HSIEH thirty-two (32) signed authorizations for Respondent's to provide to Defendant Waldorf. Respondent HSIEH waited until 12 minutes before the July 20, 2018 Status Conference call, further upsetting Defendant Waldorf, to send the authorizations that Claimant had signed days ago. As a result of the breach of the duty of competent representation Claimant was accused of more claims of interference at the Status Conference. Respondent HSIEH blamed Claimant for his errors and negligence in properly representing his client resulting in intentional infliction of emotional distress upon Claimant. This information is documented in the emails and Claimant and Mark Beselt will testify to such at the hearing. Respondents conduct violates a breach of contract and is negligence.

163.    Also, all those thirty-two (32) authorizations that Claimant signed for Respondent HSIEH could have been used to obtain Claimant's records, however, Respondents never used the authorizations to obtain Claimant's records. This resulted in a failure to do discovery and failure to protect Claimant's interest in the Status Conference call which turned Judge Cahill in the Second

Circuit against Claimant. This information is contained in email communications between Claimant and Respondent and Claimant and Respondents will testify to this factual allegation. This conduct of Respondents was part of continued malpractice on discovery – Respondent's failure to meet standard of care resulted throughout their representation of Claimant. Respondents conduct violated their professional duties, breached the contract and constitutes negligence.

164.    Respondents never used any authorizations to obtain any of Claimant's records to prove her damages claims, even though they had at least thirty-two (32) individual authorizations signed by Claimant in mid-July 2018, which were valid for at least two years. These authorizations were for records to be sent to Respondent's, which is the standard practice in Canada and would have assisted Claimant to prove her damages at trial. Had any records been obtained by Respondent's, Judge Cahill at the February 13, 2019 hearing on the Motion to Compel discovery wouldn't have asked Respondent HSIEH why he hadn't obtained any of Claimant's medical and employment records. Claimant simply took the blame for Respondent's failures in the eyes of the Court and is negligence on the part of Respondents.

165.    On or about July 31, 2018 Respondent HSIEH told Claimant that her discovery answers were due which was later discovered that was not true but Respondent HSIEH needed to assert control regardless of the effects to Claimant and her case. This resulted in rushed and incomplete answers to interrogatories which harmed Claimant's case further. Respondent HSIEH made the representations when he was aware of their falsity and is negligence.

166.    On or about August 2, 2018 Claimant emailed Respondents as many of her medical providers she could remember as Respondent HSIEH was pressuring her to finish the Answers to Interrogatories that he had told her they were due July 31, 2018 but that was not true information. Claimant relied upon her attorney to be truthful and therefore she rushed to get in what she could

which was not done completely, particularly since Respondent HSIEH would not provide his assistance. Respondent HSIEH'S conduct was negligent misrepresentation. The list Claimant provided was not a complete set of providers; however Respondent Hsieh indicated to Claimant not to worry they'll get it later, however, Respondent HSIEH never sent the majority of the list until January 19, 2019 after Defendant Waldorf in their Motion to Compel stated they never got it and Claimant then inquired and resent it to Respondents to submit. Email communications and the testimony of Claimant and Respondent HSIEH will verify this allegation. This was another example of the incompetent representation which again involved a discovery failure that severely impacted Claimant and showed Respondent's negligence in their representation to provide basic discovery responses of their client.

167.     Respondent HSIEH having had a romantic interest in Claimant encouraged Mark Beselt to drop his loss of consortium claim stating it would be of minimal value, which Mr. Beselt eventually agreed to in August 2018. However, it is likely that the loss of consortium claim would have been significant. Respondent HSIEH made the representations when he was aware of their falsity and is negligent misrepresentation. This is also a breach of contract to Mark Beselt by Respondent HSIEH.

168.     On or about August 3, 2018 Claimant having concerns with discovery contacted an attorney, Asher MacDonald in Calgary, Alberta to assist with discovery. She offered this attorney's assistance to Respondents; however, Respondent HSIEH lost his temper, intimidated Claimant, threatened to withdraw and refused the help of a Canadian lawyer on discovery – this unprofessional conduct weakened Claimant's case and again this hurt her on the Motion to Compel, January 2019 which basically would cancel Claimant's case if successful. Claimant again offered this assistance to Respondent's in November 2018 but was rebuffed. Claimant offered

Respondent HSIEH on August 3, 2018 and on or about November 18, 2018 to have an attorney in Calgary, Asher MacDonald (McLeod Law) assist with obtaining the medical and employment records out of Canada and communicate directly with Respondent HSIEH instead of Claimant. Respondent HSIEH agreed in July 2018 to Defense Napier's demand that the medical and employment authorizations not include the need for subpoenas to obtain the records, as previous authorizations for the Bickerton office had included. Although Hsieh knew that there would be issues obtaining the records because of the Bickerton's forged authorizations, he told Claimant that he would withdraw on her if she ever made this request again. Claimant will testify to this fact at the hearing. Claimant and attorney Asher MacDonald could testify to this information, including the Declaration(s) of Ronda Beselt filed in the Beselt v. Waldorf=Astoria Management LLC, 2nd Circuit civil action. Respondent HSIEH'S conduct was negligent in his representation.

169. Mr. Beselt decided to, on the advice of Respondent HSIEH that his loss of consortium claim would be minimal, drop his claims in the lawsuit, which was done by Stipulation on or about August 9, 2018. However, after that time frame Respondent HSIEH, repeatedly submitted Mr. Beselt's tax returns to Defendant Waldorf against Mr. Beselt's instructions not to. Mr. Beselt requested in August 2018 and December 2018 to Respondent HSIEH to confirm destruction of his tax returns and other discovery with Defendant by deleting his information, but Respondent HSIEH never made any effort to resolve Mr. Beselt's request. Respondent HSIEH breached confidentiality of former Plaintiff Mark Beselt in August 2018 when he gave Defense Counsel Mark's tax records even after he coerced Mark Beselt to drop his loss of consortium claims in a Stipulation for Dismissal on August 8, 2018. There are a number of email requests by Claimant and Mark Beselt from July 2018- February 2019 which were sent to Hsieh and his acknowledgement that he would request Defendant Waldorf's Counsel to delete Mark's tax

records, but Hsieh never followed up on it. The testimonies of Claimant and Mark Beselt and emails show this proof. Respondents conduct constitutes a breach of contract and negligence.

170.    During representation there were delays with Alberta producing records. Respondent HSIEH did nothing to try to get production – this is a breach of his duty to provide full, adequate representation to Claimant's, but instead he told her to let Defendant Waldorf get the records and not to interfere by getting the records herself. Even when Claimant told Respondent HSIEH in the fall of 2018 that her providers indicated to her that they were waiting weeks or months for payment by Defense so they weren't sending out the records, Respondent HSIEH told Claimant not to get the records herself. This conduct by Respondent HSIEH was negligence and wilful, wanton disregard for his legal responsibilities.

171.    On or about September 28, 2018 Respondent HSIEH agreed to Defendant Waldorf's request for an earlier Plaintiff's expert reports disclosure of 120 days (ie. May 31, 2019) before trial when the previous agreement was both Defendant and Plaintiff were to have expert disclosure reports in 90 days before trial (ie. June 30, 2019). Respondent HSIEH did not check over the previous pre-trial order, and Defendant Waldorf convinced Respondent HSIEH to allow them to have Claimant's expert reports for an additional 30 days. This information is contained in emails and the Stipulation of Pretrial Deadlines. Claimant and Respondent HSIEH will testify to such at a hearing on this matter. This allowed the Defendant's experts to rebut Claimant's reports as all rebuttals were due 90 days before trial (ie. June 30, 2019). This ensured that Claimant's experts could no longer rebut Defendant Waldorf's expert reports. On or about December 10, 2018 Respondent HSIEH agreed he "messed up" expert exchange dates but wasn't concerned that few medical records were produced by this point. Basic skills a lawyer must have is to be informed on

the case, which Respondent's GREEN and HSIEH lacked throughout their representation. This conduct is negligence by Respondents and constitutes legal malpractice.

172.    On or about October 3, 2018 Defendant Waldorf's blank medical records authorizations were causing problems. Doctors and providers didn't want to produce records without confirmation from Claimant but because she had to sign blank forms per the Judge's verbal direction, she didn't know who was being asked. Other providers thought Defense was her lawyer and turned over records but Claimant didn't even know who was sending what or who wasn't sending the records and where the delays were coming from. This became apparent over time and was caused by Respondent GREEN and HSIEH's failures at the July 20, 2018 Status Conference where Respondent's did not explain what had happened with the Bickerton forged authorizations and the issues it caused with the providers in Canada in 2017. Respondents took no action to alleviate the condition that had been created by their inattention to the medical records discovery. This conduct by Respondents is negligence and breach of contract.

173.    On or about October 10, 2018 Claimant emailed Respondent HSIEH communicating the result of the failure to gather or produce records was causing chaos and delaying and impeding Claimant's case. There were a number of issues with obtaining the records. Defense NaPier requested copies of Claimant's driver's license and Alberta health care card along with creating their own Attachment "A" to blanket providers, which everyone knew would not suffice to get the records because in Canada a person must give informed consent, so it needed to appear that Claimant knew which providers of records she was releasing. Because of the record issues created by Bickerton's forged consents, Alberta Health Services told Claimant she was required to sign one authorization per provider and initial it in her own handwriting. Respondent's GREEN and HSIEH did not attempt to help the situation by even asking Claimant to sign

authorizations for their office so that they could get the records and provide them to Defense. Respondents just abandoned the issue; the result was the loss of the February trial date. Respondent's negligence and breach of contract including their wilful and wanton disregard for the case resulted in disaster for Claimant and she will testify to such at the hearing. Emails indicating this factual allegation will be presented.

174.    On or about October 10, 2018 Defense approached Respondent HSIEH that they also wanted to use Dr. Rossi as their expert when Claimant had already retained him in 2017. Respondent HSIEH agreed but Claimant had to strongly voice her objections and requested Respondent HSIEH to ask Respondent GREEN if he wanted to "share" Claimant's expert with Defendant Waldorf.  This information is contained in emails and Claimant will testify to it at the hearing. Respondent GREEN agreed with Claimant; however, it was apparent that Respondent GREEN failed to supervise co-counsel Respondent HSIEH who was struggling to know basic litigation strategy. Because Respondent HSIEH was agreeable to Defendant's request an argument ensued between he and Claimant since Respondent HSIEH did not want to approach Respondent GREEN. This caused much emotional stress for Claimant as he clearly had failed in knowing how to conduct the case.

175.    On or about October 18, 2018 Respondent HSIEH forgot to produce records which Claimant had sent to him, again not paying attention to what needed to be done on the case. Although Respondent HSIEH repeatedly indicated to Claimant throughout his representation that her case was a damages only case, he made no effort to obtain Claimant's medical and employment records. This is key to the negligence suffered by Claimant at the hands of Respondents and is found in email communications.

176.     On or about October 19, 2018 Defense NaPier had begun accusing Claimant of impeding discovery. Although Respondent HSIEH had e-mails supplied to him from Claimant which proved the Bickerton forgery of authorizations created problems, he choose not to disclose based on attorney-client privilege, until it was much too late in the case to reverse the damage already done by Defense's false allegations of Claimant in the January 2019 Motion to Compel. This conduct is negligence by Respondents.

177.     Although Claimant provided additional information to Respondent HSIEH, on the Shanks family in Los Angeles that were witnesses and were also hit themselves by another umbrella in the same incident as Claimant, Respondent's GREEN and HSIEH made no effort to locate the Shanks until a phone call in May 2019 when the case was about to be dismissed. Respondent HSIEH promised Claimant that he would get statements from these key witnesses, Amanda and Terry Shanks who were also struck by the umbrellas in the same incident and time on January 7, 2015 as Claimant. Even though he did speak with the Shanks in May 2019, he never got their statement. There are emails which refer to this and Claimant will testify to this information. Clearly, Respondent's failed to investigate properly and were negligent in their representation. Claimant and Respondent HSIEH will testify to this allegation.

178.     Although Respondent HSIEH was aware on or about November 26, 2018 that Defense NaPier wasn't paying for Claimant's records until late, or not at all, so they weren't sent to Defense which NaPier eventually blamed Claimant for this later, Respondent HSIEH didn't contradict or do anything to fix the problems created by Defense and Respondents. This was evident throughout the entire representation of Respondent's GREEN, UESUGI and HSIEH. This is negligence and breach of contract and evidence is provided in email communications between Claimant and Respondents and Claimant and Respondent HSIEH will testify to such at the hearing.

179.     Respondents GREEN and HSIEH sent Claimant's medical records RB 001- 550 to Defense counsel without being stamped confidential in accordance with the Stipulated Protective Order. Email communications on December 6, 2018 relay this information. This is negligence and breach of contract.

180.     On or about December 11, 2018 there was confusion over what employment records had been produced. Claimant had already provided her Alberta Health Services employment HR records file to Respondent's many months earlier; however Respondent HSIEH did not straighten this out and it significantly hurt Claimant's credibility in the January 2019 Motion to Compel and February 2019 hearing on the matter. This factual allegation is supported by email communications, the pleadings in the Second Circuit and Claimant will testify to such at the hearing. This is negligence and in breach of contract.

181.     On or about December 17, 2018 Claimant indicated to Respondent HSIEH that there were problems with records from 27 providers, from payment, to no records of Claimant. Unfortunately for Claimant, Respondent's GREEN and HSIEH did nothing to help their client, which is Respondent's responsibility but they just neglected the case. These problems continued in December 2018 with production including refusals to give to Defense but Respondents GREEN and HSIEH wouldn't deal with the issues even though it was about to blow up when Defense NaPier threatened to file a Motion to Compel. Email communications will be provided at the hearing to support this allegation. Respondents GREEN and HSIEH'S conduct is negligence.

182.     On or about December 26, 2018 Respondent HSIEH didn't ask Defendant Waldorf for umbrella incidents more than 3 years before Claimant's January 7, 2015 event when Claimant had already indicated to Respondent HSIEH that the EMT, Merika Hunter had told her on the way

to the hospital after she was struck by the umbrella, that people were being regularly hit by those umbrellas. This conduct by Respondent HSIEH is negligence.

183.    Respondent HSIEH could have filed a Motion Designating the case as complex litigation to grant Claimant more time, but he didn't, again negligence.

184.    Respondent HSIEH wanted Claimant to attend Hawaii in January 2019 for witness depositions, umbrella inspection at Grand Wailea Resort and doctor visits to see her experts. Respondent HSIEH wanted to progress the sexual relationship with Claimant. Having Claimant attend the depositions was detrimental as Defendant Waldorf argued that Claimant wasn't really injured if she was involved in the litigation. Respondent HSIEH was negligent in his representation of Claimant and it caused emotional distress for Claimant.

185.    Since Respondent HSIEH left Dr. Rossi's reassessment until May 2019 and Claimant's expert reports were now due approximately May 31, 2019, she was unable to see Dr. Rossi in person, but only had a telephone interview with him in May 2019. This affected the opinion of Dr. Rossi in determining Claimant's spinal injuries, nerve damage, neurological damages, etc. This was negligence by Respondents and constitutes legal malpractice.

186.    In the January 24, 2019 deposition of GWR employee Ernel Arceo stated the hotels umbrellas blew into people once a week, then changed his statement in the deposition to once a month, but Respondent HSIEH didn't follow up on this line of questioning. Further errors occurred by Respondent HSIEH in other depositions of GWR employees as well, constituting negligence.

187.    Although Respondent HSIEH was aware of the situation and had the contact information of Judy Tomazewski, AHS management who sent an incorrect letter to Defense Counsel on January 30, 2019, he made no attempt to fix the errors presented to the Court by Defense counsel which led to the end of Claimant's discovery at the February 13, 2019 hearing.

This information is contained in a February 12, 2019 email between Claimant and AHS which Respondent HSIEH is bcc'd on. Respondent HSIEH'S conduct was negligent and breached the contract he had with Claimant.

188.    The February 13, 2019 hearing on the Motion to Compel Respondent HSIEH stated on the record, as per the transcripts, that it was his fault that Defense didn't have a fulsome copy of Claimant's records but the Judge was so angry that he severely sanctioned Claimant, since Defense made the same claims that Claimant had interfered in discovery in the Status Conference in July 2018. Because Respondent's didn't correct the errors at that time, it resulted in no more discovery for Claimant and she was barred from all her significant wage loss, loss of pension, loss of benefits and future earning capacity totaling over $2 million dollars. This was significant. Respondent HSIEH could have told the Judge that Claimant had supplied most of her employment records, as they were already retrieved in their entirety from the University of Calgary, the Government of Alberta and 1 of 3 parts from AHS. Claimant was only missing 2 of the 3 parts which she had been requesting AHS to send for months, but Respondent HSIEH never disclosed this to the Judge, which resulted in disastrous results for Claimant as she was severely sanctioned even though she didn't have a hand in the discovery issues. This conduct by Respondent HSIEH was negligence.

189.    Respondent HSIEH in his oral argument at the February 13, 2019 hearing stated that the Judge could sign subpoenas to get the records, so he was clearly aware of this possibility of obtaining a US subpoena which could be sent to an Alberta law firm to execute and request Canadian subpoena's if needed. But Respondent HSIEH did not take any initiative upon himself to conduct any discovery on behalf of his client, which is his job. This proof is held in the February 13, 2019 hearing transcripts and constitutes the legal malpractice claim of negligence.

190.     Respondent HSIEH did not mention at the February 13, 2019 hearing how Defendant Waldorf's legal assistant, Sandra Cole was forging authorizations in Claimant's name on AHS authorizations at least in August 2018 as Claimant provided a copy to Respondents via email, at that time. Coles conduct contributed to the discovery problems, but Respondent's didn't present this information as part of their oral argument as per the transcripts of the hearing which was significantly negligent on Respondent HSIEH'S part.

191.     In a late February 2019 telephone call, noted between Respondent HSIEH and Claimant, he requested she rent a condo on the big island for them to celebrate at after her mediation was finished on March 15, 2019. Claimant did such, wasting her time and money as shortly thereafter on or about February 28, 2019 the romantic relationship ended as Claimant and Respondent HSIEH were arguing frequently since the Motion to Compel filed on January 10, 2019. Respondent HSIEH and Claimant now argued frequently because of the personal relationship which caused emotional distress for Claimant. Respondent HSIEH was negligent in pursuing and coercing his client into a romantic relationship with him and is confirmed in text messages between the two. Claimant will testify to such at the hearing. Because Respondent HSIEH also lied to Claimant to that dating his clients was not impermissible, to entice her into a relationship with him, this also constitutes negligent misrepresentation.

192.     On or about March 13, 2019, again late, Respondents GREEN and HSIEH filed all Claimant's expert reports in the confidential mediation statement and provided those to Defendant Waldorf although the deadline for disclosure was June 1, 2019. This hindered Claimant as Defendant had no intent on settling the case and only offered Claimant $125 000 dollars when the confidential mediation demand was for $8.25 million dollars due to the extensive injuries of Claimant. Respondent's conduct was negligent and a breach of duty of care to Claimant.

193.    On or about March 19, 2019 Defendant Waldorf filed an Order on the Motion to Compel, which was incorrect. It stated that only Claimant could no longer obtain and use her discovery to prove her damages; however, this was not what the Court directed in the February 13, 2019 hearing on the Motion as the Judge applied it to both parties by stating it was a "double edged sword". Respondent's GREEN and HSIEH didn't bother to correct the error or file a proposed order with the Court with the correct ruling. When Claimant discovered the error, she immediately requested Respondent HSIEH, via email and telephone to correct the error and notify the Court. Respondent HSIEH told Claimant that it was better not to submit anything opposing the incorrect order as it would appear that he was in agreement with the ruling, and instead he would file a Motion for Reconsideration. Respondents again failed to act to protect client. Claimant believes that this was done with intentional negligence by Respondent HSIEH to disadvantage her case further since the romantic relationship deteriorated and the arguing ensued and will testify to such. Respondent HSIEH had a grudge against Claimant because of the romantic relationships' failure. This conduct by Respondent HSIEH was negligence, breach of contract and negligent misrepresentation.

194.    On or about March 27, 2019 Respondent HSIEH did not respond to Defense NaPier's false claims in an email, although Claimant notified Respondent of such. Examples of some of Napier's misstatements: They don't have records that she is aware of, prior to the time periods requested; Plaintiff revoked authorizations in Sept 2017 (Not Bickerton's firms forged authorizations); Defense could continue to obtain records after Feb 13 and use them at trial; Only Plaintiff couldn't obtain further records nor use them at trial; and Defense didn't deny that they were withholding plaintiff's records (Defense lead Judge to believe these accusations are the case). Respondents made no effort to the Court to correct the false information of Defendant Waldorf's

Counsel and the record reflects such. This is negligence on the part of Respondents GREEN and HSIEH.

195.    On or about April 4, 2019 Defense NaPier stated that Claimant and Respondent HSIEH were lying in the Motion for Reconsideration. Respondent made no attempt to communicate with Defendant's to iron out the misunderstandings or correct the falsity. This was negligence by Respondent HSIEH and total disregard for his legal obligations to his client.

196.    On or about April 9, 2019 Respondent HSIEH sent Claimant a draft Memorandum in Opposition to the Motion to Compel filled with factual errors, which Claimant send back to him by email with corrections. Respondent HSIEH didn't make any of the corrections and instead filed the incorrect Memorandum in Opposition with the Court. This further hurt Claimant's credibility with Defendant and the Judge. This is negligence on the part of Respondents and breaches the contract.

197.    On or about April 17, 2019 Respondent's GREEN and HSIEH scrambled on IMEs, deposition dates and production of records but got little done, agreed to dates and places which were unduly burdensome for Claimant and created further financial hardship for her. This allegation is recorded in email communications. This is negligence and breach of contract by Respondents.

198.    On or about April 17, 2019 Claimant emailed Respondent HSIEH a long email which summarized her concerns that she had with the Stipulation he signed without talking to Claimant about it, and issues with why he hadn't booked her experts for future IME dates. Claimant requested that Dr. Rossi physically examine her to document her nerve damage which was the purpose of her attending his office on January 29, 2019, but Respondents GREEN and HSIEH kept forgetting to pay for and schedule Dr. Rossi. This was negligence because Claimant made many

trips to Hawaii in early 2019 and could have seen Dr. Rossi in person, but Respondents waited until it was too late and Dr. Rossi left on vacation for the month of May 2019 to New York.

199.     Further issues on April 18, 2019 with Dr. Rossi exam, as Claimant's expert, because Respondent GREEN still hadn't provided payment to retain Dr. Rossi. Again, failure to perform ordinary tasks and negligence by Respondents.

200.     Respondent HSIEH cancelled Dr. Hall's June 1, 2019 reassessment for the purposes of submitting a rebuttal report to Waldorf's expert reports. Respondent HSIEH lied to Dr. Hall and Claimant that she need not be reassessed. This was done by a telephone call between Respondent HSIEH and Dr. Hall. An email dated April 18 and 30, 2019 confirms this call and Respondent HSIEH's intent to weaken Claimant's case by cancelling the need for her to be reassessed. This is in opposition to what Claimant requested of her former attorneys, but Respondent HSIEH would not cooperate and provide competent counsel, breaching contract. This negligent misrepresentation was likely due to the breakup of the romantic relationship between he and Claimant earlier in 2019.

201.     Late April 2019 exchange of Rule 68 offers. Because of the damaged relationship between Claimant and Respondent HSIEH and the poor shape the case was in with the lack of discovery, Respondent HSIEH wanted to lowball Claimant at $2.5M to get rid of her case. Respondent HSIEH pressured Claimant into agreeing to this amount and every other amount, which was negligent.

202.     In violation of the Court's March 2019 Order, Respondents GREEN and HSIEH continued to provide Claimant's experts with copies of her records for their review and assessment of Claimant. Claimant, Respondent HSIEH and Claimant's experts will testify to this allegation. This was negligence by Respondents.

203.     At the May 8, 2019 hearing Judge Cahill stated that there was evidence of Claimant's interference with the AHS records; however, Respondent HSIEH again had an opportunity to explain to the Court about the third party issue with Mark Beselt who was not a party to the lawsuit and who had been separated from Claimant shortly after the romantic relationship began between Respondent HSIEH and Claimant in fall 2018, but failed to. Respondent HSIEH did not inform the Court when he could have easily done so. This negligence constitutes legal malpractice as it significantly harmed Claimant's case.

204.     Respondent HSIEH also lied to the Court in the May 8, 2019 hearing that he told Claimant to go and get all her records. This was done on Claimants own initiative as per the April 15, 2019 audio recorded call by Claimant and Respondent HSIEH and has been provided to Respondents. This was negligent misrepresentation and negligence as it made Claimant look poorly to her Judge.

205.     After another poor hearing on May 8, 2019 the settlement offer now that was offered by Defendant was $175 000. Respondents GREEN and HSIEH in a telephone conversation later that day told Claimant to make an offer closer to $750 000. Respondent GREEN stated to Claimant not to go lower than $750 000 or he would take the case to trial. This was a false statement by Respondent GREEN. Respondents never explained the lien issue to Claimant and she reluctantly agreed to a Rule 68 Offer of $900 000 on the advice of her attorneys, which Defendant rejected because they knew Claimant's case had been destroyed and the Judge didn't appear to be Reconsidering the Motion to allow discovery. Respondent HSIEH never addressed this at the hearings on this Motion or objected in any way. This conduct by Respondents was negligent and a breach of contract.

206.     Respondent HSIEH stated in the May 8, 2019 hearing on the Motion for Reconsideration that he provided many of Claimant's experts, such as Dr. Hall medical records in contravention of the March 13, 2019 Order from the Court, which Judge Cahill then denied Claimant's Motion for Reconsideration and ruled that Claimant's experts were to come to a 104 evidentiary hearing before the trial to see if they would be able to testify on behalf of Claimant's damages. In many instances Respondent HSIEH did not provide the experts with records that he could have. Judge Cahill also stated that if one piece of paper was given to the experts in violation of the March 13, 2019 Order, he would dismiss their testimony. Therefore, Claimant would not have any of her experts to testify for her at trial because Respondent HSIEH did provide at least some of Claimant's medical records to her experts in violation of the Order. This information is held in the transcripts of the May 8, 2019 hearing, email communications and Claimant and her experts will testify to it. This conduct by Respondent HSIEH is negligence and constitutes legal malpractice.

207.     Respondent HSIEH told Claimant in May 2019 that it was possible for Defense to file a Motion for summary judgment on her case so she needed to settle quickly given the condition of her case with the lack of discovery. Claimant later discovered that there in fact was a Motion for Summary Judgement on her case docket in May 2019, but was not told this directly by Respondents but only used as a hypothetical to scare Claimant into settling.  This was another failure to keep Claimant properly informed and also to hide what was going on. This allegation is documented in emails, on pleadings in the Second Circuit case and discussed between Claimant and Respondent HSIEH, which Claimant will testify to. This is a negligence legal claim and breaches contract and professional duties.

208. On or about May 13, 2019, Claimant, read the May 8, 2019 transcripts where the Judge stated, "There is some proof that client interfered with the process" (pg 20, line 1). Respondent HSIEH could have provided the emails Claimant had exonerating her or explained to the Judge that Claimant's employer AHS had made a mistake as he was aware of all of it since the fall of 2018, but he didn't and hence allowed the Judge to believe something that was untrue which led to significant and severe sanctions of Claimant's case. This is documented in the record and email communications between Respondent HSIEH and Claimant. Respondent HSIEH was negligent in his representation of Claimant and breached contract.

209. Claimant worked diligently on her own, to bring in thousands of pages of medical records between March and May 2019. On or about May 17, 2019 there were significant improper bates stamping by Respondents GREEN and HSIEH'S legal assistants which caused more problems for Claimant. Many of the records Claimant was emailing to Respondents were not getting bates stamped or sent to Defense. Defense made claims against Claimant that she was only bates stamping the same records and faking how many records produced or that the employer records were not produced and that they weren't receiving unredacted records. This error by Respondents lead to disaster at the next hearing of May 24, 2019 on the Motion for Reconsideration. Claimant was the only one trying to obtain and produce records and Respondents GREEN and HSIEH couldn't even have them properly stamped and produced to Defense. This conduct is a negligence legal claim.

210. At the May 24, 2019 further hearing on the Motion for Reconsideration, which Respondent GREEN again failed to show up for, Respondent HSIEH failed to make key points which are recorded in the hearing transcript:

a. Respondent HSIEH violated the Order by giving Claimant's experts her records obtained after the February 13, 2019 hearing;

b. Respondent HSIEH did not produce the unredacted records of Bajwa, AHS and Eagle (emailed to him on May 20 which he promised on May 16 and 22, he would get to defense before the hearing);

c. Respondent HSIEH never produced the emails and documents sent to him by Claimant and Mr. Beselt to state that AHS had erred with the letter they produced to Defense;

d. Respondent HSIEH stated he would file a writ of mandamus- but when Claimant asked him afterwards he said no, it could be appealed after trial, and Claimant should contact Peter Esser.

e. Respondent HSEIH misled the Court in a number of places, particularly when he stated that he went over the transcripts with Claimant and insinuated that somehow the 3 providers that had redacted her records was Claimant's fault and/or she had control over these providers and their actions. This conduct by Respondent HSIEH is negligence and constitutes legal malpractice.

At the May 24, 2019 hearing Respondent HSIEH stated, "But if the Court's inclined to do something about that, please don't take it out on my client. If the Court feels that our response in producing these documents and the list of doctors in lieu of a formal response to the interrogatories, please sanction me" (pg. 30, lines 11-15). Because Respondent HSIEH ignored all of Claimant's requests to assist her to Answer Interrogatories, Defense complained to the Judge about this too. Claimant's Motion for Reconsideration was denied at the May 24, 2019 hearing which Respondent HSIEH then shifted the blame on Claimant for his lack of skills and negligent representation.

211.    Due to Respondent's incompetence this led to another Order by Judge Cahill, which limited Claimant's experts from viewing her records produced before their initial report and after February 13, 2019 for any treatment she had prior to or after this time frame. Hence, plaintiff's

expert testimony was significantly hindered. Respondents were negligent in their representation of Claimant.

212.    Respondents GREEN and HSIEH often had significant errors on the facts of the case which they filed with the court in their motions, even though Claimant emailed them their errors. May 21, 2019 Reply Memorandum to the Motion for Reconsideration is one particularly significant example and Claimant will testify to such. Respondents were negligent in their representation, violated their professional responsibilities and duties to their client.

213.    On May 24, 2019 Claimant again requested Respondent HSIEH to file an appeal or a writ of mandamus, but Respondent HSIEH denied this request and told Claimant it could be done after the trial. Claimant will testify to such at the hearing. Respondents failed to take direction from their client, breached the contract and were negligent in their representation.

214.    Claimant, repeatedly, during Respondent's representation, indicated that she would need accommodations for her IME's and deposition due to her injuries. Claimant provided medical documentation to Respondent HSIEH and his legal assistant via email on or about May 21, 2019 which specified the accommodations required, attached hereto as Exhibit "N". However, what Claimant discovered on May 26, 2019, via email, was that Respondent HSISH never told Defense NaPier about the accommodations. Defense only accidentally discovered the medical documentation Friday afternoon on May 24, 2019 in the bates stamped records provided by Respondents to Defense Counsel after the Judge's final ruling at Court that morning which denied the Motion for Reconsideration. This was detrimental as Defense would not allow Claimant any of the needed accommodations at her deposition on May 28, 2019 or her IME's that were scheduled back to back the last week of May 2019. Claimant was very symptomatic and it caused

her harm during Defense's interrogations at her deposition which negatively impacted her case. This conduct by Respondents was negligence and breached the contract.

215. Claimant had been so upset the night before her May 28, 2019 deposition due to the altercation with Respondent HSIEH earlier that day that she slept poorly and the deposition turned into a disaster with such little prep, no necessary medical accommodations and no help in the deposition from Respondent HSIEH. During the long deposition Claimant was highly symptomatic, vomiting during the lunch break, cognitively fatigued, dizzy, nausea, complained of an intense headache, etc., and she repeatedly asked Respondent HSIEH to stop the deposition as she could hardly answer the questions, however, Respondent HSIEH told her she had to keep going regardless. Closer to the six hour mark, Defense questioned Claimant around the records retrieval. It was at this point that Respondent HSIEH took Claimant outside and told her what to say or else. When Claimant went back in, because she didn't want to say what he told her to, Respondent Hsieh actually testified against Claimant about things that were untrue- such topics being the records held in the files of Dr. Natho and Dr. Cooper and request for amendments. Claimant's deposition transcripts and text messages to Mark Beselt submitted to the Second Circuit in the Supplemental Declaration filed February 16, 2021 affirms this allegation. This conduct by Respondent HSIEH is intentional negligence, breaches the contract and violates his duty to represent his client's best interests. This conduct was done intentionally by Respondent HSIEH and constitutes legal malpractice which Claimant will testify to at the hearing.

216. Of significance was the expert report disclosure deadline of May 31, 2019 in which all of Claimant's expert reports needed to be disclosed. A key witness, Dr. Rossi's expert report was late. Dr. Rossi had to reassess Claimant over the phone, due to Respondent's GREEN and HSIEH not signing and paying him his retainer so that Claimant could be reassessed in person the

many times she was in Hawaii in 2019. Unfortunately for Claimant, Respondent's did not notify him when his report was due and therefore, it was not submitted until approximately June 6, 2019, which Defense then filed to have his expert testimony and report dismissed with the Court because it was late. This failure to meet standard of care by Respondent's was frequent during their representation of Claimant BESELT and Mark Beselt. Respondent's conduct was negligent and breached contract.

217.    Respondent's GREEN and HSIEH submitted the work product of Claimant's experts in Plaintiff Ronda Beselt's Expert Disclosure and Reports on May 31, 2019 which wasn't necessary or even requested by Defendant Waldorf, for the sole purpose of harming Claimant's case and discrediting her experts to assist opposing counsel. Proof of this is held in Plaintiff's Expert Disclosure submitted May 31, 2019 and to Claimant BESELT's Disclosure of Expert Witnesses submitted to Respondent's on September 1, 2021. This was intentional negligence by Respondent HSIEH to harm Claimant's case.

218.    In accordance with the pretrial order in the Beselt, et. al., vs. Waldorf=Astoria Management case, Respondent's GREEN and HSIEH were to file a final naming of witnesses on or about May 31, 2019 but didn't ever file this pleading. Respondents did not even notify Claimant of such. Claimant found this information out from an email sent to her by Defense Counsel NaPier on or about July 20, 2019 after Respondent's Motion to Withdraw as Counsel for Claimant was granted by the Court. This conduct by Respondents was negligence and breached their contract with Claimant.

219.    On or about May 31, 2019 after Claimant had another IME with Defense hired Dr. Bussey, who did a second deposition of Claimant, which she mentioned to Respondent HSIEH, who didn't care, she attended the office of Respondents. In this May 31, 2019 audio recorded

meeting Respondent's GREEN and HSIEH attempted to convince Claimant that her case was worth nothing, that she wasn't actually injured, and that she suddenly was an unbelievable witness. Transcripts were provided to all Respondents and Claimant will testify to this allegation. Respondent GREEN stated Claimant should settle asap and accused her of hurting her own case by how she answered the questions in her deposition. Respondent GREEN stated that Claimant's case was now only worth $250 000 to $400 000. Claimant did not believe Respondents but was scared to speak up as Respondent GREEN's withdrawal threat from the May 22, 2019 call still stuck with her. Respondent GREEN stated $250 000 is good. A coercive settlement in this situation violates fiduciary and duties of loyalty. Respondent GREEN had lied to his client, Respondent HSIEH had agreed to the lie to Claimant to entice her to settle for half of her expenses. This was negligent misrepresentation that Claimant later relieved upon as pro se plaintiff. It also breached contract.

220.     On or about May 31, 2019, Respondent HSIEH took further records from Claimant for the purposes of providing copies to Defense even though the March 2019 Order stated no further discovery and the Motion for Reconsideration was denied at the May 24, 2019 hearing. Claimant complied and continued to obtain and provide records to Defense up until discovery cut off of August 1, 2019 as that was what Respondent HSIEH had told her to do. Claimant couldn't understand why Respondent HSIEH instructed her to continue to violate the Order, but she did as she was told. Email communications and the audio recorded transcripts will affirm this allegation along with Claimant's testimony. This conduct by Respondent HSIEH was intentional negligent misrepresentation to harm Claimant's case.

221.     In early June 2019, Claimant notified Respondent HSIEH that she suspected that her and her family were being followed by a private investigator in Calgary, Alberta. Respondent

HSIEH emailed Claimant that it didn't matter and did nothing to stop it, including contacting Defense and inquiring if it was true. Respondent HSIEH was negligence in his representation.

222.    On or about June 12, 2019 Respondent's drafted a motion to withdraw claiming irreconcilable differences and many other offenses, falsely accusing Claimant which they submitted to Judge Cahill in the Second Circuit case. These things were untrue, breached the contract and constitute negligent misrepresentation.

223.    Respondent HSIEH with less than 2 weeks notice, agreed to Defenses request to cancel Mark Beselt's deposition scheduled for late June 2019; however, Respondent HSIEH didn't indicate this to Claimant and the trip from Canada to Hawaii could not be cancelled on short notice. Claimant asked Respondents if Defense would be compensating her and Mark Beselt for the costs of a family trip to Hawaii, but Respondent HSIEH just stated, "No." Respondent HSIEH justified Defense's actions. This was a significant burden placed on Claimant for no reason and is documented in the email communications between Respondents and Claimant. This is negligence by Respondents.

224.    Respondents HSIEH and GREEN, after Judge Cahill denied Plaintiff's Motion for Reconsideration at the May 24, 2019 hearing continued to provide Defendant Waldorf's counsel with Claimant's medical records when the March 2019 Order stated no more discovery. They did this into June 2019 which wasn't necessary. Defense Counsel then used these medical records, which they were not entitled to have, to file a Motion for Sanctions against Plaintiff on July 1, 2019. This information is contained in email communications between Claimant and Respondent HSIEH and the motions in the Beselt v. Waldorf=Astoria Management LLC case filed in the 2nd Circuit. This is negligence on the part of Respondent HSIEH.

225.     Because Respondents provided medical records to Claimant's experts, in contravention of the March 2019 order, Defense filed Motions to Dismiss all of Claimant's experts in June and July 2019. At the July 19, 2019 hearing, Judge Cahill stated that if any of Claimant's experts got even one page of medical records in contravention of the now, two orders, that these experts would not be allowed to testify at trial and held this issue over to 104 evidentiary hearings. Claimant knew that Respondent's had taken out all her expert testimony for trial but would still be required to pay for all her experts to appear the week before trial- to only then have them disqualified. This conduct by Respondents constitutes negligence thus legal malpractice.

226.     On or about June 27, 2019, Mr. Hunter emailed Claimant a settlement offer and Claimant forwarded it to Respondents immediately with a new settlement offer from Defendant in the amount of $200 000. Because of Respondent's negligence, and the deterioration of Claimant's case, Defense would not make any reasonable offers.

227.     On or about June 28, 2019 Claimant received an email from Respondent HSIEH that Defense Counsel Calvin Young informed him that Claimant had been in contact with Mr. Hunter for two weeks, and that Claimant had told Mr. Hunter not to communicate with Respondents. This was completely false. But it was effective, as Respondent GREEN had indicated that he was reconsidering his withdrawal depending on the pending settlement conference. Respondent GREEN was furious when he heard these lies by Respondent HSIEH and/or Calvin Young. Respondent GREEN was no longer reconsidering. This appeared again to be intentional negligent misrepresentation by Respondent HSIEH.

228.     Respondent HSIEH on July 11, 2019, as per his email, contacted Defense Counsel and requested a settlement for $320 000 when Claimant revoked his authority to do such and he admitted by email on this date that he knew this before he contacted Calvin Young, Defense

Counsel and made this offer to settle on Claimant's behalf although she never agreed to it. This was intentional negligence by Respondent HSIEH.

229.     On or about July 11, 2019 Respondent HSIEH refused to give Claimant Defense's expert reports which were disclosed on or about June 30, 2019. Claimant needed to evaluate settlement offer but couldn't because Respondent's were hiding the expert reports, pleadings and filings on the case including communications on settlement with Defense, from Claimant. This failure in communication was intentional negligence by Respondent HSIEH and breached the contract.

230.     On the July 19, 2019 in camera withdrawal hearing and motions to strike all experts, Respondent GREEN didn't attend again. Respondent HSIEH again didn't notify Judge about the 3rd party redactions not being Claimant's fault or done per her request. Claimant was left to notify Judge at the *in camera* Motion to Withdraw that it was Mark Beselt who had requested his information to be removed and that Claimant and Mr. Beselt were separated since fall of 2018. Respondent HSIEH lied to Judge Cahill that Claimant had new Counsel- Jim Krueger, who Respondent HSIEH knew wasn't true and Claimant showed proof of such to the Judge; however, the Judge accepted Respondent HSIEH'S lies and allowed Respondent's to withdraw only 2 months before trial. This significantly hindered Claimant as she could not find competent legal counsel to take her badly destroyed case with a trial so close. This conduct by Respondent HSIEH is negligent misrepresentation and breaches the contract.

231.     On or about July 20, 2019 Claimant asked Defense the status of offer now and Mr. Hunter indicated they were considering dropping it to $80 000. But Mr. Hunter got Defendant to agree keep it at $160 000. It was a $40 000 drop in offer from late June 2019 offer made by Defendant Waldorf. This is documented in emails between Claimant and Mr. Hunter in which

Claimant will testify to. Claimant felt she had to take anything at this point because of Respondent's obvious negligence of their representation.

232.     End of July 2019 lots of back and forth on records where Respondent HSIEH was very uncooperative. Respondent HSIEH made it as difficult as possible for Claimant to find new counsel, or represent herself, as he was going behind her back and communicating with Defense, her experts and further intentionally hindering her efforts. Email communications and Claimant's testimony support this allegation. This further intentional infliction by Respondent HSIEH caused Claimant emotional distress, was not necessary and is legal malpractice.

233.     Although, Respondent HSIEH attended the July 19, 2019 hearing on the Motion to Withdraw, and he was no longer Claimant's attorney, he willingly signed Defense's Order Dismissing Claimant's wage loss, future earning capacity on or about July 28, 2019 when he no longer represented Claimant. Respondent HSIEH, in late July 2019, early August 2019, after he no longer represented Claimant, also continued to contact Claimant's experts by phone for the purposes of jeopardizing her experts from testifying on her behalf. These acts were willful, wanton and reckless with intentional negligence motives.

234.     On or about July 28, 2019 Respondent GREEN submitted a proposed Order with the Court which accused Claimant of all kinds of findings of poor conduct which Claimant disagreed with and Respondent's knew were false claims. Claimant wrote a letter to the Judge and asked him to sign the proposed Order that she had sent to him, as the Judge did not rule on the reasons nor agree with what Respondent's had asserted into their proposed order. This was negligent misrepresentation by Respondent's GREEN and HSIEH.

235.     Because of the negligence and malpractice of Respondents GREEN, UESUGI and HSIEH, Claimant, now pro se, was forced to take a settlement on or about August 5-6, 2019, in

the amount of $250 000 as that was all Mr. Hunter could get Defendant Waldorf to agree to. This conduct by Respondents constitutes breach of contract by Respondent's, negligence, and malpractice as the damage they caused Claimant significantly harmed her ability to take the case to trial or obtain a fair settlement.

236. Claimant wanted to make sure that she could sue Respondent's as she believed that they did not represent her well and she requested the assistance of John Rapp to read over the settlement agreement provided by Defense to add the proper language into the agreement to make sure. Since Respondent's GREEN and HSIEH never read over the settlement agreement with Claimant when they represented her, she was not aware of or understood the contract. Mr. Rapp was never retained by Claimant and will testify to that. Claimant was coerced, under duress by Waldorf to settle for an amount that was only half of her expenses and didn't include any compensation for the liens that were outstanding which Respondent's never informed her of the payment on that issue. Respondents were negligent and breached the contract by not informing their client properly.

237. On or about August 12, 2019 the Motion to Withdraw was granted and Respondent's false allegations of Claimant were crossed out on the Order by Judge Cahill. Respondents were intentionally negligent in their conduct to Claimant with their proposed order.

238. Respondent's GREEN and HSIEH had been representing Claimant since early March 2018, however, they didn't educate themselves on Claimant's case and the filings and pleadings filed in the case prior to their representation. In October 2018 Claimant's trial date was still set for February 19, 2019. Respondent HSIEH agreed to Defense Counsel's Stipulation to Amend Certain Pretrial Deadlines from the previous filed Pretrial Order in February 2018 which significantly advantaged Defense and disadvantaged Claimant. The agreed upon February 2018

filed pretrial order stated that both Defendant's and Plaintiff's expert disclosures, written reports and Final Naming of Witnesses was to be done 120 days prior to trial. Respondent Hsieh, on October 22, 2018, agreed to Stipulate that Claimant's disclosure was to be done 120 days before trial and Defendant's disclosure 90 days before trial which took out Claimant's ability to file rebuttal reports 90 days before trial because her experts didn't have time to reassess her after Defendant's expert reports were submitted. In fact, one of her experts, Dr. Hall was scheduled to reassess Claimant on June 1, 2019; however, on or about April 18, 2019 Respondent HSIEH in a telephone call and email communications cancelled the reassessment of Claimant against her request. The facts supporting these allegations are held in the record, email communications and Claimant will testify to such. All of this conduct by Respondents were negligent and/or breached their contract with Claimant.

239. Although Claimant did not break the confidential settlement agreement amount to anyone, on or about December 12, 2019 Respondent GREEN requested from Claimant, in a demand letter, $75 000 in fees and $60 000 in expenses even though amount was confidential. Respondents will not provide how they came to know the final settlement amount but Respondents negligently misrepresented to the court (2nd Circuit) that they surmised the amount. This information is in the record in the Second Circuit case.

240. As a direct and proximate result of Respondent's wrongdoing, violations of professional competency to represent their client, numerous errors' during their representation, and incompetent representation, Claimant suffered, and continues to suffer, damages, and is therefore entitled to recover any and all lawful "Waldorf damages" and further damages by Respondent's representation "Respondents damages" in such amounts as to be shown at a trial or hearing thereof.

## COUNT III

### (FRAUDULENT MISREPRESENTATION- Attorney lien fraud)

241.     Claimant restates the allegations contained in the preceding paragraphs of this Statement of Claims and incorporate those paragraphs by reference, as if fully set forth herein.

242.     Respondents made the following representations with knowledge of their falsity (or without knowledge of their truth).

243.     The alleged representations by Respondents were false.

244.     Claimant suffered damages as a result of Respondents misrepresentations.

245.     Respondents GREEN and HSIEH paid Claimants expert Dr. McCrodan in US dollars when his bill was in Canadian dollars in late June 2019. This overpayment is several hundreds of dollars which Respondents would not correct but charged Claimant for their error in their many demands for payment of fees and costs. There are numerous charges that Respondents have never shown or explained their charges although Claimant has requested such by emails in December 2019 and January 2020.

246.     On or about June 18, 2019 Respondent's wanted 1/3 of $175 000 plus $45 000 in expenses although they were the reason that Claimant had suffered and shouldn't be compensated at all. This demand by Respondents is attorney lien fraud as they knew they were not entitled to Claimant's award since they withdrew prior to her settlement and would be hard pressed to even obtain a quantum meruit on the case given their negligence and breaches of contract constituting legal malpractice.

247. Claimant received notice from Respondent GREEN on June 6, 2019 that Respondents were no longer representing her and a Motion to Withdraw as Counsel was filed with the Court on June 12, 2019 which was riddled with false accusations to discredit Claimant to her Judge in her upcoming September 2019 bench trial. At this point, Respondent's had very little to no contact or communications with Claimant and the last settlement offer from Waldorf was at $175 000. Claimant, on her own accord and assistance from mediator Keith Hunter on June 28, 2019 was offered $200 000 by Waldorf as Respondent's, although still attorneys of record, were no longer providing any representation to Claimant. After Respondent's GREEN and HSIEH lied to Judge Cahill to allow them to withdraw as Claimant's counsel in the July 19, 2019 hearing, Waldorf quickly dropped their offer of settlement to $160 000 on July 20, 2019. Claimant as pro se Plaintiff was able to obtain, a final settlement of $250 000 even though her case was valued at $8.25 million plus punitive damages by Respondent's only a few months earlier. This is due to Respondent's negligence and malpractice during their representation of Claimant. However, in Respondent GREEN's attorney lien filed July 25, 2019, he demanded his full contingency fee of 33.3% not on the $175 000 settlement offer while Claimant was still represented by him, but on the $250 000 that Claimant obtained several weeks later when Respondent's no longer represented her. This is also what Respondents have demanded in this arbitration and is fraudulent in nature. Claimant was forced, under duress to accept half of her expenses for her claims against Waldorf=Astoria Management due to Respondent's negligence during their representation of Claimant because her case was so badly damaged that it could not be taken to trial. Respondent's fees should be based on quantum meruit. Since Respondents completely destroyed Claimant's ability to obtain a fair and reasonable settlement offer, they should not be able to receive any amount from Claimant's efforts and meager settlement with Waldorf. This information is

contained in email communications between Respondents and Claimant and Respondent's Attorney Lien filed July 25, 2019.

248.     At the July 19, 2019 Motion to Withdraw, the Judge ordered that Respondents were to provide a copy of all the records and a copy of Claimant's complete file for Claimant, at their expense, within 10 days so that Claimant could attempt to find new Counsel. Respondents would not provide a complete file to Claimant and this constitutes an attorney lien fraud claim.

249.     Respondent's quicky filed a lien on July 22, 2019. This was the quickest Claimant had ever seen Respondent's work and, in this lien, it included costs that were not associated to Claimant's case and there were overcharges as well. This is attorney lien fraudulent conduct.

250.     Claimant received a copy of 12 discs from Respondents GREEN and HSIEH by FedEx on August 2, 2019 which were missing many of the documents Claimant needed to find new counsel. Many pleadings were missing and only the certificate of service(s) was provided. Claimant requested that Respondents send out a new copy with all the documents asap. This is attorney lien fraud because they knowingly presented false declarations that they had supplied a complete file to Claimant.

251.     On or about August 2, 2019 Respondent HSIEH again refused to send full copies of filed motions, pleadings, and a fulsome copy of Claimant's file to her but made a big deal about the delivery of a paper copy to be delivered to John Rapp as Claimant had no one else to store the six bankers boxes of material. This conduct by Respondents was negligent misrepresentation, constituting lien fraud which violated their own order and agreement with the court.

252.     It was later discovered that Respondents GREEN and HSIEH did in fact, place the costs for providing a copy of Claimant's file onto Claimant's summary of costs owing to Respondent's, which was in violation of the Court's order. Respondent's GREEN and HSIEH, in

contravention of the August 2019 Order they filed with the Court when they were granted their Motion to Withdraw as Counsel for Claimant, charged Claimant for the costs of obtaining and delivering her (incomplete) file to her by July 29, 2019, which was late and not sent out until August 1, 2019. The Judge ruled at the July 19, 2019 hearing that Respondent's had to bear the cost of getting Claimant her complete file; however, according to their most recent updated account summary of costs filed in their Motion to Enforce Attorney's lien on February 1, 2021 with the 2nd Circuit Waldorf civil action, they have continued to demand payment from Claimant and requested from the Court payment be given to them for these costs constituting lien fraud and violation of the Judge's signed Order on August 12, 2019.

253.     On or about December 8, 2020 Judge Cahill dismissed the case due to inactivity. Notice was provided to Respondent's as they were still attorney of record as per the Second Circuit, although they no longer represented Claimant. Respondent's GREEN and HSIEH, on or about December 17, 2020 filed a Motion to Set Aside Order of Dismissal requesting time to file a Motion to Enforce Attorney's Lien filed July 25, 2019 (Motion to Collect). The Court granted their Motion for more time until February 1, 2021. Respondent's signed a certificate of service which stated that they had served a copy of Respondent's December 17, 2020 Motion requesting more time, on Claimant. Respondent's filed this information in Respondent GREEN'S February 1, 2021 Motion to Enforce Attorney's Lien, attached hereto as Exhibit "O".  This information presented to the Court by Respondent's is a lie. Claimant only just happened to check hoohiki on January 29, 2021 and found out what had happened in her case, thus quickly filed a Motion to Set Aside Order of Dismissal (due to no activity) on January 31, 2021, and a Memorandum in Opposition to Respondent's Motion to Enforce Attorney's Lien, attached hereto collectively as Exhibit "P".

254.     Respondent GREEN signed a Declaration in his December 17, 2020 Motion to Set Aside Order of Dismissal in the 2nd Circuit Waldorf civil action stating he sent a written demand to Claimant on December 12, 2020 by email and regular mail demanding payment, which Claimant purportedly ignored, and that he had served Claimant by email his Motion to Set Aside Order of Dismissal on December 12, 2020, but these statements are not true. Respondent GREEN demanded payment on December 12, 2019 and did not notify Claimant of his December 17, 2020 Motion nor serve her his motion or made any demand for payment in 2020. This conduct by Respondents is attorney lien fraud as they intentionally negligently misrepresented a fact to the court with the hope of obtaining full amount of their fraudulent lien from the Court without Claimant knowing or objecting to such. The facts supporting these allegations are held in the record of the Second Circuit and Claimant will testify to such.

255.     Also, Respondent GREEN stated in his February 1, 2021 Motion to Collect Attorney's lien that he had served Claimant his December 12, 2020 Motion and provided a certificate of service of such, which both are patently false. Also, Respondent GREEN made further false statements in his Declarations attached to these two filings with the Court. Respondent's GREEN and HSIEH by way of their December 2020 and February 2021 Motions, lied to the Court again. Claimant's January 31, 2021 Motion to Set Aside Order of Dismissal and Declarations filed in the 2nd Circuit Waldorf case detail the false actions of Respondent's GREEN and HSIEH. This is attorney lien fraud by Respondents.

256.     As a direct and proximate result of Respondent's wrongdoing, violations of professional duties of competence, numerous negligent errors' during their representation, breaches of contract, standard of care and fiduciary duty and incompetent representation, Claimant suffered, and continues to suffer, damages, and is therefore entitled to recover any and all lawful

"Waldorf damages" and further damages by Respondent's representation "Respondents damages" in such amounts as to be shown at a trial or hearing thereof.

## COUNT IV

### (INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)

257.    Claimant restates the allegations contained in the preceding paragraphs of this Statement of Claims and incorporate those paragraphs by reference, as if fully set forth herein.

258.    Respondents, and their employees owed a duty of care to Claimant and Mark Beselt to represent them as competent and skilled professionals.

259.    Respondents, and their employees negligently breached this duty to Claimant and Mark Beselt, and the injuries sustained from their representation were directly and proximately caused by the negligence of Respondents.

260.    As a result of the conduct of the Respondents, Claimant sustained emotional distress and will continue to experience emotional distress in the future.

261.    The conduct of Respondents was the direct and proximate cause of Claimant's additional emotional distress, including mental worry, anxiety, anguish, suffering and grief and all other damages which Claimant is entitled.

262.    At or about July 30, 2018 Claimant was forced by Respondent HSIEH to answer Defendant Waldorf's Request for Answers to Interrogatories, late at night after being away and driving through the night to return to Alberta. Respondent HSIEH only allowed Claimant a few hours to gather all her documents and look over supplementing the interrogatories. Respondents did not provide any advice or assistance on how to answer interrogatories but instead Respondent

HSIEH yelled at Claimant so loudly when she told him she did not know what to do that his legal assistant Edna Bartolome came running into his office to see if everything was okay. This call caused Claimant significant distress and she emotionally was traumatized and spent much time crying and in shock. This was intentional infliction of emotional distress upon Claimant by Respondent HSIEH, breach of contract and negligence constituting legal malpractice.

263.     Respondent HSIEH was continually verbally and emotionally abusive towards Claimant during his representation. He named the personal relationship he had with Claimant as "Stockholm Syndrome" because Respondent HSIEH would be yelling one minute and shortly thereafter, once the romantic relationship began, he would be affectionate. Claimant was always in a state described as "walking on eggshells" trying to please her abuser to work on her case and keep Respondent HSIEH content. Respondents created much emotional distress for Claimant by how they treated her, and their lack of competent and professional representation. This conduct by Respondent HSIEH constitutes intentional infliction of emotional distress, breach of contract, and in violation of his professional rules of conduct.

264.     On or about September 26, 2018 Respondent HSIEH planned to visit Claimant while she was at her Brain Injury Rehabilitation program in Victoria, British Columbia, Canada but he had no passport. Respondent HSIEH therefore could not fly into Canada and instead entered Canada by vessel "the Clipper" by using his clout as a US attorney to get illegally into Canada with only his naturalization papers. Respondent HSIEH owed IRS and child support; he had bankruptcy issues and allowed Claimant to assist him with the use of her credit card as he had no credit. Respondent HSIEH was using the case to solve his problems, not the Claimants. He text Claimant many pictures of himself and pursued her adamantly even though she repeatedly told him she wanted to take things slowly because she was still married to Mr. Beselt and sleeping in

the same bed with him. *See* Exhibit "L" and text messages between Claimant and Respondent HSIEH will prove this allegation. Respondent HSIEH negligently inflicted emotional distress upon Claimant to satisfy his own lustful desires.

265.    In late December 2018 or early January 2019 Defense NaPier threatened a Motion to Compel. Respondent HSIEH responded by blaming Claimant even though he had done little to get discovery. Respondent HSIEH was unresponsive when Claimant stated there are real records issues for the past several months but Respondent HSIEH was not helpful and didn't seem to understand privacy issues. Instead, Respondent HSIEH pursued and argued over personal romantic relationship with Claimant which he characterized as "Stockholm Syndrome" several times because of his abusive treatment of Claimant. Again, another breach of fiduciary duty of loyalty to client. This negligent conduct by Respondent HSIEH caused Claimant significant infliction of emotional distress.

266.    Respondent HSIEH decided to conduct his own site inspection on January 25, 2019 at the beach fronting the Waldorf=Astoria Grand Wailea Resort where Claimant was injured. Respondent HSIEH told Claimant that she must attend with him to help out, when she indicated she couldn't because of her PTSD and how that would affect her injuries. Respondent HSIEH forced Claimant instead of an engineer who could testify at trial about the umbrella, the sandbags, and the property where Claimant was injured. Defense later denied Respondent GREEN and HSIEH a second request to inspect in May 2019. Again, failure to do ordinary work on case, negligence and further infliction of emotional damages to Claimant.

267.    In February 2019, Respondent HSIEH contacted Claimant that Defendant Waldorf's insurance company, Sedgewick insurance wanted to move forward with the March 15, 2019 mediation at Dispute Prevention & Resolution LLC. Claimant was concerned that it would

be a waste of money since the wage loss claims were now ended in the Second Circuit and a Motion for Reconsideration hadn't been filed yet. However, Respondent's GREEN and HSIEH demanded in a March 7, 2019 telephone call that Claimant fly to Hawaii for a mediation that she feared would likely not have a positive result. Respondent GREEN had no concern for the financial hardship this placed on Claimant and her family to have her fly back and forth to Hawaii for what eventually took place, a very short- 30 minute mediation. This conduct by Respondents was intentional infliction of emotional distress upon Claimant.

268.    On or about March 7, 2019 in a call, Respondent HSIEH confessed to Claimant that he had been cheating on Claimant with another women for the past 5 weeks. Claimant and Respondent HSIEH were arguing fiercely which affected the attorney client relationship. Claimant, being upset about things, and Mr. Beselt now realized the full impact of the relationship between Respondent HSIEH and Claimant and showed Claimant the Hawaii rules stating that attorneys couldn't have sexual relationships with their clients. Claimant and Mark Beselt will testify to this allegation. Respondent HSIEH'S conduct inflicted negligent emotional distress upon Claimant.

269.    On or about May 22, 2019 Claimant received a call back from Respondent GREEN in which he was very hostile with Claimant when Claimant asked him if he would attend the May 24, 2019 hearing on the Motion for Reconsideration and what she should do about her case given the status it was in. Respondent GREEN was upset because of all the emails with medical records Claimant was sending to his legal assistant Edna Bartolome. Respondent GREEN indicated that Claimant was "driving his secretaries nuts with all the records". Respondent GREEN raised his voice to Claimant and suddenly stated, "I never wanted to take the case, and I am 10 days away from withdrawing, depending on what Judge Cahill does at the hearing with your case". Claimant

was scared of Respondent GREEN and got off the call as quickly as possible. There was no need for this conduct by Respondent GREEN as Claimant had had little communication with him over the past year. Immediately after Claimant ended the call with Respondent GREEN, she contacted Mark Beselt as she was very upset and recorded this call between them which was provided to Respondents. Respondent GREEN performed intentional infliction of emotional distress upon Claimant and breached the contract.

270.     On or about May 27, 2019 Respondent HSIEH yelled at Claimant in Maui at the beginning of deposition prep; stated it was not his fault he didn't get the records and he jumped out of the moving vehicle which Claimant was driving, yelling that he would not prep Claimant for the next day's deposition. Respondent HSIEH threatened Claimant that if she didn't say what he told her to the next day, he would not prep her at all and would leave her at her deposition the next day. This caused Claimant severe distress and she contacted Mark Beselt while in the washroom at IHOP to help her calm down from the panic attack she had. After he finally calmed down an hour or two later, Respondent HSIEH went over many of the Request for Interrogatories with Claimant. This was the first time any of her attorneys had done so during the litigation. Claimant did her best during depo prep and the night before her deposition to update the interrogatories as per Respondent HSIEH'S direction. Text messages from Claimant to Mark Beselt and Claimant will testify to Respondent HSIEH'S conduct. Respondent HSIEH negligently inflicted emotional distress on his client whom he knew suffered from PTSD from the umbrella incident.

271.     On or about June 7, 2019 Claimant begged Respondent GREEN to reconsider but he wanted to withdraw and trashed the case that Respondent GREEN had said "these people are dead in the water" in the March 2, 2018 call when representation first began. Mark Beselt and

Claimant will testify to this conduct. This unjustified withdrawal and yelling at Claimant caused intentional infliction of emotional distress upon Claimant by Respondent GREEN.

272.    On or about June 21, 2019 Claimant begged Respondents not to withdraw, but Respondent's were no longer communicating with Claimant. Respondent HSIEH even went so far to accuse Claimant of having another attorney Jim Krueger representing her so that Respondent GREEN would not reconsider, but that was false information which Respondent HSIEH knew from Claimant's email communications. This is a breach of contract and intentional infliction of emotional distress claim.

273.    The conduct of Respondent's GREEN, UESUGI and HSIEH actions were done wantonly, wilfully and in total disregard of the well-being of Claimant BESELT and Mark Beselt.

274.    As a direct and proximate result of Respondent's wrongdoing, violations of professional competence, intentional tortious behavior, numerous negligent errors' during their representation, and incompetent representation, Claimant suffered, and continues to suffer, damages, and is therefore entitled to recover any and all lawful Waldorf damages and further damages by Respondent's representation ("Respondents damages") in such amounts as to be shown at a trial or hearing thereof.

## COUNT V

### (NEGLIGENT SUPERVISION OF CO-COUNSEL)

275.    Claimant restates the allegations contained in the preceding paragraphs of this Statement of Claims and incorporate those paragraphs by reference, as if fully set forth herein.

276.     Respondent GREEN knew or should have known after exercising reasonable care that he, his co-counsel and his employees were not exercising their duties in a competent manner and basic standard of care in their obligation to his clients- Claimant and Mark Beselt.

277.     Respondent GREEN failed to supervise and exercise reasonable care of his co-counsel and employees which caused harm to Claimant, Mark Beselt and their Second Circuit civil action for which he was obligated to represent his clients with all due diligence, skill and professionalism.

278.     Through their actions and/or inactions, Respondents did abuse, betray, and breach its duty owed to Claimant.

279.     Respondent GREEN, as lead counsel, had a duty to Claimant to supervise his employees, co-counsel and the case for which he had been retained. This negligence caused Claimant injury.

280.     Respondent GREEN was negligent and/or grossly negligent in reviewing and supervising Respondents UESUGI and HSIEH and his employees.

281.     On or about April 26, 2018, Claimant BESELT contacted Respondent GREEN by telephone and told him that no attorney in his office was working on her case and asked for his assistance. Respondent GREEN stated he would speak to Respondent UESUGI and get back to Claimant BESELT. This is negligent supervision of co-counsel by Respondent GREEN, along with breach of contract as nearly two months had passed and neither he or his associates were doing any work on Claimant and Mark Beselt's case against Defendant Waldorf, which caused harm to Claimant.

282.     Respondent GREEN failed to supervise co-counsel Respondent HSIEH who was struggling to know basic litigation strategy. Such instances were in obtaining discovery on behalf

of Claimant, requesting that Claimant sign authorizations to obtain medical and employment records, nearly allowing Respondent HSIEH to agree to allow Defendant Waldorf to "share" Claimant's expert Dr. Rossi, and instruct his associate to conduct discovery on behalf of Claimant.

283.    Respondent GREEN failed to instruct Respondent HSIEH to hire Weather works out of Hawaii instead of New Jersey which would have saved Claimant money by hiring them out of Hawaii, according to Tommy Else, Claimant's expert who provided his expert report for Plaintiff Ronda Beselt in December 2018. Clearly, Respondent GREEN was wilful and wanton in disregarding his legal duties and responsibilities to Claimant and supervision to his associates, Respondents UESUGI and HSIEH.

284.    In a March 7, 2019 call, which was audio recorded and transcripts provided to all parties-Respondent GREEN stated that Claimant was to go and try and get her unredacted records, on her own. No assistance was offered by Respondent's but left all to Claimant. Respondent GREEN stated, if Claimant couldn't get the redacted records unredacted after making an attempt, starting at this point in the discovery, he would write a letter to the provider demanding the records. But this was too little too late, as he should have done this months earlier instead of putting his responsibilities onto Claimant. This is not only a breach of contract but negligent supervision of co-counsel as Respondent GREEN did not know the status of the case nor keep abreast of the discovery errors and when he realized the issues that his associate Respondent HSIEH had caused with his lack of care of the case, instead instructed Claimant to do Respondent's work, which is negligence and a breach of contract by Respondent GREEN.

285.    As a direct and proximate result of Respondent GREEN's wrongdoing, violations of professional competence and duties, lack of action and/or inaction, lack of supervision and direction as lead counsel, numerous negligent errors' during representation, and incompetent

representation, Claimant suffered, and continues to suffer, damages, and is therefore entitled to recover any and all lawful Waldorf damages and further damages by Respondent's representation ("Respondents damages") in such amounts as to be shown at a trial or hearing thereof.

## COUNT VI

## (THREATENED ASSAULT)

286.    Claimant restates the allegations contained in the preceding paragraphs of this Statement of Claims and incorporate those paragraphs by reference, as if fully set forth herein.

287.    On or about March 7, 2019 in a telephone call between Claimant and Respondent HSIEH, a heated argument ensued between the two due to the personal relationship that the two had recently ended. In this call, Claimant told Respondent HSIEH that Mark Beselt had recently shown her documentation that lawyers are not to have romantic relationships, including sexual relations, with their clients after representation has started and how she felt betrayed that Respondent HSIEH had lied to her all along that it was okay. Claimant told Respondent HSIEH that Mark Beselt told Claimant to stop seeing Respondent HSIEH or else he could report Respondent's HSIEH's conduct to the Office of the Disciplinary Counsel. At this point Respondent HSIEH got very upset with Claimant and stated, "Mark better not come near me." Claimant asked Respondent HSIEH to clarify. Respondent HSIEH stated, "Michael and I have represented some really bad guys and if Mark comes near me, I will make sure they take care of him." Respondent HSIEH further stated, "You better keep quiet too and do as I say, I know where you guys live." Claimant asked Respondent HSIEH if he was threatening her and her family's safety and Respondent HSIEH responded that he had some dangerous friends who owed him

favors. Claimant will testify to this conversation and Mark Beselt will testify that Claimant told him this conversation she had had with Respondent HSIEH later that day. See Supplemental Declaration of Ronda Beselt, in Beselt v. Waldorf=Astoria Management LLC, civil action no 2cc161000597(2), 2nd Circuit, filed on February 16, 2021.

288.    This threat by Respondent HSIEH caused Claimant significant infliction of emotional distress.

289.    As a direct and proximate result of Respondent's wrongdoing, violations of professional competence and dutes, criminal conduct, numerous negligent errors' during their representation, and incompetent representation, Claimant suffered, and continues to suffer, damages, and is therefore entitled to recover any and all lawful Waldorf damages and further damages by Respondent's representation ("Respondents damages") in such amounts as to be shown at a trial or hearing thereof.


## COUNT VII

### (SEXUAL ASSAULT)


290.    Claimant restates the allegations contained in the preceding paragraphs of this Statement of Claims and incorporate those paragraphs by reference, as if fully set forth herein.

291.    Respondent HSIEH did an act by its nature was a direct application of force upon Claimant.

292.    Respondent HSIEH did these acts wilfully without any regard for his client's emotional distress and mental anguish or her current mental state due to her injuries from the umbrella incident.

293.     Respondent HSIEH preyed on, coerced and seduced Claimant and other clients that he represented into sexual relations with him, wilfully and wantonly disregarding Claimant's case, her emotional distress and her circumstances with her spouse.

294.     Claimant being traumatically injured and in a very vulnerable position eventually allowed herself to be in a romantic relationship with Respondent HSIEH which began in August 2018. The romantic relationship only ensued after representation began between the lawyer and client as none existed prior to representation of the lawyer. Respondent HSIEH stated to Claimant that he had them often with clients and it was okay with his professional association. Respondent HSIEH coerced, pressured and enticed Claimant into a sexual relationship with him. Respondent HSIEH was a predator with his female clients as stated to Claimant and which she will testify to. He frequently masturbated while on telephone calls with Claimant. His sexual conduct was often inappropriate as Claimant wanted to take things slow and indicated to Respondent HSIEH that no sex until divorce – of course Respondent HSIEH also still represented Mark Beselt when the romantic relationship first began so he was in a conflict besides an unethical, impermissible relationship. Respondent HSIEH would not stop pressuring Claimant into a personal relationship with him and the text messages between the two of them reflect this allegation. This is a breach of contract and violates the professional competence and dutes that attorneys must adhere to.

295.     From November 14 to 17, 2018 Respondent HSIEH and Claimant met and stayed at the Fairmont Empress hotel in Victoria, British Columbia as they were in a romantic relationship, which Respondent HSIEH told Claimant was okay. Claimant wanted to take the sexual relationship slow; however, she experienced significant pressure and forceful sexual contact by Respondent HSIEH during this trip, even though Claimant resisted. Claimant attempted many times to resist Respondent HSIEH'S sexual advances but he ended up sexually molesting her on

this trip as he would not stop. Respondent HSIEH could have met with Claimant's two experts in Victoria, British Columbia but he choose not to do any work on Claimant's behalf. He was only interested in preying on Claimant and taking advantage of her vulnerable state. He coerced her into further sexual relations even though she repeatedly told him, "No."

296.     Respondent HSIEH coerced Claimant to continue in their dating relationship throughout August 2018 to February 2019. Respondent HSIEH continued to masturbate on phone calls with Claimant and profess his love for her. Further, sexual encounters occurred between Claimant and Respondent HSIEH when she attended Hawaii in January and February 2019. Respondent HSIEH would often grab Claimant in her private areas and would pressure her and coerce her into further sexual relations although she repeatedly indicated she wanted to take the relationship slow. They stayed together as a couple in a condo at the Kamaole Sands, in a condo in Honolulu and at Respondent HSIEH's private residence on February 2, 2019 before Claimant flew home to Canada later that evening. Respondent HSIEH lied to Claimant that it was okay for attorneys to date their clients after representation began and he preyed on Claimant.

297.     On or about March 7, 2019 Claimant discovered through Mark Beselt when he provided the Hawaii Rules of Professional Conduct to her, that she was not to have a romantic relationship with Respondent HSIEH which included sexual relations. Claimant had been lied to, preyed upon and used by Respondent HSIEH all along about their sexual relationship being permissible during with his representation of her and her case.

298.     Respondent HSIEH'S aforementioned actions were done oppressively or with such malice as implies a spirit of mischief or criminal indifference to civil obligations, and/or wilful misconduct, and/or actions that exhibit an entire want of care which would raise the presumption

of a conscious indifference to consequences. Such conduct justifies an award of Punitive Damages since Respondent HSIEH has a history of this behavior with other clients he has represented.

299.     As a direct and proximate result of Respondent's wrongful conduct, violations of professional competence and duties to their client, numerous negligent errors' during their representation, breaches of contract, standard of care and fiduciary duty and incompetent representation, Claimant suffered, and continues to suffer, damages, and is therefore entitled to recover any and all lawful "Waldorf damages" and further damages by Respondent's representation "Respondents damages" in such amounts as to be shown at a trial or hearing thereof.

## COUNT VIII

### (PUNITIVE DAMAGES)

300.     Claimant restates the allegations contained in the preceding paragraphs of this Statement of Claims and incorporate those paragraphs by reference, as if fully set forth herein.

301.     The conduct of Respondents actions done wantonly, willfully and in total disregard of their legal duty to their client and well-being to Claimant.

302.     Respondent's aforesaid actions were done oppressively or with such malice as implies a spirit of mischief or criminal indifference to civil obligations, and/or willful misconduct, and/or actions that exhibit an entire want of care which would raise the presumption of a conscious indifference to consequences. Such conduct justifies an award of Punitive damages.

WHEREFORE Claimant prays for judgement and relief in her favor against all above named Respondents jointly and severally, for the "Waldorf damages" and the additional "Respondent damages" as follows:

     a.   General damages, as to be proven at arbitration;

b. Special damages, as to be proven at arbitration;

c. Punitive, treble and/or exemplary damages, as to be proven at arbitration;

d. Attorney's fees and litigation costs;

e. Arbitration fees and costs;

f. Prejudgement and post-judgement interest; and

g. Such further relief as the Court deems appropriate, just and equitable under the circumstances.

DATED: Honolulu, Hawaii September 27, 2021

 /s/ Arnold T. Phillips
ARNOLD T. PHILLIPS II


ATTORNEY for Claimant
RONDA BESELT