LAW OFFICE OF PETER C. HSIEH
PETER C. HSIEH, ESQ.     3204
Davies Pacific Center
841 Bishop Street, Suite 2201
Honolulu, Hawaiʻi 96813
Telephone: (808) 521-3336
Facsimile: (808) 566-0347
E-Mail:  hsiehlaw808@gmail.com

Respondent *Pro Se*

DISPUTE PREVENTION & RESOLUTION, INC.

STATE OF HAWAIʻI

| | |
|---|---|
| RONDA BESELT,<br><br>　　　　　　Claimant,<br><br>　　vs.<br><br>MICHAEL JAY GREEN, GLENN H. UESUGI,<br>PETER C. HSIEH,<br><br>　　　　　　Respondents. | ARB. CASE NO. 21-0106 – A – Sakamoto<br><br>RESPONDENT PETER C. HSIEH'S **ANSWER** TO CLAIMANT RONDA BESELT'S CLAIM; RESPONDENT PETER C. HSIEH'S **COUNTERCLAIM** AGAINST CLAIMANT RONDA BESELT; EXHIBITS "1"-"24 "; CERTIFICATE OF SERVICE |

RESPONDENT PETER C. HSIEH'S **ANSWER** TO
CLAIMANT RONDA BESELT'S CLAIM

Respondent PETER C. HSIEH, *pro se*, hereby answers Claimant Ronda Beselt's Claim,

dated May 13, 2021, as follows:

**FIRST DEFENSE**

　　　　1.　　The Claim fails to state a claim against Respondents upon which relief can

be granted.

**SECOND DEFENSE**

　　　　2.　　Claimant has failed to join parties indispensable under Rule 19 of the

Hawaiʻi Rules of Civil Procedure.

### THIRD DEFENSE

3.     Claimant is barred from maintaining this action based upon lack of duty, breach, proximate cause, and/or damages.

### FOURTH DEFENSE

4.     Claimant is barred from maintaining this action based upon Claimant's failure to plead sufficiently with particularity *what* Respondent did or did not do that constitutes negligence and *how* she would have been successful in the underlying action but for Respondents' alleged negligence.

### FIFTH DEFENSE

5.     Claimant is barred from maintaining this action based upon the lack of proof that she suffered damages as a result of Respondent's alleged conduct.

### SIXTH DEFENSE

6.     Claimant is barred from maintaining this action by the judgmental immunity doctrine.

### SEVENTH DEFENSE

7.     Claimant is barred from maintaining this action based upon her voluntary settlement – upon advice of counsel – of the underlying case with Defendant Walfdorf=Astoria Management LLC.

### EIGHTH DEFENSE

8.     Claimant is barred from maintaining this action against Respondent by reason of her own negligence or other wrongful conduct which caused her alleged injuries.

### NINTH DEFENSE

9.     Claimant is barred from maintaining this action by reason of her voluntary

2

decision not to proceed to trial and verdict.

## TENTH DEFENSE

10.     Claimant is barred from maintaining this action against Respondent because Claimant cannot prove that she would have ultimately prevailed in the underlying action but for Respondent's alleged conduct.

## ELEVENTH DEFENSE

11.     Claimant is barred from maintaining this action based upon Claimant's failure to take the underlying case to trial to prove what the outcome of the alleged mishandled pretrial litigation would have been and that Claimant would not have prevailed at trial.

## TWELFTH DEFENSE

12.     Claimant is barred from maintaining this action against Respondent because the alleged damages are too speculative due to Claimant's refusal to proceed to trial.

## THIRTEENTH DEFENSE

13.     Claimant failed to mitigate her damages.

## FOURTEENTH DEFENSE

14.     Claimant is barred from maintaining this action against Respondent because Respondent's actions were taken with Claimant's consent, direction and/or request.

## FIFTEENTH DEFENSE

15.     Respondent's alleged breach of their contract with Claimant, if any, is excused by Claimant's breach of the contract.

## SIXTEENTH DEFENSE

16.     Claimant is barred from maintaining this action against Respondent because the contract upon which the action is based is void or voidable because Respondent entered into

3

the contract as a result of Claimant's fraud.

## SEVENTEENTH DEFENSE

17.     Claimant is barred from maintaining this action against Respondent because the contract upon which the action is based is void or voidable because Respondent entered into the contract as a result of a mutual or unilateral mistake of fact.

## EIGHTEENTH DEFENSE

18.     Claimant is barred from maintaining this action based upon her failure to comply with the terms and conditions of the contract upon which the action is based.

## NINETEENTH DEFENSE

19.     Claimant is barred from maintaining this action based upon her failure to allege that Respondent materially breached the contract upon which the action is based.

## TWENTIETH DEFENSE

20.     Claimant is barred from maintaining this action against Respondent based upon the doctrine of laches, estoppel, waiver, and/or release.

WHEREFORE, Respondent prays for Judgment in his favor and against Claimant, as follows:

A.     That the Claim be dismissed with prejudice;

B.     That Respondent be awarded reasonable attorneys' fees and court costs;

C.     That such other and further relief as the Court deems just and proper.

DATED:  Honolulu, Hawaii, June 3, 2021.

PETER C. HSIEH
Respondent *Pro Se*

4

DISPUTE PREVENTION & RESOLUTION, INC.

STATE OF HAWAI'I

| | |
|---|---|
| RONDA BESELT, | ARB. CASE NO. 21-0106 – A – Sakamoto |
| Claimant, | RESPONDENT PETER C. HSIEH'S **COUNTERCLAIM** AGAINST CLAIMANT RONDA BESELT |
| vs. | |
| MICHAEL JAY GREEN, GLENN H. UESUGI, PETER C. HSIEH, | |
| Respondents. | |

## RESPONDENT PETER C. HSIEH'S **COUNTERCLAIM** AGAINST CLAIMANT RONDA BESELT

Respondent PETER C. HSIEH, *pro se*, for a Counterclaim against Claimant Ronda Beselt hereby alleges and avers as follows:

### Parties

1.    Respondent Peter Hsieh ("Respondent") is a resident of the County of Maui, state of Hawaii.

2.    Claimant Ronda Beselt ("Claimant") is a resident of Canada.

### Jurisdiction

3.    Dispute Prevention & Resolution, Inc., has jurisdiction pursuant to the parties' agreement to submit their dispute to binding arbitration before the Honorable Judge Karl Sakamoto (retired).

4.    Venue is proper because the subject claims for relief arose in this judicial circuit.

### Relevant Facts

5.    On January 7, 2015, while walking on the beach fronting the Grand Wailea

on Maui, Claimant was struck on the arm and head by one of Grand Wailea's large cabana umbrellas.

6.     Initially, Claimant and her husband, Mark Beselt retained Jan Apo, Esq. ("Apo"), to file suit against Grand Wailea. However, shortly thereafter, according to Claimant, Apo withdrew his representation citing a conflict of interest by one of his associates.

7.     Claimant and her husband, Mark Beselt, then retained Matson Kelley, Esq. ("Kelley"), to file suit against the Grand Wailea.

8.     On December 2, 2016, Kelley filed a Complaint against Defendants GWR Wailea Property LLC dba Wailea Resort Hotel & Spa ("Waldorf") and Department of Land and Natural Resources, State of Hawaii and Department Of Land And Natural Resources, State Of Hawaii ("State"), but did not file a demand for jury trial.

9.     Then on January 6, 2017, Kelley filed a First Amended Complaint, amending the name of the hotel to Waldorf=Astoria Management and adding additional allegations regarding the ownership of the beach by the State and the State's conduct, but again he did not file a demand for jury trial.

10.     Claimant subsequently discharged Kelley because, according to Claimant, Kelley was trying to develop an intimate relationship with her.

11.     She then retained James Bickerton, Esq. ("Bickerton").

12.     Claimant became unhappy and critical of the legal services rendered by Bickerton and accused him and his staff of forging her signature on various medical records authorizations which were provided to defense counsel, Patricia Napier, and demanded him to direct Patricia Napier, Esq., attorney for Defendant Waldorf, to destroy the voluminous medical

2

records they had obtained from many of her health care providers in Canada using the "forged" medical records authorizations provided by Bickerton.

13. Claimant then discharged Bickerton but his withdrawal was held off to give her a chance to find new counsel.

14. On or about March 21, 2018, Claimant and her husband retained Michael Jay Green, Esq. to take over the case from Bickerton. *See* a true and correct copy of the Consent to Co-Counsel, dated May 21, 2018, attached hereto as Exhibit "1."

15. Claimant informed Green that she did not want her psychiatric and psychological records to be released to the defendants.

16. Claimant was informed that she would have to produce her psychiatric and psychological records because of her claims for damages.

17. In May of 2018, Green asked Hsieh to review the case and see if he could work on the case and assist him as co-counsel, and he informed Hsieh that Claimant had stated that she did not want to release her psychiatric and psychological records to the defense.

18. Hsieh subsequently met with Claimant and her husband in the office during which time Hsieh informed them that her refusal to disclose her psychiatric and psychological records would raise suspicion and would prevent her from seeking recovery of her non-economic damages including, but not limited to, pain and suffering, mental anguish, emotional distress, loss of enjoyment of life and loss of quality of life.

19. Claimant responded by stating that she would dismiss those claims to prevent disclosure of her mental health records.

20. Hsieh informed her that her non-economic damages comprised a substantial portion of her damages claim, and that if she would not agree to release her mental health records,

Hsieh would not agree to work on her case as co-counsel with Green, and Green would also withdraw as counsel.

21.     Hsieh informed Claimant that he and Green would represent her if and only if she agreed to release her psychiatric and psychological records to the defense during discovery.

22.     After discussion with her husband, Claimant informed and represented to Hsieh that she would agree to release her psychiatric and psychological records to the defense during discovery ("Client's representations").

23.     Claimant's representations were material facts, which induced Hsieh to agree to come in the case and assist Green as co-counsel and Green to remain in the case as counsel.

24.     Claimant made the representations to induce Hsieh and Green (collectively as "Counsel") to represent her because she was on her fourth attorney and was concerned nobody would take her case.

25.     Claimant made the representations with knowledge of their falsity (or without knowledge of their truth or falsity) in contemplation of Green and Hsieh's reliance upon these false representations.

26.     Hsieh and Green reasonably believed and relied upon Claimant's representations to their detriment.

27.     On May 21, 2018, in reliance upon Claimant's representations, Hsieh signed a Consent to Co-Counsel agreement to serve as Green's co-counsel in this case, pursuant to the Contingency Fee Agreement. *See* a true and correct copy of the Consent to Co-Counsel, dated May 21, 2018, attached hereto as Exhibit "2."

4

28.     After Hsieh and Green agreed to represent Claimant, Claimant proceeded to renege on her representations by systematically and surreptitiously contacting her health care providers to alter or remove her medical records in reference to her mental health.

29.     Claimant contacted at least three custodians of medical records and requested that her records be altered to remove references to her pre-existing psychiatric conditions, including postpartum depression and "suicidal ideations." *See* a true and correct copy of Defendant Waldorf=Astoria Management LLC's Memorandum in Opposition to Plaintiff's Motion to Stay The Proceeding and to Set Aside Settlement Agreement, filed May 17, 2021 ("MIO"), at 1-9, attached hereto as Exhibit "3."

30.     In the MIO, Waldorf stated that in her May 28, 2019, deposition, Plaintiff admitted that, as to one of the providers, she requested changes to her records because she knew that evidence of serious pre-existing psychiatric conditions would reduce the value of her emotional distress claim in the underlying lawsuit. *Id.* at 2.

31.     In the MIO, Defendant Waldorf's counsel informed the Court that, "Plaintiff's egregious conduct in requesting alterations to years-old medical records that are highly relevant to her claims, for the express purpose of increasing the value of those claims, is tantamount to fraud upon the Court and highly prejudicial to Waldorf." *Id.*

32.     In the MIO, Defendant Waldorf's counsel also informed the Court that, "Plaintiff produced records of her treatment by Lorraine Natho, MDCM, CCFP, a family medicine doctor with a practice in psychotherapy and reproductive mental health at the Womer's Mental Health Clinic in Calgary, Alberta . . . . Dr. Natho's records reflect that she treated Plaintiff before the incident, from September 2010 to December 2013, in connection with the birth of Plaintiff's two sons, at least one of whom was born with special needs. The records contain substantial

5

information about Plaintiff's depression, suicidal ideations, and severe emotional distress from 2010 to 2013, including a diagnosis of postpartum depression and anxiety in 2010. Additionally, the records reveal a sinister attempt by Plaintiff to have this vital and material information removed from her records." *Id.* at 3.

33. In the MIO, Defendant Waldorf's counsel further informed the Court that, "Plaintiff admits that she explicitly requested a third-party custodian of her medical records alter such records to omit a diagnosis of a pre-existing psychiatric condition that is highly relevant to her emotional distress claim, and that she stated did this for the purpose of maximizing the value of that claim." *Id.* at 3-4.

34. In the MIO, Defendant Waldorf's counsel stated that "This is not an isolated incident. A document produced by Plaintiff's primary care physician, Dr. Sameena Bajwa, reflects a further improper attempt by Plaintiff to procure changes in her records for the express purpose of influencing the outcome of the litigation . . . . Plaintiff's request to Dr. Bajwa to 'make changes in her records' relating to the previous depression diagnosis, which was made explicitly because the records would be subject to discovery by Waldorf, is a clear example of an attempt to perpetrate fraud on the Court." *Id.* at 5-6.

35. In the MIO, Defendant Waldorf's counsel informed the Court that, "Thus, it appears that in August 2018, while Waldorf was in the midst of a burdensome struggle to obtain Plaintiff's medical records, Plaintiff actually succeeded in convincing Dr. Cooper to alter a medical record from before the subject incident to omit reference to a pre-existing psychiatric condition [history of severe depression last pregnancy and suicidal ideation] that is highly relevant to Plaintiff's emotional distress claim." *Id.* at 6.

6

36.     In the MIO, Defendant Waldorf's counsel informed the Court that, "One of the most egregious examples of Plaintiff's attempt to perpetrate a fraud upon the Court and Waldorf is her withholding of psychologist April Byer's records from lawful discovery. Ms. Byers' records were repeatedly sought by Waldorf since Plaintiff first disclosed her name in August 2018. Ms. Byers is the only psychologist known to Waldorf who treated Plaintiff post-incident. From billing records, Waldorf had learned that Ms. Byers treated Plaintiff 34 times from October 2015 through April 2018, i.e., for more than 3 years after the incident. (Footnote omitted.) Despite Waldorf's numerous attempts to obtain Ms. Byers' records, Waldorf was unable to get them through the normal course of discovery (footnote omitted) and yet, surprisingly, on June 20, 2019, Plaintiff produced 79 pages of records from Ms. Byers. Now that Waldorf has reviewed the records, it is apparent why Plaintiff did not want to produce them. Peppered through the 79 pages of records are Plaintiff's ongoing complaints to Ms. Byers about this litigation and her former and current lawyers. Plaintiff was made aware that she must provide authorizations for her medical and psychological records dating back to 2005, yet, she did not want to do so. She was told 18 months ago by counsel that her case **"will probably be shut down" if she does not disclose the information**. Plaintiff was properly advised by her former attorneys to comply with the lawful discovery process, yet Ms. Byers' records confirmed that Plaintiff consistently struggled to follow these instructions and did not want to release her mental health records. (Emphasis original.)" *Id.* at 7-8.

37.     Claimant's documented refusal to cooperate and relentless effort get her doctors to alter, remove, or conceal her mental health history for the sole purpose of maximizing the value of her personal injury case caused Green and Hsieh to incur substantial time and expenses

U.S. Bankruptcy Court - Hawaii  #23-00149  Dkt # 41-4  Filed 07/14/23  Page 11 of 22

in responding to Defendant Waldorf's motion to compel and for sanctions and filing a motion for reconsideration, at Claimant's insistence, exonerate herself, to no avail.

38.     On May 31, 2018, Green and Hsieh filed a Withdrawal and Substitution of Counsel substituting James Bickerton, Nathan Roehrig, and Robert Miyashita. *See* a true and correct copy of the Withdrawal and Substitution of Counsel, filed May 31, 2018, attached hereto as Exhibit "4."

39.     On August 9, 2018, by stipulation of the parties, Plaintiff Mark Beselt and Defendant State of Hawaii were dismissed from the case with prejudice. *See* a true and correct copy of the Stipulation for Partial Dismissal with Prejudice as to Plaintiff Mark Warren Beselt and Defendant Department of Land And Natural Resources, State Of Hawaii, filed August 9, 2018, attached hereto as Exhibit "5."

40.     From May 2018 to June 2019 Hsieh spent 242.15 hours on this case, including, but not limited to, (1) responding to Defendant Waldorf's requests for answers to interrogatories and request for production of document; (2) submitting several amended and supplemental discovery responses; (3) reviewing and managing more than 1,000 pages of medical records, employment records, tax records, receipts and invoices, and related documents; (4) deposing five defense liability witnesses; (5) reviewing, objecting to, working with opposing counsel, and/or facilitating the release of Beselt's medical and employment authorizations and medical records involving more than 80 health care providers; (6) defending the deposition of Beselt; (7) inspecting the beach fronting the Grand Wailea and the cabana umbrellas on the premises of the Grand Wailea; (8) engaging, consulting, and working with eight one (1) liability expert witness and seven (8) damages expert witnesses; (9) serving the plaintiff's disclosure of expert witnesses on Defendant Waldorf's attorneys; (10) processing and/or filing two stipulations:

8

stipulation for certain depositions, independent medical examinations, and the hearing date on plaintiff's motion for reconsideration, and stipulation to continue trial date and amended certain pretrial deadlines; (11) speaking with Beselt's health care providers in Canada to obtain their declarations for Plaintiff's opposition to Waldorf's motion to compel discovery; (12) discussing and coordinating with defense counsel on the three IMEs of Beselt by Defendant Waldorf's three defense medical experts; (13) drafting and submitting a 39-page Confidential Mediation Statement, together with 57 exhibits, to mediator, Keith Hunter; and (14) numerous telephone and email communications with Beselt, which Hsieh is not billing, due to the sheer number of call and messages he received got from her.

    41.    As a direct result of Claimant's misconduct, Hsieh also engaged in substantial motions practice, including researching, drafting, and/or responding to numerous pretrial motions filed by Defendant Waldorf, including, but not limited to, Defendant's Motion to Compel Discovery, Defendant's Motions to Strike Plaintiff's Experts, and Plaintiff's Motion for Reconsideration.

    42.    On behalf of Claimant, pursuant to the Contingency Fee Agreement, Green advanced costs of more than $60,000 to, among other things, retain eight (8) expert witnesses, including (1) Dr. Robert Hall, Ph.D. (Neuropsychology); (2) Dr. D. Thomas Rogers, MD (Neurosurgery); (3) Dr. Peter W. Rossi, MD (Neurology); (4) Dr. Sheila de Carmo Wendler, MD (Neuropsychiatry); (5) Dr. Cameron McCrodan, OD, FCOVD (Optometry); (6) Bernard Tonks, BScPT FCAMT; (7) Garret Hoe, CPA (Forensic Economist); and (8) Thomas M. Else (Forensic Meteorologist). *See* a true and correct copy of Plaintiff Ronda Beselt's Disclosure of Expert Witnesses, dated May 30, 2019, attached hereto as Exhibit "6."

43.     As of July 19, 2019, the date Counsel's motion to withdraw was granted, Green had incurred costs of suit in the amount of $60,929.94. *See* a true and correct copy of the Summary of Cost of Michael Jay Green and Associates, Inc., dated September 16, 2019, attached hereto as Exhibit "7," and true and correct copies of all supporting invoices and receipts, collectively attached hereto as Exhibit "8."

44.     On October 22, 2018, the trial date was continued from February 19, 2019 to September 30, 2019. *See* a true and correct copy of the Stipulation and Order to Continue Trial Date and Amend Certain Pretrial Deadlines, filed October 22, 2018, attached hereto as Exhibit "9."

45.     On January 30, 2019, the parties agreed to engage in mediation with Keith Hunter ("Hunter") and DPR reserved a mediation date of March 15, 2019. *See* a true and correct copy of an email from Coleen Tasaka of DPR Hawaii to parties' attorneys and Keith Hunter, dated January 30, 2019, attached hereto as Exhibit "10."

46.     On March 7, 2019, on behalf of Beselt, Green signed an Agreement to Participate in Private Mediation with Defendant Waldorf with Hunter as mediator. *See* a true and correct copy of the Agreement to Participate in Private Mediation, attached hereto as Exhibit "11."

47.     On March 11, 2019, Hsieh drafted and served a 39-page Confidential Mediation Statement with Hunter, a copy of which attached hereto due to the confidential nature of the mediation statement.

48.     On March 13, 2019, six months prior to trial, Claimant instructed to make a settlement demand in the amount of $8.25 million. *See* a true and correct copy of Plaintiff's settlement demand, dated March 13, 2019, attached hereto as Exhibit "12."

49.     The $8.25 million demand was based on inflated numbers provided by Claimant's husband, and Hsieh informed Claimant that the demand was unreasonably high and would not be accepted by Defendant Waldorf.

50.     On April 18, 2019, Defendant Waldorf served Claimant a Rule 68 Offer of Settlement in the amount of $125,000. *See* a true and correct copy of Defendant Waldorf's Rule 68 Offer of Settlement, dated April 18, 2019, attached hereto as Exhibit "13."

51.     On April 30, 2019, Claimant instructed Green and Hsieh to serve Defendant Waldorf a counter Rule 68 Offer of Settlement in the amount of $3,625,000. *See* a true and correct copy of Plaintiff's Rule 68 Offer of Settlement, dated April 30, 2019, attached hereto as Exhibit "14."

52.     Hsieh again informed Claimant that the demand was unreasonably high and the case would not settle anywhere near that.

53.     On May 9, 2019, Claimant instructed Green and Hsieh to serve Defendant Waldorf a counter Rule 68 Offer of Settlement in the amount of $950,000. *See* a true and correct copy of Plaintiff's Rule 68 Offer of Settlement, dated May 9, 2019, attached hereto as Exhibit "15."

54.     Hsieh again informed Claimant that this demand was unreasonably high and the case would not settle.

55.     On or about May 16, 2019, through Mr. Hunter, Defendant Waldorf responded with a counteroffer of $175,000.

56.     At this point, Claimant refused to listen to Green and Hsieh's advice on settlement and insisted upon taking positions or pursuing objectives that Counsel considers

11

repugnant or imprudent, and further representation would result in an unreasonable financial burden on Green and Hsieh.

57.     On or about June 12, 2019, Claimant instructed Green and Hsieh to make a counteroffer of $725,000, through Mr. Hunter, to Defendant Waldorf, which they did, but Claimant was already made aware that Green and Hsieh were going to file a motion to withdraw as counsel.

58.     On June 12, 2019, Green and Hsieh filed a Motion to Withdraw as Counsel for Plaintiff Ronda Beselt. *See* a true and correct copy of Michael Jay Green and Peter C. Hsieh's Motion to Withdraw as Counsel For Plaintiff Ronda Beselt aka Ronda Melnychuk-Beselt, filed June 12, 2019, attached hereto as Exhibit "16."

59.     On June 12, 2019, Defendant Waldorf's attorney informed Hsieh that Patty NaPier had received a call from James Krueger, Esq., informing Ms. NaPier that Beselt had contacted him to see if he would take over the case. Ms. NaPier informed Mr. Krueger that her client would keep its last offer of $175,000 open.

60.     Green and Hsieh previously were not aware that Beselt had contacted Mr. Krueger.

61.     On June 18, 2019, Mr. Hunter asked Hsieh if they were aware that Mr. Krueger had floated a settlement offer of $225,000 to Defendant Waldorf's counsel, which had caused great confusion on the defense side, and Hsieh stated that they had not been aware.

62.     On June 27, 2019, Defendant Waldorf provided Beselt with a Settlement Term Sheet in the amount of $200,000, for general damages only, and a Joint Tortfeasor Release and Indemnification Agreement from Defendant Waldorf. *See* true and correct copies of the Settlement Term Sheet and Joint Tortfeasor Release and Indemnification Agreement, attached hereto as Exhibits "17" and "18," respectively.

12

63.     On June 28, 2019, Hsieh was informed that since two weeks prior Claimant had gone behind Counsel's backs and instructed Mr. Hunter to communicate with her only and not to communicate with Counsel.

64.     On July 19, 2019, the Court heard and granted Counsel's Motion to Withdraw. *See* a true and correct copy of the Order Granting Michael Jay Green and Peter C. Hsieh's Motion to Withdraw as Counsel for Plaintiff Ronda Beselt, August 12, 2019, attached hereto as Exhibit "19."

65.     On July 25, 2019, Green and Hsieh filed a Notice of Attorneys' Lien ("Attorneys' Lien") and served it on Plaintiff and Defendant Waldorf's attorneys. *See* a true and correct copy of the Notice of Attorneys' Lien, filed July 25, 2019, attached hereto as Exhibit "20."

66.     On August 7, 2019, 18 days after the Court granted Green and Hsieh's Motion to Withdraw as Counsel, Claimant sent an email informing them that she had just settled her case with Defendant Waldorf on August 6, 2019, but refused to disclose the amount of the settlement. *See* a true and correct copy of the email to Michael Jay Green and Peter Hsieh from Ronda Beselt, dated August 7, 2019, attached hereto as Exhibit "21."

67.     Based on Defendant Waldorf's Term Sheet and the numbers that were being floated, Hsieh surmised and formed a good-faith belief that the settlement amount was probably around $250,000, given the numbers that had been exchanged up to that point in time.

68.     In fact, in her Motion to Stay The Proceeding and To Set Aside Settlement Agreement, filed May 5, 2021, Claimant revealed that she settled with Defendant Waldorf in the amount of $250,000.00.

69.     On May 19, 2021, the Court denied Claimant's Motion to Stay The Proceeding and To Set Aside Settlement Agreement.

70. On August 12, 2019, Counsel sent a written demand to Plaintiff and Defendant Waldorf's attorney for payment of their attorneys' fees and cost, pursuant to the Attorneys' Lien ("Counsel's Demand Letter"). *See* a true and correct copy of the letter to Ronda Beselt and Calvin Young, Esq., and Patrician NaPier, Esq., and Stacy Ma, Esq., from Michael Jay Green, dated August 12, 2019, attached hereto as Exhibit "22."

71. In response to Counsel's Demand Letter, Defendant Waldorf's attorneys informed Counsel that Defendant Waldorf, through its own self-insured deductible or its liability carrier, would be prepared to distribute the settlement proceeds in accordance with Beselt's consent or a court order.

72. On December 12, 2020, Counsel sent a written demand to Plaintiff and Defendant Waldorf's attorneys for payment of Counsel's fees in the amount of $78,534.00 and costs in the amount of $60,929.94 for a total amount of $138,463.94. *See* a true and correct copy of the letter to Ronda Beselt and Calvin Young, Esq., and Patrician NaPier, Esq., and Stacy Ma, Esq., from Michael Jay Green, dated December 12, 2019, attached hereto as Exhibit "23."

73. To date, neither Beselt nor Defendant Waldorf has paid Counsel's Attorneys' Lien.

74. Between March 21, 2018, and July 11, 2019, Hsieh has spent 242.15 hours working on this case and Green has spent 1 hour on this case, for a total of 243.15 hours. Hsieh's hourly rate is $350.00. Green's hourly rate is $650. Using an hourly rate of $350, the total amount of attorneys' fees is $85,102.50. G.E. tax (4.712%) is $4,010.03. The total fees and tax is $89,112.53. *See* a true and correct copy of Counsel's Itemization of Work Performed, attached hereto as Exhibit "24."

14

**_Enforcement of Attorneys' Lien Pursuant to H.R.S. § 507-81_**

75.     Respondent realleges and incorporates herein the allegations contained in preceding paragraphs as though fully alleged herein.

76.     Respondent is entitled to collect on the Notice of Attorneys' Lien, filed July 25, 2019.

77.     Pursuant to the Lien, Respondent is entitled to recover attorneys' fees in the amount of $78,534.00 and costs in the amount of $60,929.94 for a total amount of $138,463.94

78.     As a direct and proximate result of Claimant's wrongful conduct, Respondent is entitled to recover any and all lawful damages in such amounts as shall be shown at a trial or hearing hereof.

**COUNT II**
**_Breach of Contract_**

79.     Respondent realleges and incorporates herein the allegations contained in preceding paragraphs as though fully alleged herein.

80.     Respondent at all relevant times herein has a valid and enforceable contract for legal services with Claimant.

81.     Respondent at all relevant times herein has complied, or substantially complied, with all of the terms and conditions of the contract.

82.     Claimant at all relevant times herein has materially breached the contract upon which the counterclaim is based.

83.     Claimant's breach is neither excused nor justified.

84.     As a direct and proximate result of Claimant's wrongful conduct, Respondent suffered, and continues to suffer, damages, and is therefore entitled to recover any and

U.S. Bankruptcy Court - Hawaii   #23-00149   Dkt # 41-4   Filed  07/14/23   Page 19 of 22

all lawful damages in such amounts as shall be shown at a trial or hearing hereof.

## COUNT III
### *Fraudulent Misrepresentation*

85.　Defendants reallege and incorporate herein the allegations contained in preceding paragraphs as though fully alleged herein.

86.　After discussion with her husband, Claimant informed and represented to Hsieh that she would agree to release her psychiatric and psychological records to the defense during discovery ("Client's representations").

87.　Claimant's representations were material facts, which induced Hsieh to agree to come in the case and assist Green as co-counsel and Green to remain in the case as counsel.

88.　Claimant made the representations to induce Hsieh and Green (collectively as "Counsel") to represent her because she was on her fourth attorney and was concerned nobody would take her case.

89.　Claimant made the representations with knowledge of their falsity (or without knowledge of their truth or falsity) in contemplation of Green and Hsieh's reliance upon these false representations.

90.　Hsieh and Green reasonably believed and relied upon Claimant's representations to their detriment.

91.　On May 21, 2018, in reliance upon Claimant's representations, Hsieh signed a Consent to Co-Counsel agreement to serve as Green's co-counsel in this case, pursuant to the Contingency Fee Agreement.

92.　After Hsieh and Green agreed to represent Claimant, Claimant proceeded to renege on her representations by systematically and surreptitiously contacting her health care providers to alter or remove her medical records in reference to her mental health.

16

93.     As a direct and proximate result of Claimant's wrongful conduct, Respondent suffered, and continues to suffer, damages, and is therefore entitled to recover any and all lawful damages in such amounts as shall be shown at a trial or hearing hereof.

**COUNT IV**
*Negligent Misrepresentation*

94.     Respondent realleges and incorporates herein the allegations contained in preceding paragraphs as though fully alleged herein.

95.     The alleged representations by Claimant were false.

96.     The alleged misrepresentations were made as a result of the failure to exercise reasonable care or competence in communicating the information.

97.     Respondent for whose benefit the representations were supplied suffered damages.

98.     Respondent relied upon the alleged representations.

99.     As a direct and proximate result of Claimant's wrongful conduct, Respondent suffered, and continues to suffer, damages, and is therefore entitled to recover any and all lawful damages in such amounts as shall be shown at a trial or hearing hereof.

WHEREFORE, Respondent prays for relief in his favor and against the above-named Claimant, as follows:

A.     Special damages in an amount to be proven at trial;

B.     General damages in an amount to be proven at trial;

C.     Punitive, treble, and/or exemplary damages in an amount to be proven at trial;

D.     Reasonable attorneys' fees, and costs;

E.     For pre-judgment and post-judgment interest, and

17

F.     Such other and further relief both legal and equitable as the Court deems just and necessary.

DATED:  Honolulu, Hawaii, June 3, 2021.

_____
PETER C. HSIEH
Respondent *Pro Se*